ACCEPTED
15-25-00142-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/29/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/29/2025 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

CAUSE NO. 15-25-00142-CV

IN THE FIFTEENTH COURT OF APPEALS OF TEXAS

ROBERT EDWARD BATTAILE, Appellant

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, AND JANE NELSON, SECRETARY OF STATE OF TEXAS, et al., Appellees

_____

## MOTION TO SUPPLEMENT THE CLERK'S RECORD

## WITH OMITTED ITEMS

TO THE HONORABLE JUSTICES OF SAID COURT:

Appellant Robert Edward Battaile, pro se, respectfully moves the Court pursuant to Texas Rule of Appellate Procedure 34.5(c) to accept the attached sworn copies of 11 omitted filings as evidence of their filing in the trial court and to ORDER the Clerk of the 459th Judicial District Court, Travis County, Texas, to prepare, certify, and file a supplemental clerk's record including these items individually in an expedited fashion. In support, Appellant shows:

1. This appeal arises from proceedings in the 459th Judicial District Court, Travis County, Texas (Cause No. D-1-GN-25-000719). The case was appealed to the Third Court of Appeals and transferred to this Court.

2. Upon review of the clerk's record, Appellant discovered that at least 11 filings were omitted during the transfers. These items are necessary for the Court's

review of the issues on appeal, including substantive filings about irreparable harm to historic sites; loss of community parkland, plazas and in-lieu park fees, Chapter 380 Grant misappropriation; civil rights violations; deceptive trade practices; police misconduct; and importantly includes the **PLAINTIFF'S SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION TO BE HELD** which was initially filed on July 30, 2025.

3. The omitted items are listed individually below and attached as sworn copies (date-stamped) with an unsworn declaration authenticating them under Tex. Civ. Prac. & Rem. Code § 132.001 and TRAP 52.7:

   *Exhibit page numbers reference the pdf viewer pages within entire document.*

   1) 7-3-25    ORDER GRANTING 13100 FM 973 INC'S RULE 91A MOTION TO DISMISS.    Pdf pg 8

   2) 7-14-25    PLAINTIFF'S CONSOLIDATED MOTION TO VACATE JULY 3 ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2, AND INCORPORATE EXHIBIT A.    Pdf pgs 9:17

   3) 7-18-25    PLAINTIFF'S MOTION TO ORDER AND INCLUDE COURT TRANSCRIPTS OF ALL PRIOR HEARINGS.    Pdf 18:24

   4) 7-22-25    PLAINTIFF'S RESPONSE TO MC RETAIL GP'S MOTION TO DISMISS UNDER RULE 91A.    Pdf :25:37

5) 7-23-25   PLAINTIFF'S RESPONSE TO MANOR MF, LLC'S MOTION TO DISMISS UNDER RULE 91A.     Pdf 38:52

6) 7-30-25   SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION TO BE HELD.     Pdf 53:235

7) 8-14-25   PLAINTIFF'S NOTICE OF CHANGE OF SERVICE ADDRESS FOR DEFENDANT MERITAGE HOMES OF TEXAS, LLC.     Pdf 236:238

8) 8-14-25   PLAINTIFF'S REQUEST FOR ISSUANCE OF CITATION AND SERVICE TO DEFENDANT MERITAGE HOMES OF TEXAS, LLC.   Pdf 239:241

9) 8-25-25   CHALLENGE TO THE CONSTITUTIONALITY OF A STATE STATUTE.     Pdf 242:247

10) 8-29-25 PLAINTIFF/APPELLANT'S MOTION TO CORRECT AND SUPPLEMENT THE REPORTERS RECORD WITH PRODUCTION OF AUDIO RECORDINGS.     Pdf 248:251

11) 9/8/25   PLAINTIFF/APPELLANTS MOTION TO STAY, ABATE OR CONTINUE PROCEEDINGS PENDING APPEAL, AND REQUEST FOR HEARING.     Pdf 252:260

4. These items were properly filed in the trial court, as shown by the date stamps. Appellant requests that the Court accept these sworn copies and notify the trial court clerk to supplement the record with them listed individually for the judges'

benefit in understanding the full case history. This will promote judicial economy without prejudice to any party.

5. This effort of completing the clerk's record has been unforeseen and quite time consuming. Appellant will contact the 15th Court Clerk to assess the timing required to fulfill this Motion for the Judge's benefit. If needed, Appellant reserves the right to request a short extension of briefing deadlines under TRAP 38.6(d) while noting that time is of the essence as irreparable harms are underway now at multiple locations.

## Certificate of Conference

Appellant has filed Motions and submitted Schedules to attempt to confer with the parties to no avail. Many of the parties have been dismissed but underlying issues remain and harms continue. As a courtesy, Appellant has added them as Appellees.

## Certificate of Service

I certify that a true and correct copy of this Motion was served on all counsel of record via eFileTexas on September 28, 2025.

Respectfully submitted,

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Appellant Pro Se
502 E Eggleston St, Unit B
Manor TX 78653
robert@manortx.us
512-662-2955

EXHIBIT A.

**UNSWORN DECLARATION AUTHENTICATING COPIES OF DOCUMENTS STATE OF TEXAS COUNTY OF TRAVIS**

My name is Robert Edward Battaile. My date of birth is 8/14/1950. My address is 502 E Eggleston St Unit B, Manor, TX 78653, Travis County, Texas, USA.

I declare under penalty of perjury that the following facts are true and correct:

1. I am over the age of 18, of sound mind, and competent to make this declaration. I have personal knowledge of the facts stated herein.

2. I am the Appellant in the above-styled cause and the pro se plaintiff in the underlying trial court proceeding, Cause No. D-1-GN-25-000719 in the 459th Judicial District Court of Travis County, Texas.

3.Attached hereto as Exhibit B are true, correct, and complete copies of the following 11 documents that were filed in the trial court but omitted from the clerk's record during transfers to the Third Court of Appeals (Cause No. 03-25-00484-CV) and subsequently to the Fifteenth Court of Appeals:

4.These copies are identical to the originals filed with the trial court clerk, as evidenced by the date stamps thereon.

5.I have not altered these documents in any way, and they accurately reflect what was filed.

Included as Exhibit B attached:

1) 7-3-25   ORDER GRANTING 13100 FM 973 INC'S RULE 91A MOTION TO DISMISS.

2) 7-14-25   PLAINTIFF'S CONSOLIDATED MOTION TO VACATE JULY 3 ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2, AND INCORPORATE EXHIBIT A.

3) 7-18-25   PLAINTIFF'S MOTION TO ORDER AND INCLUDE COURT TRANSCRIPTS OF ALL PRIOR HEARINGS.

4) 7-22-25   PLAINTIFF'S RESPONSE TO MC RETAIL GP'S MOTION TO DISMISS UNDER RULE 91A.

5) 7-23-25   PLAINTIFF'S RESPONSE TO MANOR MF, LLC'S MOTION TO DISMISS UNDER RULE 91A.

6) 7-30-25   SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION TO BE HELD.

7) 8-14-25   PLAINTIFF'S NOTICE OF CHANGE OF SERVICE ADDRESS FOR DEFENDANT MERITAGE HOMES OF TEXAS, LLC.

8) 8-14-25   PLAINTIFF'S REQUEST FOR ISSUANCE OF CITATION AND SERVICE TO DEFENDANT MERITAGE HOMES OF TEXAS, LLC.

9) 8-25-25 CHALLENGE TO THE CONSTITUTIONALITY OF A STATE STATUTE.

10) 8-29-25 PLAINTIFF/APPELLANT'S MOTION TO CORRECT AND SUPPLEMENT THE REPORTERS RECORD WITH PRODUCTION OF AUDIO RECORDINGS.

11) 9/8/25 PLAINTIFF/APPELLANTS MOTION TO STAY, ABATE OR CONTINUE PROCEEDINGS PENDING APPEAL, AND REQUEST FOR HEARING.

Executed in Travis County, State of Texas, on the 28th day of September, 2025.

_____ */s/ Robert Edward Battaile* _____
Robert Edward Battaile, Appellant Pro Se

Exhibit B-1   15-25-00142-CV

CAUSE NO. D-1-GN-25-000719

| | | |
|---|---|---|
| ROBERT EDWARD BATTAILE<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§<br>§ | 459TH JUDICIAL DISTRICT |
| TEXAS ELECTIONS DIVISION, HON.<br>JANE NELSON, TEXAS SECRETARY<br>OF STATE, et al.,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT 13100 FM 973, INC.'S RULE 91A MOTION TO DISMISS

On this date, the Court considered Defendant 13100 FM 973, Inc.'s Rule 91a Motion to Dismiss. Having considered the Motion, any responses thereto, and any argument of counsel, the Court is of the opinion that the Motion should be and hereby is GRANTED.

Accordingly, it is hereby ORDERED that, with respect to Plaintiff Robert Edward Battaile's claims against 13100 FM 973, Inc., Plaintiff's First Amended Complaint be dismissed WITH PREJUDICE. The Court further ORDERS that 13100 FM 973, Inc. recover reasonable attorney's fees and expenses incurred with respect to this motion.

Signed this ___3___ day of ___July___, 2025

_____
JUDGE PRESIDING

Exhibit B-2  15-25-00142-CV

7/14/2025 12:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Candy Schmidt

DISTRICT COURT NO. 459

CAUSE NO. D-1-GN-25-000719

ROBERT EDWARD BATTAILE, Plaintiff

v.

THE STATE OF TEXAS, et al., Defendants

_____

PLAINTIFF'S CONSOLIDATED MOTION TO VACATE JULY 3

ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2,

AND INCORPORATE EXHIBIT A

TO THE HONORABLE COURT:

Plaintiff Robert Edward Battaile files this consolidated motion to

VACATE the July 3, 2025 Order entered without proper notice, OBJECT to

the defective notice of the July 17, 2025 hearing, REASSERT his pending

Rule 2 Motion for Judicial Continuity, and INCORPORATE Exhibit A

(Envelope No. 24104274) demonstrating fatal defective service.

1

Copy from re:SearchTX

## I. PENDING APPEAL FILED

Plaintiff filed a 40-page Appeal Brief on June 20, 2025, and submitted a Notice of Expired Deadline on July 5, 2025. Despite the pendency of the appeal, the trial court issued dispositive rulings without regard for the appellate timeline, undermining judicial comity and finality.

## II. FATAL DEFECTIVE SERVICE – EXHIBIT A

Envelope No. 24104274 shows Defendant 13100 FM973 Inc. served notice to an invalid email: robert@manor.tx.us—an address Plaintiff had repeatedly flagged as incorrect. Under Texas Rule of Civil Procedure 21a, this constitutes invalid service and a denial of due process. Plaintiff was not aware of the July 3 hearing and for that reason alone, did not appear.

Considering that the Plaintiff asserts this Defendant is fraudulently stealing an estimated $7,000,000 of Manor's Chapter 380 Grant money; and withholding Manor's share of sales tax revenue during years 14 to 20 of this Grant Agreement to benefit the developer's billion-dollar national retailers (HEB and HomeDepot) – this goes far beyond a mere "procedural" transgression. This developer is also required to put in a Plaza per Manor City Codes since it is a commercial development over ten acres. See

2

Copy from re:SearchTX

§14.02.065(b)(1)(g). This represents a theft of Manor's future cultural identity and potential that has been non-existent for the past hundred years.

## III. VIOLATION OF TRCP 245 – 45-DAY RULE

Rule 245 requires that all parties receive 45 days' notice of trial or dispositive hearings. No such notice was given before the July 3 hearing, rendering the order procedurally voidable.

## IV. JUDICIAL HOPPING, BROKEN CONTINUITY, AND LACK OF REVIEW

This matter has now cycled through four judges, none of whom has meaningfully reviewed Plaintiff's 600+ pages of filings without the encumbrances of Judge Soifer's improper rulings due to her lack of any semblance of adequate review of Plaintiff's 400-pages of pleadings.

The July 3 hearing was conducted without collegial communication, under the supervision of a previously uninvolved visiting judge, without Plaintiff's presence or any discussion of his Rule 2 Motion. No discovery has occurred. Plaintiff asserts that NONE of the transcripts of the first four hearings have been delivered to the Plaintiff. Plaintiff is requesting a copy of the transcript of the July 3 illegal hearing.

3

Copy from re:SearchTX

Further at the second hearing, attorney for HEB actually "quoted" from the first hearing based upon what? Did he record that first hearing? My letter to the Court Administrator regarding this breach (and other letters) have not been responded to.

## V. OBJECTION TO JULY 17, 2025 HEARING

On June 26, 2025, Plaintiff received four duplicate eFile notices of a hearing set for July 17, 2025. No verification of delivery, no personal communication, and the court's seeming earnest attempt to remedy prior service defects (Plaintiff's wrong email address) have been proven inadequate. The pattern of ex parte calendaring without valid notice further deprives Plaintiff of due process.

## VI. UNLAWFUL PUNITIVE SANCTIONS AND PREJUDICE

The July 3 Order was the only order to dismiss claims with prejudice and grant attorneys' fees—yet it was entered without Plaintiff present, without a responsive hearing, and without review of any substantive record. This punitive result lacks both fairness and factual basis.

## VII. PLAINTIFF REQUESTING CERTIFIED MAIL COPIES

Due to repeated failures by the 459th Court administrators, in addition to

4

Copy from re:SearchTX

the eFile Notices; Plaintiff is requesting that ALL of the Parties' attorneys and all court communications to Plaintiff henceforth shall ALSO be sent via United States Postal Service Certified Mail with a signed receipt requested.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

1. VACATE the July 3, 2025 Order in full;

2. STRIKE any award of attorney's fees or prejudicial dismissals contained therein;

3. REMOVE the July 17, 2025 hearing from the docket until properly re-noticed;

4. RULE on Plaintiff's pending Rule 2 Motion for Judicial Continuity by a Judge that has read the ENTIRETY of the Plaintiff's filings;

5. ADOPT Exhibit A (Envelope No. 24104274) attached as proof of defective service and require corrected notice procedures henceforth;

6. Implement a system whereby the Plaintiff and future Pro Se litigants receive a COMPLETE copy of a Judge's Orders – and not just a postcard "Notice of Order" but the actual documents signed by the Judge. Current

5

Copy from re:SearchTX

online systems ONLY allows licensed attorneys this capability. This is an unfair and prejudicial system that willfully harms the pro se litigants.

7. GRANT such other and further relief as may be appropriate in law or equity.

Respectfully submitted on July 12, 2025 by:

_____/sig/_____

Robert Edward Battaile
Plaintiff, Pro Se
502 E Eggleston St Unit A
Manor TX 78653
robert@manortx.us

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on all parties through the Court's electronic filing system on July 12, 2025.

_____/sig/_____
Robert Edward Battaile, Pro Se Plaintiff

6

Copy from re:SearchTX

Respectfully submitted,

**SNEED, VINE & PERRY, P.C.**
200 W. 6th Street, Suite 110
Georgetown, Texas 78626
512-930-9775 (Telephone)
512-819-9707 (Telecopier)

By: _____
Ian T. Todd
Texas Bar No. 24104274
Email: itodd@sneedvine.com
Anna Puff
State Bar No. 24144206
Email: apuff@sneedvine.com
**EMAIL FOR FILINGS AND
DISCOVERY ONLY:**
gtwnfilings@sneedvine.com
ATTORNEYS FOR DEFENDANT
MC RETAIL GP, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been served by the method indicated as set out below on this 26th day of June, 2025.

*Via E-service: robert@manor.tx.us*  <<<------
Robert Edward Battaile
502 E. Eggleston St. Unit A
Manor, Texas 78653

_____
Ian T. Todd

84773-0001_____
Cause No. D-1-GN-25-000719; *Robert Edward Battaile vs. Texas Elections Division, Hon. Jane Nelson, Texas Secretary of State, et al.*
NOTICE OF HEARING
Page 2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103059980
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF'S CONSOLIDATED MOTION TO VACATE JULY 3 ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2, AND INCORPORATE EXHIBIT A
Status as of 7/14/2025 7:10 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 7/12/2025 10:35:39 AM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 7/12/2025 10:35:39 AM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 7/12/2025 10:35:39 AM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 7/12/2025 10:35:39 AM | SENT |
| Michael Roberts | | mroberts@jw.com | 7/12/2025 10:35:39 AM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 7/12/2025 10:35:39 AM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 7/12/2025 10:35:39 AM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 7/12/2025 10:35:39 AM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 7/12/2025 10:35:39 AM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 7/12/2025 10:35:39 AM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 7/12/2025 10:35:39 AM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 7/12/2025 10:35:39 AM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 7/12/2025 10:35:39 AM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 7/12/2025 10:35:39 AM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/12/2025 10:35:39 AM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 7/12/2025 10:35:39 AM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 7/12/2025 10:35:39 AM | SENT |
| Andy Soule | | asoule@rrspllc.com | 7/12/2025 10:35:39 AM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 7/12/2025 10:35:39 AM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 7/12/2025 10:35:39 AM | SENT |
| Lauren Bush | | lbush@jw.com | 7/12/2025 10:35:39 AM | SENT |

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103059980
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF'S CONSOLIDATED MOTION TO VACATE JULY 3 ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2, AND INCORPORATE EXHIBIT A
Status as of 7/14/2025 7:10 AM CST

Case Contacts

| Lauren Bush | | lbush@jw.com | 7/12/2025 10:35:39 AM | SENT |
|---|---|---|---|---|
| Karah Powers | | kpowers@chmc-law.com | 7/12/2025 10:35:39 AM | SENT |
| Edward Smith | | esmith@808west.com | 7/12/2025 10:35:39 AM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 7/12/2025 10:35:39 AM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 7/12/2025 10:35:39 AM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 7/12/2025 10:35:39 AM | SENT |
| Anna Puff | | apuff@sneedvine.com | 7/12/2025 10:35:39 AM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 7/12/2025 10:35:39 AM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 7/12/2025 10:35:39 AM | SENT |
| Robert Battaile | | robert@manortx.us | 7/12/2025 10:35:39 AM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 7/12/2025 10:35:39 AM | SENT |
| Carol Shipley | | cshipley@rrspllc.com | 7/12/2025 10:35:39 AM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 7/12/2025 10:35:39 AM | SENT |

Copy from re:SearchTX

Exhibit B-3   15-25-00142-CV

7/18/2025 4:53 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Candy Schmidt

CAUSE NO. D-1-GN-25-000719

IN THE DISTRICT COURT

459TH JUDICIAL DISTRICT

TRAVIS COUNTY, TEXAS

ROBERT EDWARD BATTAILE, Plaintiff

v.

THE STATE OF TEXAS, et al., Defendants

_____

**PLAINTIFF'S MOTION TO ORDER AND INCLUDE COURT
TRANSCRIPTS OF ALL PRIOR HEARINGS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Robert Edward Battaile, Pro Se, and respectfully

moves this Court to confirm the official recording status of all prior hearings

held in this cause and to authorize or require the filing and/or production of

certified court transcripts into the record. This request is supported by

Plaintiff's rights under the Due Process and Open Courts provisions of the

1

Copy from re:SearchTX

Texas Constitution and is necessary to ensure the appellate record is complete and reviewable. In support thereof, Plaintiff states the following:

## I. BACKGROUND

Plaintiff respectfully identifies the following hearings held in this matter based upon information in the Docket Notes through 7/3/25:

1. May 13, 2025 – Hearing before Judge Soifer

 • Reported by: Michelle Williamson

2. May 27, 2025 – Hearing before Judge Mangrum

 • Reported by: Ms. Simon (full name requested if needed)

3. June 9, 2025 – Hearing before Judge Mangrum

 • Reported by: Melinda Walker

4. July 3, 2025 – Hearing before Visiting Judge Jamison

 • Plaintiff was not present due to repeated faulty notice as a result of on-going incorrect email address by Attorney, Ian T. Todd, Sneed Vine & Perry, PC for 13100 FM973 Inc.

2

Copy from re:SearchTX

• Reported by: Linda Taylor

5. July 16, 2025 – Hearing before Visiting Judge Livingston

   • Plaintiff was present despite the same repeated faulty notice again from Attorney, Ian T. Todd, Sneed Vine & Perry, PC for clients Manor MF, LLC; and MC Retail GP, LLC as a result of the same on-going incorrect email address; discovered only as the result of in-person appearance by Plaintiff at the County Clerk's office due to misgivings about systemic unreliability.

   • Reported by: Tabitha Morrow

   These hearings have involved critical rulings and factual records that are necessary for Plaintiff's Appellant Brief to the 3rd District Court of Appeals case number 03-25-00484-CV.

## II. ARGUMENT & AUTHORITIES

   The lack of certified transcripts limits both this Court's ability to ensure factual accuracy in subsequent orders and the Plaintiff's constitutional right to a full and fair appeal.

1. Hightower v. State, 629 S.W.3d 920 (Tex. App.—Eastland 2021)

3

Copy from re:SearchTX

2. Routier v. State, 112 S.W.3d 554, 577 (Tex. Crim. App. 2003)

3. Texas Rule of Appellate Procedure 34.6(a), (f)

Further, Texas Rule of Appellate Procedure 13.1 and 34.6(a)(2) anticipate that the appellate record will include transcripts of hearings upon proper request. Given that multiple rulings—including dismissals—have been challenged or are pending appeal, the absence of these transcripts risks incomplete or misleading representations of court proceedings.

## III. RELIEF REQUESTED

Plaintiff respectfully requests:

1. That the Court authorize, direct, or facilitate transcription of all the above-listed hearings;

2. That certified copies of these transcripts be timely filed into the record and provided to the Plaintiff for appellate purposes;

3. The first hearing was over two months ago on May 13, 2025 and Plaintiff is requesting an explanation as to the reasons for the non-deliverance of the transcripts from May 13, 2025; May 27, 2025 and June 9, 2025; and

4

Copy from re:SearchTX

4. Since time is of the essence, Plaintiff requests these certified transcripts be provided immediately; and

5. That such other and further relief be granted as justice may require.

Respectfully submitted on July 18, 2025, by

/s/ Robert Edward Battaile
Robert Edward Battaile
Plaintiff, Pro Se
502 E Eggleston St Unit A
Manor, TX 78653
512-662-2955
robert@manortx.us

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all parties or counsel of record through the Court's electronic filing service on this 18th day of July, 2025.

/s/ Robert Edward Battaile
Robert Edward Battaile
Plaintiff, Pro Se

5

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103338034
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF'S MOTION TO ORDER AND INCLUDE COURT TRANSCRIPTS OF ALL PRIOR HEARINGS
Status as of 7/19/2025 1:31 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 7/18/2025 4:53:05 PM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 7/18/2025 4:53:05 PM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 7/18/2025 4:53:05 PM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 7/18/2025 4:53:05 PM | SENT |
| Michael Roberts | | mroberts@jw.com | 7/18/2025 4:53:05 PM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 7/18/2025 4:53:05 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 7/18/2025 4:53:05 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 7/18/2025 4:53:05 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 7/18/2025 4:53:05 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 7/18/2025 4:53:05 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 7/18/2025 4:53:05 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 7/18/2025 4:53:05 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 7/18/2025 4:53:05 PM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 7/18/2025 4:53:05 PM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/18/2025 4:53:05 PM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 7/18/2025 4:53:05 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 7/18/2025 4:53:05 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 7/18/2025 4:53:05 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 7/18/2025 4:53:05 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 7/18/2025 4:53:05 PM | SENT |
| Lauren Bush | | lbush@jw.com | 7/18/2025 4:53:05 PM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 7/18/2025 4:53:05 PM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103338034
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF'S MOTION TO ORDER AND INCLUDE COURT TRANSCRIPTS OF ALL PRIOR HEARINGS
Status as of 7/19/2025 1:31 PM CST

Case Contacts

| Karah Powers | | kpowers@chmc-law.com | 7/18/2025 4:53:05 PM | SENT |
|---|---|---|---|---|
| Edward Smith | | esmith@808west.com | 7/18/2025 4:53:05 PM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 7/18/2025 4:53:05 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 7/18/2025 4:53:05 PM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 7/18/2025 4:53:05 PM | SENT |
| Anna Puff | | apuff@sneedvine.com | 7/18/2025 4:53:05 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 7/18/2025 4:53:05 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 7/18/2025 4:53:05 PM | SENT |
| Robert Battaile | | robert@manortx.us | 7/18/2025 4:53:05 PM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 7/18/2025 4:53:05 PM | SENT |
| Carol  Shipley | | cshipley@rrspllc.com | 7/18/2025 4:53:05 PM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 7/18/2025 4:53:05 PM | SENT |

Copy from re:SearchTX

Exhibit B-4    15-25-00142-CV

7/22/2025 7:14 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Susan Poodiack

**CAUSE NO. D-1-GN-25-000719**

**DISTRICT COURT NO. 459TH**
**TRAVIS COUNTY, TEXAS**

**ROBERT EDWARD BATTAILE,**
  Plaintiff,

  v.

**STATE OF TEXAS, et al.,**
  Defendants

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT MC RETAIL GP,
LLC'S MOTION TO DISMISS UNDER RULE 91a**

TO THE HONORABLE JUDGE LIVINGSTON:

Plaintiff Robert Edward Battaile files this Response to the Motion to Dismiss filed by Defendant MC Retail GP, LLC, and respectfully shows the Court the following:

## I. SUMMARY OF THE CLAIMS

Plaintiff has asserted claims against Defendant MC Retail GP, LLC based on its direct contribution to ongoing public harm rooted in unlawful development, misallocation of public resources, and abuse of governmental authority.

Copy from re:SearchTX

MC Retail GP, LLC is a successor parcel owner within the 13100 FM 973, Inc. development tract, which was the recipient of a $20 million Chapter 380 Agreement from the City of Manor. The original developer received these taxpayer-funded subsidies with the expectation of creating retail infrastructure to generate sales tax revenue. MC Retail GP, LLC, has not disputed that it is now owning a medical facility within that project area, contributes no such retail benefit to generate and repay City of Manor sales taxes; and continues to benefit from infrastructure provided by public funds.

The Chapter 380 Agreement allowed the developer to recoup one-half of the retail sales taxes generated over a 20-year period. Because the development has not fulfilled the intended retail use—especially on parcels now occupied by MC Retail GP and others (Park at Manor Crossing with 596 Apartments that also generate no sales taxes) — Plaintiff seeks not only a financial clawback but also a proportionate reduction in the duration of the subsidy. Specifically, the time period should be reduced by 35% (approximately 7 years), returning needed funds to benefit the public rather than billion-dollar developers and retail giants.

Further, the above apartments have two parcels within the same development, are also the subject of Plaintiff's claims against "Park at Manor

Copy from re:SearchTX

Commons." The attorney for that entity, Eldridge Burns (eburns@rrspllc.com), admitted at the Hearing on May 13, 2025, to having only paid park fees on one of two properties, shorting the public by an estimated $200,000. While Park at Manor Commons is no longer a named defendant, the public harm persists and Plaintiff has standing to continue pursuing equitable relief against remaining identifiable beneficiaries such as MC Retail GP.

Additionally, Plaintiff asserts that H-E-B, another parcel beneficiary of the same 380-subsidized development, was subject to a requirement to construct a public plaza under city ordinances governing commercial developments exceeding ten acres. H-E-B has failed to provide this mandatory amenity, and due to the sell-off of surrounding parcels, remains the only viable entity capable of fulfilling the original public space requirement. This plaza obligation ties H-E-B directly to the unfulfilled terms and community harms emanating from the 380 Agreement project.

## II. RELIEF THAT IS BEING SOUGHT

Plaintiff seeks a clawback or equitable disgorgement of a proportion of the original public subsidy—specifically, an estimated $7 million, or 35% of the $20 million deal—based on the unfulfilled obligations and the

Copy from re:SearchTX

substantial value retained by successor entities including MC Retail GP, LLC. While it may not be "fair" for only these parcels to bear the full burden of the failed 380 Agreement, they are the only legally and practically identifiable parties remaining with ties to the benefited land.

Plaintiff further seeks a 35% reduction in the remaining subsidy time window under the Chapter 380 Agreement, to limit the public's continued burden and reallocate sales tax revenue back to core civic purposes.

In short, Plaintiff seeks:

1. Declaratory relief that the terms of the 380 Agreement were violated;

2. A determination of which parcels failed to generate the intended public benefit;

3. Equitable apportionment of recovery against MC Retail GP, LLC and successor parcels; and

4. Further discovery to assess enrichment and transactional history.

## III. RULE 91a IS INAPPROPRIATE HERE

Defendant's Motion lists the following overlapping claims:

Copy from re:SearchTX

1) "have no basis in law or fact"

2) "none identify a valid legal cause of action"

3) "merely disagrees with a change in zoning"

4) "not pleaded a valid claim"

5) "not asserted any cause of action"

6) "lobs a confusing array of accusations and grievances"

7) "only one reference to MC Retail"

8) "doesn't state any requested relief"

9) "Battaile cites no statute, common law rule or other legal basis"

10) "nor does he allege how he has been harmed... or why he has standing"

11) "has not even articulated...what type of relief he requests"

## A. Items 1, 2, 4 & 5 – Legal Basis & Valid Causes of Action

Defendant claims Plaintiff has no valid legal or factual basis for any cause of action. That is incorrect. Plaintiff pleads multiple statutory and common-law claims—fraud in inducement of public funding, ultra vires

Copy from re:SearchTX

misconduct, public trust doctrine violations, and improper disposal of municipal land or funds under Tex. Loc. Gov't Code § 253.001.

See City of Dallas v. Sanchez, 494 S.W.3d 722, 724 (Tex. 2016) ("plausibility" test denies dismissal if any plausible claims are pled).

See City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex. 2009) (ultra vires suits allowed when acts exceed grant of authority).

See Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001) (taxpayer standing requires particularized harm).

## B. Items 3 & 6 – Mischaracterizing as "Zoning Dispute" or "Confusing Grievances"

Defendant paints the complaint as mere disagreement with zoning changes or a jumble of gripes. Not accurate. The Complaint alleges serious misconduct—fraud in awarding public incentives, destruction of historic resources, and diversion of public funding—clearly supported by Appendix evidence.

See Save Our Springs Alliance v. City of Austin, 149 S.W.3d 674, 683 (Tex. App.–Austin 2004) (citizens may challenge governmental breach of land-use commitments).

Copy from re:SearchTX

See Texas Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (standing granted for harm to public resources).

## C. Items 7 & 9 – Reference to MC Retail and Legal Grounds

Defendant criticizes the complaint for referencing MC Retail only once and lacking statutory grounding. In fact, MC Retail is directly tied to the misuse of Chapter 380 funds, the Park at Manor Crossing 596-apartments project, and breach of public promises—each clearly laid out. Further, the filing cites Tex. Loc. Gov't Code § 253.001, Tex. R. Civ. P. 45/47, and public trust doctrines. The frequency of the company name has no bearing.

See Tex. Loc. Gov't Code § 253.001 (disposition of public land).

See Tex. R. Civ. P. 45, 47 (fair notice pleading).

## D. Items 8 & 11 – Stated Relief

Defendant claims no relief is sought or articulated. Plaintiff expressly seeks declaratory relief, injunctive relief, restitution, new elections, and restoration of public property/access. That satisfies pleading rules.

See City of Austin v. Whittington, 384 S.W.3d 766, 779 (Tex. 2012)

Copy from re:SearchTX

(pleading need not itemize every remedy if legal basis clear).

See Tex. R. Civ. P. 47 (fair notice standard).

## D. Item 10 – Harm and Standing

Plaintiff has pled individualized and particularized harms: loss of park access, exclusion from civic participation, unlawful arrest, and retaliation for protected speech.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (injury in fact and redressability required).

See Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001) (standing exists where concrete injuries are alleged).

See Texas Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (standing is jurisdictional and broad in public interest cases).

Rule 91a only applies where there is no basis in law or fact for the claim. Here, there is a factual and legal dispute over the flow of benefits and obligations from the original public-private partnership. Plaintiff has outlined rational theories of successor liability, unjust enrichment, standing, and public harm sufficient to survive Rule 91a scrutiny.

Copy from re:SearchTX

In City of El Paso v. Heinrich, 284 S.W.3d 366, 373 (Tex. 2009), the Texas Supreme Court confirmed that suits to require state officials to comply with statutory or constitutional provisions are not barred by sovereign immunity. Plaintiff's claims implicate unlawful conduct by complicit government actors enabling the continued enrichment of private entities like MC Retail GP.

In Heights Medical Center, Inc. v. Estate of E.H., 603 S.W.3d 828 (Tex. 2020), the Court reversed dismissal where there was no adequate review of facts. The ruling emphasized that Rule 91a motions must be judged by the facts pled, not disputed or mischaracterized summaries.

In Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001), the Texas Supreme Court reaffirmed that standing exists where a plaintiff shows concrete and particularized injuries. That is precisely the case here—where Plaintiff was denied meaningful public participation, denied due process, and continues to suffer from unlawful use of public assets.

Copy from re:SearchTX

Further, in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the U.S. Supreme Court held that injury in fact and redressability are sufficient to satisfy standing. These elements are pled explicitly in Plaintiff's filings and supported by exhibits.

Lastly, in Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993), the Texas Supreme Court held that standing is a component of subject matter jurisdiction and must be construed broadly in public interest cases. This case involves the misuse of taxpayer funds, violations of zoning laws, and destruction of historical assets, all public interests of the highest order.

**E. BAD FAITH FILINGS AND SERVICE DEFECTS**

Plaintiff further objects to Defendants' procedural conduct. Despite having the correct email address for Plaintiff from earlier filings, service of key documents including this Motion to Dismiss was repeatedly misdirected or delayed, impairing Plaintiff's ability to respond in a timely and meaningful fashion. This bad faith handling of notice and service, including use of an outdated address known to be incorrect, further justifies denial of

Copy from re:SearchTX

Rule 91a relief. Plaintiff did not attend the Hearing for Defendant 13100 FM 973 Inc. who is the developer of the Manor Crossing "retail center" that has the over-arching responsibility to reduce and correct the Chapter 380 financial and time-length violations; and to have provided (or at least informed) all of their property tenants of the Plaza requirements.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court DENY the Rule 91a Motion to Dismiss filed by MC Retail GP, LLC, allow the claims to proceed, and permit full discovery and judicial review of the issues outlined herein.


Respectfully submitted on July 22, 2025 by

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Plaintiff Pro Se
502 E Eggleston St Unit A
Manor TX 78653
512-662-2955
robert@manortx.us

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Civil Procedure on all parties through the Court's electronic filing system on this 22nd day of July, 2025.

___/s/ Robert Edward Battaile____
Robert Edward Battaile, Pro Se

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103461626
Filing Code Description: RESPONSE
Filing Description: PLAINTIFF'S RESPONSE TO DEFENDANT MC RETAIL GP, LLC'S MOTION TO DISMISS UNDER RULE 91A
Status as of 7/23/2025 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 7/22/2025 7:14:52 PM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 7/22/2025 7:14:52 PM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 7/22/2025 7:14:52 PM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 7/22/2025 7:14:52 PM | SENT |
| Michael Roberts | | mroberts@jw.com | 7/22/2025 7:14:52 PM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 7/22/2025 7:14:52 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 7/22/2025 7:14:52 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 7/22/2025 7:14:52 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 7/22/2025 7:14:52 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 7/22/2025 7:14:52 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 7/22/2025 7:14:52 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 7/22/2025 7:14:52 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 7/22/2025 7:14:52 PM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 7/22/2025 7:14:52 PM | SENT |
| Cynthia  W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/22/2025 7:14:52 PM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 7/22/2025 7:14:52 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 7/22/2025 7:14:52 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 7/22/2025 7:14:52 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 7/22/2025 7:14:52 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 7/22/2025 7:14:52 PM | SENT |
| Lauren Bush | | lbush@jw.com | 7/22/2025 7:14:52 PM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 7/22/2025 7:14:52 PM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103461626
Filing Code Description: RESPONSE
Filing Description: PLAINTIFF'S RESPONSE TO DEFENDANT MC RETAIL GP, LLC'S MOTION TO DISMISS UNDER RULE 91A
Status as of 7/23/2025 9:22 AM CST

Case Contacts

| Karah Powers | | kpowers@chmc-law.com | 7/22/2025 7:14:52 PM | SENT |
|---|---|---|---|---|
| Edward Smith | | esmith@808west.com | 7/22/2025 7:14:52 PM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 7/22/2025 7:14:52 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 7/22/2025 7:14:52 PM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 7/22/2025 7:14:52 PM | SENT |
| Anna Puff | | apuff@sneedvine.com | 7/22/2025 7:14:52 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 7/22/2025 7:14:52 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 7/22/2025 7:14:52 PM | SENT |
| Robert Battaile | | robert@manortx.us | 7/22/2025 7:14:52 PM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 7/22/2025 7:14:52 PM | SENT |
| Carol  Shipley | | cshipley@rrspllc.com | 7/22/2025 7:14:52 PM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 7/22/2025 7:14:52 PM | SENT |

Copy from re:SearchTX

Exhibit B-5  15-25-00142-CV

7/23/2025 12:56 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Susan Schmidt

**CAUSE NO. D-1-GN-25-000719**

**DISTRICT COURT NO. 459TH**
**TRAVIS COUNTY, TEXAS**

**ROBERT EDWARD BATTAILE,**
   Plaintiff,

   v.

**STATE OF TEXAS, et al.,**
   Defendants

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT MANOR MF, LLC'S**

**MOTION TO DISMISS UNDER RULE 91a**

TO THE HONORABLE JUDGE LIVINGSTON:

Plaintiff Robert Edward Battaile files this Response to the Motion to

Dismiss filed by Defendant Manor MF, LLC, and respectfully shows the

Court the following:

**I. SUMMARY OF THE CLAIMS**

Plaintiff has asserted claims against Defendant Manor MF, LLC—also

1

Copy from re:SearchTX

known as Las Entradas South, and also owned apparently by DD&B Construction—for unlawful development within a designated historic district, and in violation of the public trust, zoning protocols, and democratic legitimacy.

Manor MF, LLC is responsible for a multi-family apartment complex constructed adjacent to, and directly on top of the protected historic homestead of the city's founder, James B. Manor. This area was designated as historic in 2017. (See Pl. App. 1 Rev. 1 pg 9 map created by Plaintiff based upon the boundaries established in the City of Manor Code §14.02.031.) The development was approved by a City Council that lacked a legal quorum, due to fraudulent certification and unresolved election irregularities that have not been addressed despite statutes requiring "expedited" procedures to address.

The Comprehensive Plan underpinning the project was itself the product of fraud and neglect. It was adopted following the cancellation of required town halls and a botched "Manor 2050" community survey. The consultant, Freese and Nichols, ultimately returned approximately $138,000 to the city

2

Copy from re:SearchTX

following the exposure of these failures by Plaintiff. Nevertheless, City Council refunded those funds back to the consultant and adopted the uncorrected 605-page Plan despite its inconsistencies, marketing language, and speculative "dashboards" (See Pl. App. 1 Rev. 1 page 228). Despite their theft of over $50,000 worth of townhall meetings in their Request for Proposal; and in the Agreement with the City to inform citizens about roads, infrastructure, parks, water and waterwater plans) – Freese and Nichols were dismissed.

The Comprehensive Plan was never put to a vote by the public, and its misuse allowed unlawful zoning approvals. Manor MF was placed in an area never lawfully redesignated. No proper environmental, cultural, or zoning review was conducted. Plaintiff raised these issues in an attempted TRO based upon eminent harm and irreparable destruction but was unable to locate and serve the developer, Sushil Mehta, in time.

The fraudulent "self-certification" by Manor City Council does not hide the fact of their illegally constituted quorum because four of seven city council members should have never been certified except that City of Manor, Travis County and the State of Texas authorities have looked away

3

Copy from re:SearchTX

and demonstrated lack of necessary courage despite simple and obvious Election Coercion by City Manager, Leslie Scott Moore and City Secretary, Lluvia Almaraz for preventing Bobby Reese from being on the Ballot for City Council Place Three; and by their efforts to deny Plaintiff's effective ability to campaign for Mayor by arresting him and enacting unconscionable bail conditions and retaliatory measures that have continued against the whistleblower Plaintiff for exposing the alleged collusion and crimes.

## II. RELIEF THAT IS BEING SOUGHT

Plaintiff seeks equitable and declaratory relief related to the improper permitting and construction of this major residential 240+ apartments project. These approvals constitute ultra vires conduct under Texas law and caused damage to historic property, community heritage and Manor's small-town neighborhood "quality of life." There is absolutely nothing "historic" about an apartment complex of this size in Old Manor.

Plaintiff requests:

4

Copy from re:SearchTX

A. Declaratory judgment that Manor MF's permitting was unlawful;

B. Injunctive relief against continued occupation or development pending a full legal review;

C. Orders requiring remedial planning or relocation;

D. Admission of Comprehensive Plan "dashboard" for this neighborhood; see Pl. App. 1 Rev. 1 page 228; as evidence of fraudulent policy foundation. Comprehensive Plans are not allowed to be used as a cudgel to "force" zoning decisions.

• See FM Properties Operating Co. v. City of Austin, 22 S.W.3d 868 (Tex. 2000) (Comprehensive Plans are not self-enforcing; zoning and land-use decisions require separate and specific authorization by ordinance).

• See Tex. Loc. Gov't Code § 213.002 (A comprehensive plan 'does not confer zoning authority' and is intended only as a guide).

• Defendant cannot invoke a flawed and unvoted plan—created through a failed process and reversed contract—to justify overriding historical protections and public trust duties. Use of the Comprehensive Plan to bulldoze zoning rights constitutes abuse of process and ultra vires conduct.

## III. RULE 91a IS INAPPROPRIATE HERE

5

Copy from re:SearchTX

Defendant's Motion lists the following overlapping claims:

1) "none identify a valid legal claim"

2) "Battaile simply disagrees with... how said land is to be developed"

3) "disagreeing... does not provide a cognizable cause of action"

4) "[does not provide] equitable relief"

5) "has not pleaded a valid cause of action"

6) "has no basis in law or fact to do so"

7) "has not asserted any cause of action"

8) "lobs a confusing array of accusations and grievances"

9) "there is only one reference to Manor MF"

10) re: City Council dismissals, wrongly states that "the members of which have already been dismissed" [The Mayor, City Manager and City Secretary have not been dismissed.]

11) "does not identify any duty owed... to Battaile"

12) "He does not assert, nor offer any evidence" that would "give him any valid relief"

13) again, "Battaile has no basis in law or fact"

14) "...together with the inferences reasonably drawn from them, do not entitle... the relief sought"

6

Copy from re:SearchTX

15) requests to "include attorney's fees and expenses"

## A. Items 1, 2, 4, 5, 12 and 13 – Legal Basis & Valid Causes of Action

• Defendant argues Plaintiff's claims lack legal foundation. Not so. Plaintiff properly pleads ultra vires actions, historic preservation violations, due process harms, and public trust breaches. These are recognized claims under Texas law.

• See City of Dallas v. Sanchez, 494 S.W.3d 722 (Tex. 2016) (plausibility test denies dismissal if any plausible claims are pled).

• See City of El Paso v. Heinrich, 284 S.W.3d 366 (Tex. 2009) (ultra vires suits may proceed against government actors who exceed lawful authority).

• See Brown v. Todd, 53 S.W.3d 297 (Tex. 2001) (standing is conferred when plaintiffs show specific, personal harm).

## B. Items 3 & 6 – Mischaracterizing the Complaint

• Defendant misrepresents this as a zoning dispute. In truth, Plaintiff alleges ultra vires approvals, fraudulent public planning, and damage to protected historic resources, supported by public records and exhibits.

7

Copy from re:SearchTX

• See Save Our Springs Alliance v. City of Austin, 149 S.W.3d 674 (Tex. App.–Austin 2004) (citizens can challenge governmental failure to protect land-use commitments).

• See Texas Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440 (Tex. 1993) (standing applies where public resource harm is alleged).

## C. Items 7 & 9 – Specific Allegations & Statutory Grounds

• Defendant wrongly claims the complaint fails to specify legal basis. Plaintiff's claims arise under Texas preservation and zoning codes, the Texas Constitution, and doctrines such as public trust and ultra vires.

• See Tex. Loc. Gov't Code § 253.001 (limits on disposal of public land).

• See Tex. R. Civ. P. 45, 47 (pleading rules require fair notice).

## D. Items 8, 11 & 14 – Relief Sought

• Plaintiff clearly requests declaratory relief, injunctions, and planning remedies. This satisfies Rule 47's fair notice requirements.

• See City of Austin v. Whittington, 384 S.W.3d 766 (Tex. 2012) (pleadings need only provide fair notice of the relief sought).

8

Copy from re:SearchTX

• See Tex. R. Civ. P. 47 (permitting general prayers for equitable and legal relief).

## E. Item 10 – Harm and Standing

• Plaintiff alleges personal and particularized injuries: unlawful exclusion from hearings, retaliatory arrests, and harm to neighborhood quality and historic heritage wherein he resides in "Old Manor" (i.e. the "historic" original "small town" neighbor whose very character is under attack).

• See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (requires injury in fact and redressability).

• See Brown v. Todd, 53 S.W.3d 297 (Tex. 2001) (concrete harm confers standing).

• See Texas Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440 (Tex. 1993) (standing applies broadly in public interest cases).

## F. Attorney's Fees should not be awarded.

This is not a "frivolous" lawsuit and the only attorney's fees yet awarded were those that occurred at the July 3rd Hearing at which the Plaintiff did not appear due to faulty notice that reeks of scienter on the part of Attorney,

9

Copy from re:SearchTX

Ian T. Todd's repeated notices to the wrong email address of Plaintiff, despite using correct address previously. This was further detailed in Plaintiff's "CONSOLIDATED MOTION TO VACATE JULY 3 ORDER, OBJECT TO JULY 17 HEARING, REASSERT RULE 2, AND INCORPORATE EXHIBIT A" filed on July 12th. Ian Todd (Sneed, Vine & Perry, P.C.) is the Attorney for three Defendants: 13100 FM 973 Inc. (appearing at the July 3rd unopposed hearing) and for Manor MF LLC; and Manor Retail GP (at the July 16th inadequately noticed hearing).

**Dismissal is Premature Under Rule 91a**

• Rule 91a does not permit courts to resolve factual disputes. Plaintiff's well-pled claims of ultra vires approvals, public harm, and flawed zoning make dismissal inappropriate.

• See Heights Medical Center, Inc. v. Estate of E.H., 603 S.W.3d 828 (Tex. 2020) (dismissals improper without full review of the factual record).

Rule 91a is not a vehicle for resolving factual disputes. Plaintiff has pled specific facts regarding unlawful permitting, historic preservation violations, and ultra vires actions.

10

Copy from re:SearchTX

In City of El Paso v. Heinrich, 284 S.W.3d 366, 373 (Tex. 2009), the Texas Supreme Court confirmed that claims seeking to compel compliance with statutory or constitutional duties may proceed despite sovereign immunity. Plaintiff's claims fall squarely in this category.

In Heights Medical Center, Inc. v. Estate of E.H., 603 S.W.3d 828 (Tex. 2020), the Court reversed dismissal where the record failed to show meaningful review. That principle applies here.

In Brown v. Todd, 53 S.W.3d 297 (Tex. 2001), the Court held that plaintiffs have standing when they allege specific harm—exactly what is pled here.

In Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the U.S. Supreme Court set out standing criteria based on injury and redressability—all present here.

In Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440 (Tex.

11

Copy from re:SearchTX

1993), the Court affirmed standing is jurisdictional and broadly construed in public matters. Preservation of public assets and lawful governance qualify as such matters.

## F. BAD FAITH FILINGS AND SERVICE DEFECTS

Plaintiff further objects to Defendants' procedural conduct. Despite having the correct email address for Plaintiff from earlier filings, service of key documents including this Motion to Dismiss was repeatedly misdirected or delayed, impairing Plaintiff's ability to respond in a timely, meaningful fashion. This bad faith handling of notice and service, including use of an address known to be incorrect, further justifies denial of Rule 91a relief.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court DENY WITH PREJUDICE the Rule 91a Motion to Dismiss filed by Defendant Manor MF, LLC., allow the claims to proceed, and grant any further relief in law or equity.

Respectfully submitted on July 23, 2025 by


  /s/ Robert Edward Battaile
Robert Edward Battaile, Plaintiff

12

Copy from re:SearchTX

Pro Se Litigant
502 E Eggleston St Unit A
Manor TX 78653
512-662-2955
robert@manortx.us

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been

served in accordance with the Texas Rules of Civil Procedure on all parties

through the Court's electronic filing system on this 23rd day of July, 2025.


   /s/ Robert Edward Battaile

Robert Edward Battaile, Pro Se

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103464244
Filing Code Description: RESPONSE
Filing Description: PLAINTIFF'S RESPONSE TO DEFENDANT MF, LLC'S MOTION TO DISMISS UNDER RULE 91A
Status as of 7/23/2025 10:42 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 7/23/2025 12:56:24 AM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 7/23/2025 12:56:24 AM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 7/23/2025 12:56:24 AM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 7/23/2025 12:56:24 AM | SENT |
| Michael Roberts | | mroberts@jw.com | 7/23/2025 12:56:24 AM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 7/23/2025 12:56:24 AM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 7/23/2025 12:56:24 AM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 7/23/2025 12:56:24 AM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 7/23/2025 12:56:24 AM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 7/23/2025 12:56:24 AM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 7/23/2025 12:56:24 AM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 7/23/2025 12:56:24 AM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 7/23/2025 12:56:24 AM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 7/23/2025 12:56:24 AM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/23/2025 12:56:24 AM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 7/23/2025 12:56:24 AM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 7/23/2025 12:56:24 AM | SENT |
| Andy Soule | | asoule@rrspllc.com | 7/23/2025 12:56:24 AM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 7/23/2025 12:56:24 AM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 7/23/2025 12:56:24 AM | SENT |
| Lauren Bush | | lbush@jw.com | 7/23/2025 12:56:24 AM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 7/23/2025 12:56:24 AM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103464244
Filing Code Description: RESPONSE
Filing Description: PLAINTIFF'S RESPONSE TO DEFENDANT MF, LLC'S MOTION TO DISMISS UNDER RULE 91A
Status as of 7/23/2025 10:42 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Karah Powers | | kpowers@chmc-law.com | 7/23/2025 12:56:24 AM | SENT |
| Edward Smith | | esmith@808west.com | 7/23/2025 12:56:24 AM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 7/23/2025 12:56:24 AM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 7/23/2025 12:56:24 AM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 7/23/2025 12:56:24 AM | SENT |
| Anna Puff | | apuff@sneedvine.com | 7/23/2025 12:56:24 AM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 7/23/2025 12:56:24 AM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 7/23/2025 12:56:24 AM | SENT |
| Robert Battaile | | robert@manortx.us | 7/23/2025 12:56:24 AM | SENT |
| Robert Battaile | | robert@manortx.us | 7/23/2025 12:56:24 AM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 7/23/2025 12:56:24 AM | SENT |
| Carol  Shipley | | cshipley@rrspllc.com | 7/23/2025 12:56:24 AM | SENT |
| ROBERT EDWARDBATTAILE | | robert@manor.tx.us | 7/23/2025 12:56:24 AM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 7/23/2025 12:56:24 AM | SENT |

Copy from re:SearchTX

Exhibit B-6   15-25-00142-CV

7/30/2025 10:42 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Stephanie Garza

CAUSE NO. D-1-GN-25-000719

DISTRICT COURT NO. 459TH

TRAVIS COUNTY, TEXAS


**ROBERT EDWARD BATTAILE**
Plaintiff,

     v.


**STATE OF TEXAS, et al.**
Defendants.

_____

### PLAINTIFF'S SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD


  This petition further amends the original petition filed on January 29, 2025 and the First Amendment to said Petition filed on March 17, 2025; which are presented in their entirety after the first part which ends at Item N on Page 22.

  This amendment is additional to; and includes the former Petitions which are contained and incorporated by reference herein.  The remainder of this Second Amendment continues at the Supplemental Prayer for Relief.


  **TO THE HONORABLE JUDGE OF SAID COURT:**


NOW COMES Plaintiff ROBERT EDWARD BATTAILE, pro se, and

files this SECOND AMENDED PETITION.


Page 1 of Pl. 2nd Am.  (New)

Copy from re:SearchTX

This amendment adds and clarifies claims, reasserts unaddressed motions and prayers, updates parties and facts based on subsequent actions, and reflects Plaintiff's ongoing demand for equitable and injunctive relief. A comprehensive list of motions still pending and not ruled upon is attached as Exhibit A – **"Unruled Motions**."

## A. Preamble: Plaintiff's Epiphany

As this case has progressed, a constitutional dilemma has emerged: the very institutions tasked with redress have been dismissed, leaving the Plaintiff—and the public—without the traditional and constitutionally expected forums for truth or remedy.

For instance, the **election contest** would normally fall under the jurisdiction of the Elections Division of the Texas Secretary of State. Yet both the City of Manor and Secretary of State representatives requested dismissal, suggesting either indifference or willful concealment.

Plaintiff's original PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD petition filed on January 29, 2025 specifically asked

Copy from re:SearchTX

for an entity other than the City of Manor to oversee the contested election, and that a judge be assigned from outside of Travis County. Although that request was struck in a previous revision, Plaintiff now reasserts it and moves to strike the prior revision.

Hon. Jane Nelson was sent Certified Letters protesting the Election from Plaintiff and from Mr. Bobby Reese that were delivered on August 2, 2025.

Further, a FOIA Request through the Election Division's website about the results of the "required" investigation of alleged Election-related crimes and fraud has apparently been stymied by the State citing attorney privilege, and other obfuscations.

Attorney General Ken Paxton, still a named defendant, retains the power to call, oversee, and certify an election. Plaintiff, and community member Bobby Reese (illegally denied a place on the City Council ballot; and on the write-in ballot) sent a certified letter to AG Paxton (delivered August 28, 2024), urging him to act. His refusal to intervene places the burden of election oversight and certification on either the Texas Legislature or a qualified neutral third party.

Plaintiff proposes that, short of federal enforcement, a large neighboring county—such as Bexar, Travis, or Harris County—with a population

Copy from re:SearchTX

exceeding 500,000, an operational elections division, and a documented record of humane jail conditions—be designated to supervise and certify the next City of Manor election under court order or legislative direction.

1) City of Manor's dismissal does not erase its decades-long civil rights infractions, cultural suppression, and failure to provide basic services to the Old Manor residents especially. Parks are empty despite ample funds for community amenities and activities. Plaintiff continues to advocate for two independent oversight bodies:

**a) Reparations and Historic Justice Tribunal**

**b) Parks and Recreation Public Trust Tribunal**

To remedy these long-standing harms, these bodies must be empowered with eminent domain authority over key historical properties and plazas, as well as the power to call a Special Election should such determination align with their mission.

Plaintiff asserts that the City's current approach constitutes a misuse and abdication of eminent domain authority—failing to exercise it where warranted for public protection, preservation, or cultural justice, while simultaneously enabling or passively approving private takings

Copy from re:SearchTX

masquerading as public benefit. This violates both the Texas Constitution (Art. I, § 17) and statutory limitations on eminent domain found in Tex. Gov't Code § 2206.001, which prohibit takings for economic development cloaked as public use.

In effect, the City's failure to affirmatively use eminent domain to preserve historic Black cemeteries, the 1840 James B Manor homestead, and other historic community assets has enabled developers to seize de facto control, thereby achieving through neglect what the law would otherwise forbid.

2) A powerful tool being misused is the faulty **Comprehensive Plan**, authored by Consultant-Planners, Freese and Nichols functions as a pretext for cultural and economic displacement, and must be withdrawn. The Consultant's dismissal as a Defendant has no impact on the dismissal of the actual Plan, acknowledgement of its defective process and correction of faulty outcomes within a codified "Historic District." This is especially true since the City Council has been acting without a valid legal quorum.

3) Plaintiff respectfully urges the Court to immediately address the outstanding **Temporary Restraining Orders** (some as Emergency Orders), required to halt further destruction of protected historic public assets.

Copy from re:SearchTX

Despite the dismissal of certain developers, the physical acts of demolition, grading, and site alteration continue—causing **imminent and irreparable harm** for which no adequate remedy at law exists. These harms persist regardless of dismissal status, and are often carried out by successors in interest or contractors acting under cover of confusion or delay.

4) In the absence of prompt injunctive relief, Plaintiff is left with no recourse but to seek ex parte proceedings—an outcome neither preferred nor ideal, but necessitated by the urgency of the damage and the failure of existing defendants or courts to act.

Manor's financial health is not in question: with over $105 million in funds, including at least $35 million of unrestricted funds ~ and excellent cash-flow continuing. Thus, the City has the means to preserve its legacy.

**Plaintiff's Epiphany is already occurring.** For example, on July 28, 2025, a Legal Assistant in the Office of the Attorney General emailed the 459th District Court requesting a "remedy" to file a Motion to Sever— despite already having secured dismissal for Defendant Secretary of State Jane Nelson and admitting they were "no longer a party on eFile." One

Copy from re:SearchTX

justification was that the severance was necessary to "preserve judicial economy"—a phrase that rings hollow when applied to a defendant already removed from the case. This unusual post-dismissal request came only after multiple unreturned phone calls, yet was met with a same-day written reply by the Court's Judicial Assistant.

Meanwhile, Plaintiff—who remains an active party—has been forced to file formal motions and endure months of silence to obtain even the most basic procedural rulings. This contrast in responsiveness illustrates the core of Plaintiff's realization: government actors, even after dismissal, are granted informal access and court attention, while the Pro Se Plaintiff faces procedural barriers at every turn. Such unequal treatment corrodes public trust and demonstrates the need for outside intervention to restore fairness.

## B. PARTIAL SUMMARY JUDGEMENT FOR ELECTION ITEMS; AND JURY TRIAL FOR REMAINDER

Plaintiff's prior Motion for Partial Summary Judgment—seeking to remove the Election Contest issue and permit Plaintiff to pursue the

Copy from re:SearchTX

widely publicized and statutorily recognized "fast-track" appeal—has still not been ruled upon, a full nine months after the November 2024 election; and despite Plaintiff assertion that City of Manor has been operating without a lawful quorum since the November, 2024 election.

Plaintiff reasserts this motion and further demands that the remaining issues be resolved by jury trial, to be overseen by a judge outside Travis County.

Only such external oversight can bring legitimacy to a process corrupted by political and procedural indifference.

Plaintiff cites Rothgery v. Gillespie County, 554 U.S. 191 (2008), to reaffirm that the right to counsel attaches at initial appearance, which was denied here. Under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), municipal inaction or systemic failure—such as the use of no-record courts —may give rise to liability under 42 U.S.C. § 1983.

And under Hope v. Pelzer, 536 U.S. 730 (2002), where practices are clearly unconstitutional, relief is warranted even absent an identical precedent. These cases, taken together, support both the legal and moral

Copy from re:SearchTX

necessity of removing adjudication from the current venues and placing it in neutral, constitutionally sound hands.

Plaintiff also questions: Who will hold police accountable? With the City of Manor's Ethics Commission no longer available due to dismissal, Plaintiff has apparently exhausted attempts to involve outside oversight—including the Texas Rangers and Texas Police Association, to no avail. Further, Plaintiff has repeated emailed the Texas Legislature, including the Senate Rules Committee, and the House Committee on Elections.

Further, Plaintiff appeared and spoke at a Senata hearing about "Trust in Government" and a separate hearing about "Protecting Texas History" – again, to no avail despite simple and obvious crimes done by City of Manor, City Council, Staff and Police; and historic sites being destroyed.

## C. Request for Appointment of Special Master and Oversight Tribunals

In light of systemic failures at the municipal, county, and state levels, Plaintiff seeks the appointment of a Special Master under Rule 53 of the Texas Rules of Civil Procedure, or under the Court's inherent equitable powers. This appointment is necessary to ensure oversight, investigation, and redress in areas where no functional authority remains: police

Copy from re:SearchTX

misconduct, election coercion involving a federal election, and widespread historical and cultural desecration.

Rule 53 of the Texas Rules of Civil Procedure allows a court to appoint a Special Master when necessary to perform duties that aid the court in resolving complex matters of law or fact. This includes investigations, report generation, compliance monitoring, and acting as a neutral fact-finder.

While typically used in equity cases, the scope and application of Special Masters has long been expanded to civil rights, institutional reform, and federal enforcement matters.

Federal courts have repeatedly appointed Special Masters and oversight panels in cases involving civil rights violations. Notable examples include desegregation orders in Dallas ISD and Houston ISD, where monitors oversaw racial balance plans and ensured compliance with federal mandates.

In ODonnell v. Harris County (S.D. Tex. 2019), federal monitors were appointed to oversee bail reform and jail condition litigation. These appointments have helped restore public accountability when state institutions refused or failed to act.

Copy from re:SearchTX

In the present case, Plaintiff alleges election interference, illegal exclusion from ballots, enforcement misconduct tied to a federal election, and systematic retaliation through the police and municipal court systems.

Despite formal requests and public testimony, state actors—including the Secretary of State, Attorney General, and the Travis County Commissioners Court—have refused to intervene. The City of Manor has been dismissed as a defendant, but the misconduct continues and touches on state and federally protected rights.

1) Plaintiff therefore requests the Court appoint a Special Master to immediately oversee a **Police Accountability Tribunal**. This tribunal shall investigate misconduct by law enforcement, retaliation against political participation, and other abuses linked to municipal and county officials. At the Court's discretion, this Master may also coordinate or preside over the two additional oversight bodies Plaintiff urges as imperative:

a**. The Reparations and Historical Justice Tribunal** – focused on the destruction of important historical sites – not just for "Black folks" but for "all folks" including all Manor present and future residents – including historical sites, small-town neighborhoods, schools, and cemeteries.

b**. The Parks and Recreation Public Trust Tribunal** – empowered

Copy from re:SearchTX

to review the misuse of parkland, denial of public access, and diversion of land meant for community use for citizens of all ages and ethnicities.

These oversight structures are not proposed lightly. They represent the last remaining remedy after the collapse of all normal forums for accountability. Without federal-style oversight, the Plaintiff and the public face imminent and irreparable harm with no avenue left for relief. Plaintiff urges this Court to take bold, lawful, and historically grounded action.

Finally, Plaintiff emphasizes that justice will never be realized under existing structures. City of Manor, Travis County, and the State of Texas have collectively failed to enforce even basic civic and constitutional norms: from public comment rights to humane jail conditions, and the abolition of Courts of No Record.

## D. Preservation of Damages Claims

Plaintiff explicitly does not waive any claim for monetary damages, restitution, or other legal relief by requesting equitable remedies herein. The appointment of a Special Master and the establishment of oversight tribunals are sought in addition to, not in lieu of, all pending and future claims for

Copy from re:SearchTX

damages—subject to proper findings on governmental immunity, scienter, and due process violations.

Equitable relief is urgently requested only to prevent further irreparable harm, and to ensure the preservation of evidence and public rights while legal claims proceed.

**E. Weaponization of Rule 91a and Jurisdictional Void**

Plaintiff asserts that Defendants—and, in effect, the judiciary—have improperly weaponized Texas Rule of Civil Procedure 91a to dismiss complex, fact-intensive claims under the guise that they "lack a basis in law." Many such dismissals have been based on assertions of lack of jurisdiction or immunity, with no meaningful inquiry into the facts or applicability of exceptions.

However, when one court dismisses for lack of jurisdiction, there exists an implicit promise that another forum does exist and will entertain the claims. Here, no such alternative venue has materialized.

This creates a constitutional contradiction: a right without a remedy. Texas courts have long held that every legal wrong should have a forum for redress. When Rule 91a is applied in a manner that forecloses all paths to

Copy from re:SearchTX

relief—particularly for claims involving constitutional violations, ultra vires conduct, or systemic civil rights harm—it becomes an instrument of denial rather than justice.

Plaintiff respectfully submits that such misuse of procedural tools not only frustrates due process but violates the open courts doctrine enshrined in Article I, Section 13 of the Texas Constitution which reads: *"Every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."*

Plaintiff further notes the inconsistent and arbitrary application of Rule 91a across multiple defendants and presiding judges in this case. Despite the use of nearly identical defense motions — many accompanied by proposed orders submitted in advance — one judge granted dismissal with prejudice and attorneys' fees, while another judge reviewing substantively identical filings denied attorneys' fees and issued dismissal without prejudice. These divergent outcomes, despite similar facts and pleadings, are compounded by the fact that Plaintiff was improperly noticed on multiple hearings; and excluded from one very important hearing, and many proposed orders were adopted verbatim without indication of independent judicial review.

Copy from re:SearchTX

## Preservation of 12(b)(6)-Equivalent Objections Under Rule 91a

Plaintiff respectfully objects to the continued misuse of Tex. R. Civ. P. 91a, which mimics the federal 12(b)(6) standard yet has been applied without adequate explanation or judicial findings. Rule 91a requires that the court determine, "based solely on the pleading of the cause of action," whether the claim has a basis in law or fact. In multiple dismissals in this case, no rationale or individualized analysis has been provided—creating uncertainty whether the court met the Rule's procedural and substantive requirements.

Plaintiff asserts that future Rule 91a motions by additional defendants must not be granted without (1) a clear finding on the record that no legal or factual basis exists, and (2) an opportunity for Plaintiff to amend, as Rule 91a.5 contemplates. To the extent prior dismissals lack a stated basis, Plaintiff preserves all objections and intends to challenge such orders as improper or voidable.

While Tex. R. Civ. P. 91a.7 generally mandates an award of attorney's fees to the prevailing party, such awards must follow a procedurally sound dismissal. In Plaintiff's case, the only fee award followed a hearing from which Plaintiff was excluded due to improper notice—rendering the

Page 15 of Pl. 2nd Am. (New)

Copy from re:SearchTX

proceeding defective. No fees were awarded in other Rule 91a dismissals where Plaintiff had been properly served or contested dismissal. The Court's inconsistency further underscores the procedural irregularities that permeate this case.

**F. Addition of Defendants Based on Continuing Ultra Vires Acts and Public Harm; and for other Good Reasons Noted Below**

Plaintiff adds additional defendants, including:

1) Travis County Commissioners not yet named: Brigid Shea (Pct. 2), Ann Howard (Pct. 3), Margaret Gómez (Pct. 4), and County Judge Andy Brown — in their official capacities.

2) Travis County Sheriff Sally Hernandez in her official responsible for deplorable conditions and procedures at Travis County Central Booking.

3) CapMetro (Capital Metropolitan Transportation Authority) for deceptive trade practice related to hiding facts that they are charging citizens on weekends but providing no services.

4) Carlos Moyeda, owner/developer 104 E Townes Street historic Texas mansion destroyed based upon Comprehensive Plan errors and ignorance of historic district statutes and intent.

Copy from re:SearchTX

5) Matt Woodard, Public Works Director for the City of Manor, in both his official and individual capacities, for ultra vires conduct including desecration of a protected cemetery and misuse of public resources to benefit private developer Legacy Performance Capital.

6) Former City of Manor Police Department Officer Sgt. David Milton, who at a Juneteenth 2023 Event evicted Plaintiff from a public park based upon unsubstantiated lies and without legal justification violating Plaintiff's Civil Rights; purged bodycam footage; and participating in a failed investigation and cover-up.

Plaintiff notes that Milton was not included due to a clerical error by the court (Struble was listed twice as a party). Detective Struble is included as a party and both are on the list of denied Discovery elements as to finding out their last know addresses for purpose of citation service.

7) Austin Bocce League – a 501(c)(3) nonprofit corporation whose standing as co-plaintiff is reaffirmed herein out of an abundance of caution.

## G. Plaintiff updates his address of record and Requests Certified Mail:

By USPS Certified to 502 E Eggleston St, Unit B - Manor, Texas 78653

Copy from re:SearchTX

## H. Official Capacities

Plaintiff reasserts that he is suing officials in their official capacities for declaratory and injunctive relief under the ultra vires doctrine and applicable civil rights statutes.

## I. Lack of Judicial Review

Plaintiff also asserts multiple unruled motions and identifies that no meaningful judicial review of those filings has occurred, prejudicing Plaintiff and the public interest. These motions, detailed in Exhibit **A – Unruled Motions** are unresolved, should be ruled upon or set for hearing.

Plaintiff continues to seek emergency relief in the form of injunctions, and declaratory rulings, related to public land theft, parkland desecration, election coercion, jail abuses, and public trust violations.

## J. Lack of Transcripts.

Further, Plaintiff has still not yet received a single transcript going back three months; despite requesting one in person at each and every court

Copy from re:SearchTX

hearing he attended when properly noticed (i.e., excluding the July 3rd hearing when Plaintiff was absent due to improper notice).

This pattern underscores the procedural dysfunction caused by rotating judicial assignments and supports Plaintiff's continuing demand for judicial continuity (stated in "plain english" and again as a unruled on Motion for Rule 2), meaningful review of the full record, and equal access due process.

**K. Preservation of Systemic Allegations for Appeal and Jury Determination**

Plaintiff reaffirms that the allegations contained in this Second Amended Petition—including those involving election coercion, historic site destruction, unconstitutional jail conditions, retaliatory municipal actions, and inter-agency entanglement between Travis County, CapMetro, and City departments—are squarely preserved and remain under active review in Case No. 03-25-00484-CV, currently pending before the Third Court of Appeals. Many Defendants were dismissed without written opinions or evaluation of underlying evidence, raising concerns of unequal access to judicial process. Plaintiff asserts that these claims involve systemic civil rights violations and ultra vires conduct that are not subject to immunity, and

Copy from re:SearchTX

must be presented to a jury for determination on the merits. In particular, institutional failures to respond to election-related complaints, cultural desecration, and subhuman jail conditions demonstrate patterns of deliberate indifference and retaliation against Plaintiff for protected speech and public engagement. The legal and factual record supports declaratory and injunctive relief, as well as constitutional review of all dismissals issued without a clear factual or legal rationale.

Plaintiff asserts that government-led redevelopment schemes—including the designation of large swaths of Old Manor as "blighted" for purposes of creating a Tax Increment Reinvestment Zone (TIRZ)—are factually and legally inconsistent with public statements and objectives. While officials tout Manor as a "regional leader" with exceptional growth and services, they simultaneously label thriving or historically significant neighborhoods as blighted in order to justify new zoning overlays and funding reallocations. This contradiction undermines public trust and facilitates the displacement of longstanding residents. The inclusion of non-blighted areas along Highway 290 in the same TIRZ area, while ignoring cultural and historical assets in the core of Old Manor, further reveals the pretextual nature of these

Copy from re:SearchTX

classifications. Plaintiff contends that these planning mechanisms—including the Comprehensive Plan authored by Freese and Nichols—operate not to serve the public, but to funnel benefits to private developers under the guise of revitalization. The Plan must be withdrawn, and any actions taken under its authority must be reevaluated or enjoined.

Former Development Services Director Scott Dunlop—who also acted as Interim City Manager; and P&Z "liaison" — openly said words to the effect that "the Historic District was never designed to protect Manor's architectural or historical heritage, but merely to avoid cell tower construction."

However, that belies the fact that this Historic District is also designated a "Revitalization District" whereby citizens within said district are encouraged to improve their homes in compatible ways to the existing neighborhood. Plaintiff raised this issue at a public meeting, asking why the City was not informing the community about the incentives embedded in the Revitalization and Redevelopment District ordinance — programs designed to encourage architectural compatibility and historic preservation by reducing permit costs and offering design guidance. Dunlop admitted, "Well, nobody ever asks about them." Stunned by the sheer obfuscation and

Copy from re:SearchTX

avoidance of providing beneficial community services by a staff member in charge, Plaintiff asked, "How would anybody know about these benefits?"

This exchange underscores a broader civic failure: residents cannot be expected to navigate obscure municipal code to safeguard their own neighborhoods. As a result, the very tools that could preserve Manor's unique architectural identity remain hidden and unused—while modern, incongruous developments wipe out the City's historic structures with no resistance from its leadership, no transparency and no accountability.

## M. Clarification on Jury Trial Rights and Election Contest Separation

Plaintiff notes that under Tex. Election Code § 231.005, the election contest portion of the case must be decided by the judge without a jury.

Nonetheless, Plaintiff's independent constitutional claims—including allegations of election coercion, retaliation, suppression of speech, and violations of due process—are entirely separate from the statutory contest and remain subject to jury trial under 42 U.S.C. § 1983, First and Fourteenth Amendment jurisprudence, and Monell liability.

Further, Plaintiff previously filed a **Motion for Partial Summary Judgment** requesting that the election-contest issues be severed from the

Copy from re:SearchTX

broader action so that they may be heard independently, and more expeditiously. Because this motion remains **unruled**, all remaining claims—particularly those raised in this Second Amended Petition—are fully preserved for **jury decision**, even if the statutory election contest continues to follow bench procedures; and Manor operates without a legal quorum.

[END of first portion of SECOND AMENDMENT.]

Copy from re:SearchTX

CAUSE NO.  D-1-GN-25-000719

| | | |
|---|---|---|
| ROBERT EDWARD BATTAILE | § | |
|    Plaintiff | § | |
| | § | DISTRICT COURT NO.  459 TH |
|    VS. | § | |
| TEXAS ELECTIONS DIVISION, HON. JANE | § | |
| NELSON, TEXAS SECRETARY OF STATE | § | TRAVIS COUNTY |
| | § | |
| TRAVIS COUNTY ELECTIONS DIVISION | § | |
| DYANA LIMON-MERCADO, TRAVIS | § | |
| COUNTY CLERK | § | STATE OF TEXAS |
| | § | |
| CITY OF MANOR, TEXAS | § | |
| CITY ATTORNEY, KNIGHT LAW FIRM LLP | § | |
| | § | |
| CHRISTOPHER HARVEY,  LESLIE | § | |
| SCOTT MOORE, LLUVIA ALMARAZ, et al., | § | |
|    Defendants | § | |

FIRST AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL

AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD

Original Petition submitted 1/29/25 at 12:10 pm. New amendment begins with Item IX.

Robert Battaile, Plaintiff  ~  contact email Robert@ManorTX.US

Copy from re:SearchTX

Table of Contents for Battaile Lawsuit     D-1-GN-25-000719     Court # 349  Judge Guererra-Gamble

Item#  Page#            Informal Descriptions of FIRST AMENDMENT Items

1.   02   Bobby Reese is a Party to the suit. He was illegally prevented from being on City Council Ballot

2.   03   Robert Battaile – Illegally coerced to "withdraw" and make candidacy impossible by throwing me in jail

3.   03   Request for outside Judge. Travis County complicit and wanted me in jail even tho they had NO evidence

4.   03   Request for NEW ELECTION and new balloting. How many worthy candidates have been turned away?

5.   04   Insuring EFFECTIVE pre-election publicity. Unlike the measly RUN-OFF where only 4.7% showed up

6.   05   New election NOT BY City of Manor. How many other candidates were rejected over the years?

7.   05   Arrest warrants for City Manager, Leslie Moore and City Secretary, Lluvia Almaraz – Election Coercion

8.   07   Exhibits – useless Police Reports, Affidavits to Sec of State; Travis County, and Attorney General

      a) Police Report submitted to ManorPD by Reese and Battaile  b) Complaint to Secretary of State by Mr. Reese

      c) Complaint to Secretary of State by Mr. Battaile   d) Affidavit to Texas Attoney General, Hon. Ken Paxton

9.   19   Withdraw Item 3. Request to JOIN ISSUES asserting IMMINENT HARM to  landmarks

10.  19   Compel CapMetro Pickups and Shuttle to go 4 extra blocks to poll site during election

11.  20   Adding important ballot items: Spanish translations, ending "Court of Non-Record" and others

12.  22   Robert Battaile – Background. Activist Hero trying to Save Manor from Incompetent Council

13.  25   Limiting Harm to Displaced Developers – City buys back their property. Please move North of 290

14.  26   Strong Emergency Measures Required by the Judge because the HARM IS IRREPARABLE and vast

15.  29   REMOVE CITY COUNCIL for INCOMPETENCE & OFFICIAL MISCONDUCT

16.  29   Staff members (2) and Police Officers (5) placed on leave pending Ethics Commission investigation

17.  32   Dismiss Ordinances. End phony Invocations; and Restore citizen's STOLEN Public Comments time

18.  37   INCOMPETENCE and Official Misconduct Examples – a) thru j) ...a partial list

      a)  37 - $105 Million and nothing in our parks       f)   47 - Disappearing History by disrespectful incompetents

      b)  39 - $400,000 unused Community Prgms             g)  47 - Everchanging In-lieu Park Funds - unused

      c)  40 - City Slogan – "Regional Leader" delusion   h)  48 - Ethics Commission – glaring incompetence

      d)  44 - Bogus Comprehensive Plan they can't read  i)  49 - Historic District ~ a phrase they can't understand

      e)  45 - Plan's Secret 200-acre Woodlands Park        j)  51 - Timmerman(n) Park Plan Fiasco. Hard to believe

Copy from re:SearchTX

Table of Contents for Battaile Lawsuit     D-1-GN-25-000719     Court # 349  Judge Guererra-Gamble
Item#  Page#          Informal Descriptions of FIRST AMENDMENT Items

19.  53  WAIVE City, County and State Immunity due to Breach of Contract, Civil Rights and other Violations

20.  54  Severability; and Errors and Omissions

21.  54  Damages Allowed based on tort claims

    a)  55 - Breach of Contract by City of Manor re: Licensing Agreement with Austin Bocce League

    b)  56 – Equal Protections -  Plaintiff illegally evicted from Juneteenth public event after lies told to Police

    c)  56 - Civil Rights, Equal Protections violations - Bocce League refused booth at public Juneteenth event

    d)  62 - Manor Police Misconduct – multiple coverups and willful investigative FAILURES

    e)  63 - Official Misconduct for Nepotism and ethics inconsistencies on citizen Commissions

22.  65  Protecting our Cemeteries 1906 McVey and 1871 Manor from TOWNHOMES on black graves

23.  69  James B Manor's 1840's Homestead is our "Alamo" that we must protect from City Council destruction

24.  72  Las Entradas 224+ APTS do NOT belong in historic district. Needed for Homestead Parking and Events

25.  72  Manor Grocery Main Street – first refusal and landmark protection, no zoning change

26.  75  Heritage Trees and Boxes on Boyce – South Korean developer withheld information. Not historic at all

27.  78  Original Parsons School site of abandoned ManorISD Excel Academy – first refusal, no demolition

28.  81  Clayton Vocational Institute – "Colored" School's last remaining building – first refusal, no demolition

29.  84  Manor Crossing/HEB stealing millions in Chapter 380 funds; plus no required plaza or parkland fees

30.  89  Manor Commons no required Plaza. Conflicts of interest. Owner serves on Public Impact Fees Committee

31.  90  Monarch Ranch developer's blatant refusal to pay Parkland fees. Manor takes 6-7 acres as per codes

32.  93  ShadowGlen. Years of incompleted trails. Theft of parkland fees or acreage for parks. Bad faith

33.  96  Dismiss Comprehensive Plan and new "downtown" plan based on faulty assumptions and full of lies

34.  101  Parks and Recreation Tribunal and spending up to $20 million of hoarded city funds

35.  104  Bocce Court Restoration and damages after ludicrous claim of "Public Health and Safety Hazard"

36.  113  Old Manor REPARATIONS to pay residents for last 20 years of NEGLECT and undelivered services

37.  120  Damages for Bobby Reese due to illegal Election Coercion preventing his candidacy for City Council

38.  121  Robert Battaile Exoneration and Damages from State, County and City violations

Copy from re:SearchTX

CAUSE NO.  D-1-GN-25-000719

| | | |
|---|---|---|
| ROBERT EDWARD BATTAILE | § | |
|    Plaintiff | § | |
| | § | DISTRICT COURT NO.  459 TH |
|    VS. | § | |
| TEXAS ELECTIONS DIVISION, HON. JANE | § | |
| NELSON, TEXAS SECRETARY OF STATE | § | TRAVIS COUNTY |
| | § | |
| TRAVIS COUNTY ELECTIONS DIVISION | § | |
| DYANA LIMON-MERCADO, TRAVIS | § | |
| COUNTY CLERK | § | STATE OF TEXAS |
| | § | |
| CITY OF MANOR, TEXAS | § | |
| CITY ATTORNEY, KNIGHT LAW FIRM LLP | § | |
| | § | |
| CHRISTOPHER HARVEY,  LESLIE | § | |
| SCOTT MOORE, LLUVIA ALMARAZ, et al., | § | |
|    Defendants | § | |

**FIRST AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL**

**AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD**

Original Petition submitted 1/29/25 at 12:10 pm. New amendment begins with Item IX.

Robert Battaile, a candidate for Mayor in the City of Manor City Council Election of November 5, 2024 respectfully comes before the Court to request that the City of Manor 2024 Election for Mayor and City Council Places 1, 3 and 5: and the Ballots which listed said candidates be set aside and voided due to Election Coercion violations by the City Manager, Leslie Moore and City Secretary, Lluvia Almaraz who were in charge of administering said election on behalf of the approximately 9,700 registered voters and approximately 30,000 non-voting residents of greater Manor that were effectively disenfranchised by these two

Copy from re:SearchTX

persons' fraudulent and illegal actions on August 19, 2025 and on subsequent days in their efforts to cover-up those actions.

Robert Battaile received 557 votes as a candidate for Mayor in the General Election of November 5, 2024. The incumbent, Christopher Harvey was re-elected Mayor in a December 14, 2024 run-off election with 357 votes and certified in the days thereafter. As such, Mr. Harvey is the Contestee.  As final canvassing authorities, the Hon. Jane Nelson (State of Texas) and/or Dyana Limon-Mercado (Travis County) and/or City of Manor, may be Substitute Contestees. However, it is to be noted that the Plaintiff is alleging fraudulent violations in the Balloting Phase and not in the Vote Counting Phase; although all the parties were informed repeatedly of Ballot violations. Christopher Harvey violated his oath and duties as Mayor by not insuring a free and fair election in which he was a candidate.

I.  Bobby Reese is a Party to this Suit due to his connection to and harm from these Election Violations.  On August 19, 2024 Bobby Reese was falsely and illegally prevented from being on the Ballot for City Council Place Three. He was also not included on the Travis County list of Write-In Candidates shown to Voters even though he submitted a Declaration on August 26 which was within the requisite five days. The City offices were closed on August 24 and 25 for the weekend.

These were violations of Sec. 141.101 of the Election Code Subchapter D,

Copy from re:SearchTX

COERCION AGAINST CANDIDACY PROHIBITED. "(a)... if by intimidation or by means of coercion the person influences or attempts to influence a person to:

    (1) not file an application for a place on the ballot or a declaration of write-in candidacy;"

II.  Robert Battaile was a candidate for Mayor; and Leslie Moore, Lluvia Almaraz, Christopher Harvey and others made willful, conscious efforts to make Mr. Battaile "(2) withdraw as a candidate" per Sec. 141.101 including having him arrested, given an $8,000 bail and restrictions on getting within 600' of Moore and Almaraz; thereby preventing Mr. Battaile's involvement in important city council meetings and community planning; and restricted Battaile's ability to campaign and participate in public debates.

Per Section 1.07 Penal Code (9) "coercion means a threat, however communicated: (f) to take or withhold action as a public servant, or to cause a public servant to take or withhold action."

III.  Notwithstanding allowed actions of the current Judge, per Sec. 231.004 DISQUALIFICATION OF A JUDGE, Plaintiff requests that the Court appoint a new Judge from outside Travis County.

Copy from re:SearchTX

IV.   Request for New Election and Ballot Process. Per Sec. 231.004 (e)(2) this 2024 race did end with a run-off in the contested race, and the current District Judge can order a new election. Thus per CONTESTING ELECTIONS Art. 9.15, this election should be declared void because it is impossible to ascertain the true result of the election because at least one candidate was denied a place on the Ballot. There was no paper record of Mr. Reese's attempt to apply. The people of Manor have no way of knowing how many other honorable citizen candidates were denied a place on the Ballot in this and prior year elections. Per Travis County Elections Division guidelines, a paper record of every applicant is required to be kept for two years. Mr. Reese was not given a written reason for his rejection which is also required policy for Travis County Elections procedures.

V.  Per Sec. 231.007 (d) the Court can direct the new election be publicized in the manner prescribed by the Court. Plaintiff requests the following during the Ballot Phase; and during the Voting Phase:

A separate 8-1/2" x 11" 2-sided color flyer for each phase to be mailed to every registered voter to arrive two days prior to the start of each phase. Plaintiff's approval of the design and content is required and shall not be unreasonably withheld. These flyers shall include the reasons for the new election and Spanish translations. Further, four ¼ page color ads in the Manor Journal with placement dates and design approved by the Plaintiff. 50 yard signs with 2-sided printing and

Copy from re:SearchTX

not smaller than 24" x 32" shall be purchased and distributed with the design and locations to be approved by the Plaintiff. Costs for said publicity and mailing shall be paid by the City of Manor.

VI.  Per Sec. 231.007 (e), Plaintiff requests the Court designate another person or entity to administer  the new election other than the City of Manor staff. The City of Manor shall pay any costs of administering a free and fair election with suitable public notice, allowing time for Ballot applications, early voting days and and an Election Day schedule approved by the Plaintiff and the Court.

VII.  Per Article 15.01 of the Code of Criminal Procedure, Plaintiff requests the Judge issue a Warrant of Arrest to the Travis County Sheriffs Department to take Leslie Scott Moore and Lluvia Almaraz immediately into custody to be dealt with according to the law for the crimes of ELECTION COERCION committed on August 19, 2025 and LYING TO A POLICE OFFICER which is a Class B Misdemeanor. Lies were told to Manor Police Officer, Jordan Roberts on August 26, 2024 who repeated those lies when he filed an Affidavit for Warrant of Arrest and Detention with Defendant, Dyana Limon-Mercado County Clerks office on Aug 29 at 8:47 am.

Plaintiff, Robert Battaile is a Manor resident, writer and political cartoonist who, over the last three years has built an email Newsletter with a circulation of 400-600

Copy from re:SearchTX

focused on current community issues and functioning as an independent local newspaper. After my emails started to focus on the Election Coercion done by Moore and Almaraz and its harm to Bobby Reese and the City at large, the emails were deemed "harassing." Apparently, Manor Police and other parties didn't realize that emails and internet communications "made in connection with a matter of public concern" per Sec. 42.07 (9) are not harassment; and thus Robert Battaile was falsely arrested by Manor Police Department and jailed. This is further support and explanation for Item 2 above.

Further, the citizens of Manor have no idea how many other candidates were falsely kept off the ballot in this or in any previous elections, in part because required election documents were not properly prepared, given to candidates or kept for the required two-year period.

Per the Texas Secretary of State's definition ~ Election Contest: An action in civil court to contest the result of an election ...to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because: ...(2) an election officer or other person officially involved in the administration of the election: ...(C) engaged in other fraud or illegal conduct or made a mistake.

Copy from re:SearchTX

Because time is of the essence and for all the above good reasons, Plaintiff respectfully prays that the Court remedy these grievous crimes by ordering a new election and ballot process be commenced to provide that the citizens of Manor Texas be assured a free and fair City Council and Mayoral Election.

VIII.  EXHIBITS The initial Plaintiff Exhibits demonstrate a consistent effort by Robert Battaile and Bobby Reese to engage local city, county, state and federal officials to remedy the violations by voiding the election and having a new General Election or Special Election. Those efforts were unsuccessful.

Copy from re:SearchTX

Exhibit 1. POLICE REPORT TO MANOR PD #24-01385 filed by Robert Battaile and Bobby Reese on 8/28/25 alleging the ELECTION COERCION violations as transcribed from the submitted hand-written form. The Police Report is now filed as "inactive" although neither of the parties were ever interviewed. Plaintiff has additional evidence of poor city staff performance resulting in illegal election activity. Upon completion of submitting the Police Report, Mr. Battaile was handcuffed, arrested and jailed for four days on a "Harassment Charge" in retaliation for Mr. Battaile sending good cause email "Newsletters" about matters of public concern to the Manor community, law enforcement, Travis County and State of Texas Legislators, media and social media alleging Moore and Almaraz's crimes of Election Coercion.

MANOR POLICE REPORT – VOLUNTARY STATEMENT FORM

Transcribed from Handwritten Report

Badge Logo – City of Manor PD Case # 24-01385

Robert Battaile and Bobby Reese

More detail on our Complaint to the Secretary of State attached.

As a courtesy, Robert called Secty, Lluvia Almaraz to schedule at 10:00 for candidate Bobby Reese to apply for Place Three on the City Council.

While Lluvia was meeting w Bobby, she never signed him in or gave him a CANDIDATE HANDBOOK. The form says plainly that VOTER REGISTRATION is optional. She saw his Drivers License with a Manor address

Copy from re:SearchTX

yet didn't allow him to apply.

We left and came back and got even more coercion and intimidation and lies.

They said "it was too late anyway to apply." It wasn't even 2:00 yet their

Handbook said it was open until 5:00 PM.

(page 2)

Robert circled the time on that front page sheet and asserted firmly that this was

election interference. City Mgr and Secty got very agitated and called the Police on

the whistleblower Robert who was handcuffed as he was walking home, pushed

into the car and driven around to teach me a lesson.

The crime is SUBCHAPTER D. COERCION OF CANDIDACY. Sec. 141.101

Coercion of candidate is prohibited! That's what happened.

Signed by Robert Battaile and Bobby Reese – 8-28-24

Sworn before Officer at Manor PD double-wide.

Exhibit 1. Election Contest

Copy from re:SearchTX

Exhibit 2. ELECTION COMPLAINT TO THE TEXAS SECRETARY OF STATE by Bobby Reese. Parties each did a hand-written Election Complaint which was sent by Certified Mail on August 28, 2024. Transcription is attached herewith. There was no response.

_____

Exhibit 2  -  Transcribed from Form

ELECTION  COMPLAINT TO THE SECRETARY OF STATE

I. Identity of Complainant – Bobby R Reese   Address redacted  - phone redacted

II. Identity of Respondent: Scott Moore, City Manager of Manor TX and Lluvia Almaraz, City Secretary - address: City Hall 105 E Eggleston St, Manor TX 78653

III. Nature of Alleged Violation. At ten o'clock on Monday, Aug. 19, I went in and was asked why I was there by Ms. Almaraz. I answered that I was there to sign up for City Council. There was a white binder that was the City Council Candidate Handbook. I thought that was for me.

I showed her my Drivers License with City of Manor address and she dismissed that. I showed a Military ID and she dismissed.

Then, she said it would be a good idea if I filled out a voter registration form which had nothing to do with being on the ballot as a city council member.

I filled out the voter form. Then, a few people came into the room. She had said, "it didn't matter what place you run for." She gathered her papers to signal the meeting was [over]. Gave me a sheet with my old Austin voter reg info and sent

Copy from re:SearchTX

me away without allowing me to sign up. Mr. Battaile and I were going to eat lunch and return to speak with the City Manager who was walking in as we were leaving.  Mr. Battle said we would return, "she doesn't get to pick who gets to run."

We returned and Mr. Battaile asked to see the City Manager. He appeared at the window and went off to get the City Secretary and they both came out and took me again in to the conference room. Mr. Battaile was not allowed in.

The conversation was a repeat of the morning's mis-information. I was "dismissed with a lie" that it was "too late to even apply" so it "didn't really matter anyway." They showed me the door and I left.

When Mr. Battaile learned thata I was told it was too late to apply, he was outraged and went in to show them their own page that said "open until 5:00 pm." When confronted with their lies, they lost control and called the Police who later arrested Robert.

Additional form items and then… signed by Bobby Reese.

Sent by Certified Mail to Texas Secretary of State, Elections Div Legal,

P O Box 12060, Austin TX 78711 delivered on August 28, 2024.

Exhibit 2. Election Contest

Copy from re:SearchTX

Exhibit 3  -  transcribed from Form

ELECTION COMPLAINT TO THE TEXAS SECRETARY OF STATE

by Robert Battaile sent by Certified Mail rec'd on August 28, 2024. No response.

I. Identity of Complainant – Robert Battaile      Address redacted  - phone redacted

II. Identity of Respondent: Scott Moore, City Manager of Manor TX and Lluvia Almaraz, City Secretary - address: City Hall 105 E Eggleston St, Manor TX 78653

III. Nature of Alleged Violation. On June 19 [sic – August 19], Robert Battaile, Mayor candidate and Complainant called City Secretary, Lluvia Almaraz and told her I would be bringing Bobby Reese to sign up as a Council Candidate. She had asked me to do this before I came in to have my signature notarized.

That is really her onoly ministerial function. She lied and manipulated him [Bobby Reese] to the point of discouragement and "giving up."

Lluvia never "signed him in" or gave him the "Candidate Handbook" sitting on the table. She diverted the entire signup process and focus[ed] on his ANCIENT voter registration card. The FORM clearly states the VUID is "optional." She knows this, and printed a sheet "disqualifying" Mr. Reese. (attached) When the Respondents knew that Reese was a friend, and had also looked at my Candidate Handbook – the "conspiracy" began. I have said publicly (see attached Park Cleanup Flyer) that I would fire the City Manager and several city dept heads.

Lluvia also said "It didn't matter which Place" he signed up for. A lie. Also said that "he could run in 2026." Another deception.

Copy from re:SearchTX

Disappointed, we went to lunch. As we left, the City Manager was entering. I said, "We'll be back. She doesn't get to reject a candidate because she doesn't "like or approve" him.

Round Two began and again, the two of them didn't want me with him. I was expecting Bobby to sign the three pages and be done. Again, no signatures, no book, no paperwork. I heard some laughter and thought things were going okay. Then, he came out empty handed and said they told him "it was too late anyway" and he was refused again.

It wasn't even two o'clock. The first page of their handbook said "open Jan 19 until 5:00 pm!!! I circled the time and confronted their blatant crime. So, the criminals called the Police on ME – the Whistleblower.

Both of these staffers must be fired. How many other candidates were also turned away? The Ballot Process is tainted. We need another full week of signups managed by Travis County or State of Texas. We can't trust the City of Manor.

Additional form items and then… signed by Robert Battaile.

Sent by Certified Mail to Texas Secretary of State, Elections Div Legal, P O Box 12060, Austin TX 78711 delivered on August 28, 2024.

Exhibit 3. Election Contest

Copy from re:SearchTX

Exhibit 4. AFFIDAVIT TO TEXAS ATTORNEY GENERAL, KEN PAXTON sent on November 12, 2024 by Certified Mail petitioning him to use his authority to Contest the 2024 Manor City Council and Mayoral Election. No response.

AFFIDAVIT TO CONTEST 2024 ELECTION

FOR MAYOR AND CITY COUNCIL MEMBERS

IN THE CITY OF MANOR, TEXAS    COUNTY OF TRAVIS

Per Chapter 9, Contesting Elections Article 9.02 ~ Contesting or Prosecuting by Attorney General ~ two reputable citizens, Robert Battaile and Bobby Reese, both residents of Manor, Texas hereby allege that they witnessed and were victims of ELECTION COERCION as defined in Texas Elections Code Subchapter D Sec. 141.101 when Manor City Manager, Leslie Scott Moore and City Secretary, Lluvia Almaraz did willingly and knowingly prevent Bobby Reese from his legal right to be a Candidate for Place Three on the City Council.

Robert Battaile was a Candidate for Mayor and received 557 votes despite a false arrest, ignored Police Reports, citywide efforts to keep him from campaigning robustly, and multiple efforts by Travis County Attorneys to put him back in jail despite having no evidence of *any* bail violations.

These two city employees abused their authority with multiple false statements designed to intimidate Mr. Reese and discourage him from applying. Two of the

Copy from re:SearchTX

most simple and obvious falsehoods are as follows:

1) The pretense that Mr. Reese didn't have the "required" voter registration to be a candidate. However, the very document she handed Mr. Reese said clearly on its face that he had until November 5, 2024 and in fact his registration was "in suspense" likely due to not having a mailbox. On October 22, he voted immediately upon showing his Drivers License to the poll worker. Ms. Almaraz had seen the same Texas Drivers License with the same address.

2) When we returned in the afternoon to protest to the City Manager, they both continued with more false statements and told Mr. Reese at 2:00 pm that "it didn't matter anyway because it was too late to apply." The City's own Candidate Packet Handbook said clearly on Page One that the process to apply to be on the Ballot was open until 5:00 pm on August 19th.

3) When Robert learned of this, he showed the page mentioned above and was intimidated and bullied by these two staffers who later alleged they were "afraid of" Mr. Battaile. Their actions in the City Hall Lobby belie this notion. As Robert calmly walked home, he was handcuffed, put in a squad car and driven in circles. This further delay prevented Mr. Reese from simply getting his signature notarized and thereupon submitting his candidacy for Place 3 to the City.

Copy from re:SearchTX

Mayor, Christopher Harvey is also complicit as is the Manor Police Chief, Ryan Phipps and officers that were tasked with investigating the Police Report #24-01385 alleging Election Coercion which Robert Battaile and Bobby Reese filed at the Police Headquarters on August 28th.

When the report was finished, Robert Battaile was arrested for four days based upon more lies told to Police Officer, Jordan Roberts who then told those lies to a Judge to get an Arrest Warrant. This arrest, detention, and onerous bail restrictions have severely impacted Robert's Mayoral Campaign.

Robert has reported these Election Coercion allegations to numerous entitities including the Texas Senate and House members and Elections and Rules committees, the 'illegalvoting' @oag.texas.gov email address, and with a formal ELECTION COMPLAINT TO THE TEXAS SECRETARY OF STATE received by certified mail on August 28, 2024.

Robert Battaile filed a Police Freedom of Information Request on October 21, 2024 to determine why the case was "inactive" when neither Robert Battaile nor Bobby Reese were ever interviewed; and Leslie Moore and Lluvia Almaraz were never charged with any crimes. The City Attorneys, Knight Law Partners LLC are fighting this request.

Robert has still not seen any footage from the City Hall Lobby despite being a defendant and submitting another FOIA Request that the City Attorneys are disputing. Apparently, FOX News was *given* an edited version "Courtesy of City of

Copy from re:SearchTX

Manor." Robert continues to be harassed, is unable to speak or have his words read at Open Meetings, has no city contact for Election issues; is effectively under house arrest 900' from City Hall, and (except for a temporary Court Order granting a brief Stay during the voting) is once again required to stay 600' from the City Manager and City Secretary.

Mr. Reese also submitted a Declaration to be a Write-In Candidate for City Council Place Three on August 26 and has a copy date-stamped as such by the City of Manor. This document was sent to the Secretary of State's Office yet he was not included on the voters' approved write-in candidates either.

Robert and Bobby have no way of knowing how many other would-be candidates were prevented from a rightful place on the ballot. Therefore, we request that the entire City of Manor City Council Places One, Three, Five and Mayor's race be thrown out and a new ballot application period begun; to be followed by a new election. Since the Mayoral race is currently required to have a RUN-OFF ELECTION anyway, whether the entire ballot is thrown out adds no financial burden; and should require no bond if a motion is made to the Travis County Court contesting this election.

We pray that you will offer a speedy remedy and Contest this City of Manor Election due to Election Coercion by City of Manor employees. Time is of the essence.

Copy from re:SearchTX

Respectfully submitted on

the ___[8th]___ day of November, 2024 by:

___/sig/_____

Robert Battaile, Candidate for Mayor, City of Manor

___/sig/_____

Bobby Reese, denied candidate for City Council Place Three

[Note: Attachments that accompanied the original document will be including in a forthcoming Appendix and shall be included by reference herein.]

Exhibit A: Voter registration sheet given by City Secretary showing Bobby had until Election Day.

Exhibit B: Voter registration with current address and explanation of "suspense."

Exhibit C: Ending time 5:00 pm clearly shown despite being told at 2:00 pm that his time had expired.

Exhibit D: Write-in Declaration submitted in timely fashion, disregarded by staff.

Exhibit E: Lobby pictures showing city staffers evidencing no fear of Robert as later alleged in the arresting documents told to a Judge. Robert hasn't received this footage nearly 3 months after his FOIA request made as the Defendant in two court cases (City of Manor; and Travis County) mostly about the same one incident.

[Notarized]

Copy from re:SearchTX

IX. **WITHDRAWAL OF ITEM 3. REQUEST TO JOIN ISSUES**, and other assertions. Due to additional time required to adjudicate new Items herein; Plaintiff withdraws the request for a non-Travis County Judge.

Since the same City Council members and Staff, including Police officers are involved in almost every item under consideration herein; in the interest of justice and efficiency, it makes sense to JOIN ISSUES and address them together. The Developers and Builders that Plaintiff is seeking Injunctions against have most of the same issues between the Plaintiff, City of Manor and amongst themselves.

Plaintiff asserts his public youtube videos as providing the best and shortest explanations of several relevant items herein. Links are provided when applicable.

Plaintiff asserts emphatically that many important IRREPARABLE and IRREPLACABLE Manor landmarks are in IMMINENT danger of being destroyed. Our precious character as a small pioneer town is under attack by city officials that are INCOMPETENT and committing OFFICIAL MISCONDUCT.

An Appendix will follow which shall be incorporated as if fully set forth herein.

X. **TRANSPORTATION TO VOTING SITE**. In the event a new election is so ordered, Travis County will be ENJOINED to insure CapMetro will provide a shuttle in Old Manor and also expand their normal routes by the few short blocks necessary to include the Voting site during the entire early voting and election day voting period.

Copy from re:SearchTX

XI. **INJUNCTIONS or New Ballot Items**. Due to City of Manor's meager historic performance as regards these important items, Plaintiff requests that these items be COMPELLED to be enacted by City of Manor; or be placed on the new city council election ballot for the voters consideration.

(subject to final approved wording):

a) commence 3-year terms on a staggered basis. This will prevent a majority of four seats being elected during any one election. In the November 2020 election, the change from two-year terms was put to a vote deciding between three-year or four-year terms. Four-year won by just 8 votes; so the voters are effectively neutral on the issue.

For the new three-year term transition period, Places 1 and 4 will serve a one-year term; Places 2 and 5 will serve two-year terms; and Places 3 and 6 will serve 3-year terms. Elections happen annually. The Mayor serves a three-year term.

b) raise pay for councilmembers to $4,000 each per month, and the Mayor to $4,500 per month and require at least 60% of the work week be devoted to city business, and to limit other outside time devoted to employment or personal business;

c) establish a Parks and Recreation Department;

d) communicating Agendas and website in Spanish language;

Note: Austin got serious about translations back in 2013 with Council Resolution 20131017-038 citing Federal Guidelines that support translation rights

Copy from re:SearchTX

including Executive Order 13166 of 2000, and even back to Title VI of the Civil Rights Acts of 1964.

ManorISD and Travis County Parks and Recreation websites both easily translate with the click of a button into 130 languages. Technology is available and relatively inexpensive. City of Manor is working on website revisions right now, and should be directed to include this important upgrade.

e) Change Manor Municipal Court from a "court of non-record" to a Court of Record to begin recording by using video cameras already in place at the City Council chambers which doubles as the Courtroom. Citizens are completely unaware that this antiquated procedure is even happening in 2025.

f) Put the RECALL provision back into the Charter; and

g) Re-Convene the members of past City Charter Commissions on a emergency basis to add important City Charter changes prior to the end of the ballot period, with Plaintiff's oversight.

The meager election period for citizen voting to approve the previous Charter's minimal "changes" in 2020 was only one day (a Tuesday), and with negligible advance notice or communication with the voters. That also is incompetence and official misconduct. City Council is supposed to review the Charter every two years. Plaintiff didn't notice that happening. The Charter Commission is supposed to be convened and review the document every five years. There are no previous Agendas or Minutes of the Charter Commission online, if there ever were.

Copy from re:SearchTX

XII. **BACKGROUND**. The Plaintiff, Robert Battaile went to Rice University in Houston in 1968 on an Art Scholarship. Robert lived in the Clarksville neighborhood of Austin (8th and MoPac) in 1980 when it was dirt roads. He witnessed first-hand the gentrification that pushed the po' folk out of the place they grew up in. Robert grew up in San Diego next to Balboa Park which is one of the most amazing parks in the world with museums, outdoor musicals, and a major zoo. Robert moved back to the Austin area from northern California after many years working in tv and film/tv conference management, 3 years as a musician performing in Las Vegas; and 15 yrs in Northern California as a media producer, performer and wine educator. He was a community theatre board member, single dad with two teenage daughters taking care of his mom with Alzheimers Disease.

There in St. Helena, he learned to play bocce and started a Bocce League in Santa Rosa in 2009. Today, there are over 600 players enjoying the friendly competition and social interaction the sport is known for. He helped start another league in Middletown, CA that's still going.

Robert had been led to believe that a similar good outcome could happen in Manor. Unfortunately, an INCOMPETENT City Council, Mayor and City Manager used OFFICIAL MISCONDUCT to breach the Licensing Agreement with Austin Bocce League of which Robert is the director. In the process, they practically destroyed and stunted the growth of the only on-going activity in the entire city.

https://youtu.be/C2KYN2StaP8 "Bocce Revenge in Manor Texas" Time: 5:07

Copy from re:SearchTX

Robert is also an artist, musician, performer, writer, song-writer, video filmmaker, photographer, editor, graphic artist, builder/developer, and inventor. In order to improve his community and "Save Old Manor," he has become an activist and political cartoonist. Robert created his title of "Honorary Mayor of Old Manor" back in 2023 to raise awareness of, and to protect the original township and its rich history. Plaintiff filed for Bankruptcy in 2023 in order to devote full-time effort to saving Old Manor, the Cemetery and Homestead from destruction.

James B. Manor provided the land that became the town in 1850. He granted the right-of-way for the railroad which brought the cotton industry. He came west from Tennessee in 1832 with Sam Houston who was a "frequent and welcome visitor" at Manor's 1840 Homestead which is in danger of disappearing. James Manor was buried in 1881 at the Manor Cemetery built on land he gave donated in 1871. His homestead was the first Manor Post Office, and also the Stagecoach Station for the Houston to Austin route that ran on Eggleston Street. Two roads were named for his friend, Eggleston Townes who was buried at the Manor Cemetery earlier, in 1861.

Robert has been publishing his newsletter emails for over three years. Robert ran for Mayor in 2024 and received 575 votes, which is more than current Mayor Harvey got elected with in 2021 and 2024 combined. Barely 4% of the voters voted in the Run-off. For decades, Old Manor has been neglected and all but

Copy from re:SearchTX

abandoned by the City Council and Staff that "robs from the poor, and gives to the rich." Old Manor needs to be improved, not destroyed. Its "smallness" is part of its appeal.

The historic Main Street is named after another community Founder, Silas Parsons who also donated the land for the first school which is the same spot as the abandoned ManorISD Excel Academy. Today, Parsons Street is a tiny road in the middle of a modest neighborhood. It's not big enough for the PARKING LOT of the Performing Arts Center that Greater Manor wants and deserves. We need a "real downtown" located north of US Hwy 290 and mid-way between Elgin and Austin. That is the center of Manor's ETJ Extra Territorial Jurisdiction ("Greater Manor").

Plaintiff's newsletter local recipients list includes 300-plus individuals. Only six people have ever asked to be removed. This circulation list includes most of the members of Manor Chamber of Commerce, City Council, City Staff, ManorPD and Churches, ManorISD, Arts Council, media and anonymous friends.

Plaintiff asserts that his positions represent the views of a large majority of the citizens if and when they were to become aware of the issues and the looming threat faced by our very few landmarks soon to be "gone forever." When the City won't tell its citizens, and we don't have a "real" newspaper... how would anyone know how fragile and tenuous our situation is? Thus, Plaintiff feels a duty to represent the present and future people of Old Manor, and also the people of

Copy from re:SearchTX

"Greater Manor" [aka the oft-used "Manor ETJ" - an acronym that confuses everyone].

Plaintiff is seeking damages, not penalties to be paid to the homeowner residents, and renters that have lived in Old Manor during the modern, growth era from 2004-2024.

In 2007, Travis County Historical Commission produced a Manor Historic Resources Survey that highlighted our rich, diverse architecture and gave strategies to protect and capitalize on our history to develop tourism and community pride. manor-historic-survey.pdf  The Survey produced this Map Manor Map-Final

With the exception of the important but long-ignored 2017 Old Manor "historic district" designation in our City Codes § 14.02.031, none of the Survey's recommendations were ever enacted. The current City Council and Staff likely never even heard of that book until Plaintiff published it to the community in his email Newsletters. Plaintiff has taught more history to the community than the city itself; and the school district combined cumulatively over the last 50 years.

XIII. **LIMITING HARM TO DEVELOPERS**. It is the Plaintiff's wish to make the displaced Developers "whole" which means buying back the properties and reimbursing them for improvements. The City has $105 MILLION in the bank, $15 MILLION already set aside for "Economic Development;" and $41,567,289 of Unrestricted CASH with which to purchase and preserve and improve our town.

Copy from re:SearchTX

Further, the city will assist in finding other properties within the Greater Manor area that are more suited to their particular developments whether it be 2- or 3-story apartments, townhomes or multi-use boxes. All the included Developers and Builders knew they were building in an Historic District. One knew they were building literally on top of a 1906 Cemetery Lot. Plaintiff has emailed them ample evidence for many years.

XIV. **NEED FOR STRONG EMERGENCY MEASURES.** The injunctions and temporary injunctions requested herein are for historic, irreplaceable places (James B. Manor's 1840 Homestead, 1871 Manor Cemetery, newly discovered 1906 Martin McVey Cemetery, and the 1850 Main Street's last building remnants at the southeast corner of Parsons at Lexington), and others herein; and for IRREPLACABLE PLAZA opportunities (NE and NW corners of Hwy 290 and 973) and for saving and creating IRREPLACABLE PARKLAND (Monarch Ranch and ShadowGlen) before all our land is covered up with living units and convenience store gas stations from Elgin to Austin.

Further, it's the City Council's duty to fill the Parks with amenities and activities for its citizens' mental, spiritual and physical well-being; instead of the current, empty parks filled with nothing. Not even chalk lines for a soccer field. Not even a water drinking fountain. City brags in its "Comprehensive Plan" that Old Manor's Art Park "features a vacant lot." Old Manor and Greater Manor have for many,

Copy from re:SearchTX

many years been fed empty words and self-aggrandizing platitudes.

The residents in Old Manor have been treated as second-class citizens for many, many decades; including the "modern" growth-era of Manor which Plaintiff considers to be twenty years from 2004 to 2024. Taxes were collected in Old Manor and the monies were spent elsewhere. This neglect affected generations with depressed property values and caused physical and mental harm and apathy in our town's original neighborhood. Old Manor was granted from and laid out by James B. Manor in 1850.

Yet, here we are ~ 75 years later in 2025 and it's maybe even worse with horrible roads, bad drainage and utter lack of sidewalks or lights. Mr. Manor has become a "forgotten man." The irony is that we have $105 MILLION in the bank; and Old Manor is the ONLY HISTORIC anything ~ why does City Council and Staff want to erase it? What could be a more senseless and needless demonstration of INCOMPETENCE than trampling the most rare and beautiful things from our genuine past. These are treasures that we can't replicate.

As a counter-balance to the Mayor's self-aggrandizing platitudes in his "State of the City" address of 2024 to the city staff; Robert presented his view of "objective reality" that sees Manor as a small, fragile historic Texas town that's under attack by wrong-minded bureaucrats and developers:

https://youtu.be/VT2MKp7rdl8 Time: 27:47 "Robert's State of the City of Old Manor, Texas."

Copy from re:SearchTX

Elsewhere, Texas has a history of cherishing its history. Plaintiff spoke at a Texas Senate Hearing on "Protecting Texas History." I mentioned James B Manor coming west with Sam Houston. And how his homestead and the Cemetery were under attack, but to no avail. Hence, Plaintiff is undertaking these injunctive actions which perhaps the Texas Historical Commission could have prevented. To Plaintiff, James Manor's Homestead is "our Alamo" which needs to be protected and empowered to "bring our history to life" so it can resonate within our people.

Plaintiff is of the opinion that if you have genuine history, that is by far the best launching pad for a small town to build local pride and identity, educate its citizens and bring interested visitors to a robust but still charming and unique part of town; that's also a modest, affordable family neighborhood with people living in it now as it has had for the past 175 years. Old Manor is the best of all worlds: affordable and low-density; with an ethnically mixed population *that's already living here!*

In the previous election, there was a pretty obvious display of voter apathy. In a community with 9,700+ voters, they were elected as follows: Mayor Harvey – 199 votes; Place 1 Emily Hill – Ran Unopposed and only 1/3 of the voters - 153 votes; Place 2 – Anne Weir ran unopposed and received 1/3 of the votes; Place 3 Maria Amezcua – 112 votes (Her husband, Gabriel Nila is on the Planning & Zoning Commission which is violation of nepotism laws openly flouted); Place 4 Sonia Wallace – Ran Unopposed and only got 1/3 of the votes; Place 5 Aaron Moreno – Unopposed and got 157 votes; and Place 6 Deja Hill – elected with 38 votes total.

Copy from re:SearchTX

Four out of seven councilmembers ran unopposed. Council was made up of unpaid volunteers until the current council decided to give themselves some compensation without voter approval at an election. The 2024 Mayor's Runoff election participation was a meager 4.7% turnout.

The City Council of this small town of perhaps 16,000 has seen fit to inflict Bonds of $166.8 MILLION upon the citizenry (with voter approval) and made its intentions known to borrow another $133.2 MILLION; including $64.2 MILLION for a new Police Station which is quite a leap from the current double-wide trailer that they can't even make presentable. The front steps and ramp are horrible with peeling and missing paint; but the expensive public-facing bright and shiny Manor PD squad car SUV has the words "Community" proudly emblazoned on it.

XV. **PETITION TO REMOVE CITY COUNCIL OF MANOR** for INCOMPETENCE, and for OFFICIAL MISCONDUCT per § 21.025, 21.026; and be prevented from running for two years. See Item XIII; and examples throughout.

XVI. **TEMPORARY LEAVE FOR CITY EMPLOYEES**. For Official Misconduct, these seven City of Manor employees shall immediately be placed on Temporary Leave pending the outcome of an investigation and determination by the City of Manor ETHICS COMMISSION.

Manor Personnel Manual states on page 54 Dismissal/Termination – City

Copy from re:SearchTX

employees are at-will employees. Employment may be terminated by the employee or by the City for any reason or for no reason. At its discretion, the City may terminate an employee's employment as a result of unsatisfactory performance or conduct and/or violation of City policies or procedures.

The following employees violated their Oaths, and failed in the performance of their Supervisory and Departmental Director responsibilities. The back of the Ballot Application Form itself says that a write-in candidate has until "5:00 p.m. on the 5th day after the date an application for a place on the ballot is required to be filed." Mr. Reese filed his write-in affidavit within this deadline yet Leslie Moore and Lluvia Almaraz illegally prevented him from being a candidate on the Travis County list of approved write-in candidates. Travis County and the State of Texas were also told and were equally derelict in upholding their constitutional mandates.

This Ethics Commission currently exists in name only. [see Item XIII. h) ] Per City Codes, the process to create and empower this commission is clearly stated; and needs to be undertaken after the new Council is sworn in whether it be four new members in a new election; or all seven per Item XV.

a) Police Officers to be placed on leave: Chief, Ryan Phipps – Captain, Denver Collins – Lt. James Allen – Det. Mary Eaton ~ Officer Jordan Roberts.

These officers violated the Texas Penal Code Title 8 § 38.05 Hindering Apprehension or Prosecution; and acted as Accessory by actively covering up, concealing or helping the perpetrators avoid capture by the Police. Plaintiff asserts

Copy from re:SearchTX

that these officers were aware of several crimes, knew the criminals and knowingly concealed evidence and protected their "friends" who were on the city council, city staff, developers and others in community. One Officer lied to a Judge for an arrest corruptly sought. Plaintiff asserts that their certifications should be removed, and they should be terminated. Failing that, this interim suspension is to be considered. They all violated their oaths.

Plaintiff recommends Community Officer, Gloria Rock to be the Interim Police Chief.

b) City Manager, Leslie Moore and City Secretary, Lluvia Almaraz shall similarly be placed on leave pending an investigation and determination by the Ethics Commission. On August 19, 2024 these two staffers prevented Bobby Reese from a Place on the City Council ballot. Further, they harassed and intimidated the Plaintiff including Almaraz yelling that Robert was a racist. They lied to Police Officer Jordan Robert who lied to a Judge to enact a false arrest whereby the Plaintiff was thrown in jail for four days and given bail conditions with no basis in facts.

These two employees have also committed addition demonstrations of incompetence and retaliatory behaviors as contained herein.

Plaintiff recommends that Belen Peña, Finance Director be appointed as Interim City Manager.

Copy from re:SearchTX

XVII. **ORDINANCES TO BE DISMISSED.** Plaintiff asserts that these Ordinances are flawed, have been misused and respectfully requests that they be dismissed.

1) Ordinance 686 established that invocations be spoken at the start of Council meetings. This ordinance was established on February 6, 2023. The City was able to conduct business for over 150 years without the need for an invocation. Plaintiff asserts that this is merely a pretense of spirituality that based upon their statements and actions, is objectively false as they knowingly and willfully tell lies constantly. (e.g. for over two years on the website, the Council has approved saying that "Manor is a regional leader... with exceptional services")

Per §3(c) Guidelines of the Annex G Invocation Presentations Policy and Procedure, it states that "the invocation must not be used to proselytize or advance any one faith or belief." Additionally, per §3(g) it states that "This policy shall not be implemented... nor express the City Council's preference for, any faith or religious denomination."

Manor Council Council invocations have only had Christian preachers. After the recent invasion of Gaza, Plaintiff suggested bringing a rabbi and an imam together to give an Invocation. That never happened or was even responded to. There have never been any Buddhist, Muslim, Jewish, Hindu or any other religions represented.

Further, the City Council doesn't have the organizational ability or competency

Copy from re:SearchTX

to even find enough preachers (2 per month) to do these invocations; and end up with the Council members doing invocations themselves "on the fly" as if they have some spiritual authority. Plaintiff finds their pretense highly offensive since they have personally shown themselves to be quite the opposite with petty jealousy, arrogance, vanity, spite, vindictiveness, harm and neglect to their own children, seniors and all the constituent citizens that they are supposed to represent and publicly claim to "love." They hoard our money like stingy misers.

Additionally, per §3(f) the "invocation should be limited to no more than one (1) minute." That has never been enforced. Without the required invocation ordinance, people are now even more spiritually empowered to say their prayers at Public Comments whence they can be three minutes instead of one.

2) Ordinance No. 691 effective February 15, 2023. Plaintiff requests a dismissal of this Ordinance which severely restricted the time for citizen's Public Comments. Further, they instituted a system of two different forms which is so confusing that City Council and the Planning & Zoning Commission chairs can't figure out how to use them, or consistently apply them. Plaintiff has been kicked out of meetings because they don't understand how to use these forms, or the difference in how to apply them as written regarding Public Comments, Public Hearings and Agenda Items; how many or how long.

The citizens, developers and contractors are equally confused. This Ordinance

Copy from re:SearchTX

was designed to keep one citizen, Robert Battaile from speaking out about so many items. They punished the entire city by taking away 2/3 of the "speaker time" citizens should have, just to prevent the Plaintiff's constructive criticism. The City Council Rules of Procedure based on this ordinance contradicts itself in §7.04(a)(2) page 14, it says citizens get 3 minutes to speak on Public Hearing items; and on page 15, it says they only get 2 minutes. In practice, Council and P&Z Commission only allows 2 minutes.

The most egregious item is the limitation that ALL agenda items that a speaker wishes to comment on must be within 2 minutes total; and that they must be spoken at the start of the meetings instead of when the Agenda item comes up for discussion, which could be an hour or two later. Plaintiff asserts that the Council and Commission members never take any notes, and neither they or the one handful of citizens in attendance or online still watching will remember the Plaintiff's earlier comments.

Attorney General Opinion No, KP-0300 (2020) examined §551.007(b) and concluded that capping the total amount of time a speaker has to address all agenda items is permissible <u>only if it is reasonable</u>. Plaintiff asserts that it's plainly NOT reasonable.

For example, Robert was forced to speak within 5 minutes total on Oct 2, 2023 "Special" Session of City Council. The "Special" sessions only happen when the city spends LOTS of money and doesn't want the citizens to know about it. Special

Copy from re:SearchTX

sessions only require 12 hours Public Notice. There was no "urgency" that required a special session. There were 14 Agenda items and 216 pages of documents, including some developments that are addressed herein. Item 1 was $40 MILLION in bonds. Item 2 was a real estate amendment that wasn't included for a project that wasn't named. Item 3 was to authorize up to $180,000 for yet another study for a "Downtown" Strategic Plan (to destroy our historic Main Street). Item 5 was an important matter to Amend the Chapter 4 Zoning Ordinance. Item 6 was the Okra Subdivision with 331 lots and ever-changing in-lieu park fee amounts. Item 7 was Manor Heights subdivision and PUD and Item 10 was the South Korean developer putting 3-story boxes in the middle of our modest neighborhood within in our Historic District of Old Manor. Once again, on camera I ask City Council "have you figured out what the words historic district mean yet?"

SO, as was the case prior to this ordinance ~ I wanted to speak for three minutes when each item came up for discussion. Instead, I had to speak at the start of the meeting on all of these 8 items involving tens of millions of dollars, and the very character of our community; and I only got FIFTEEN SECONDS per item. That is utterly and completely "unreasonable" and therefore Plaintiff requests that Ordinance No. 691 be dismissed.

Austin City Council had put in similar public comment restrictions that were challenged and determined to be unconstitutional. Austin City Council's rules have been updated to expand public participation.

Copy from re:SearchTX

Further, the Manor Council and P&Z Commission don't understand why there is a place to put the name of an organization that you're representing on these two confusing forms. Or, that there is a difference between Robert Battaile, an individual; and the Austin Bocce League (a 501(c)(3) non-profit charitable corporation) of which Robert Battaile is the Director.

These are two different entities and can speak at two different instances about similar or different items at the same meeting. Even when Plaintiff explains how the forms were designed to work, or that a corporation is legally a "separate person," the Police have kicked the Plaintiff out of meetings because the police also are INCOMPETENT and have received no police training to understand the difference. The Manor Police have lost their objectivity and have become dutiful servants doing the bidding of city officials without question or investigation.

Note also that the City Attorneys have not spoken out or protested against these infarctions. That is a willful abandonment of their duties and their oaths. They know better but lack the honor required.

Robert has explained repeatedly that his "remonstrance" (impassioned speech) is protected in the Bill of Rights of the Texas Constitution, and these officers have forgotten that the Constitution is what their Oaths are supposed to protect, and stupidly upheld the Chair's misuse of their authority, and improperly ejected the Plaintiff. The Council procedures require a WARNING first prior to ejection, but these people are too INCOMPETENT to understand or remember that important

Copy from re:SearchTX

concept. Or perhaps it's just their normal Manor way of intimidating citizens to instill fear making people too afraid to come down and give their input. Input which is not welcomed and not wanted by the City of Manor.

XVIII. **INCOMPETENCE and OFFICIAL MISCONDUCT** examples. Partial.

a) City of Manor has $105 MILLION dollars in the bank and during the last 20 years, "they" (City Council and Staff) can't even put in a ping pong table, or a dog run, or a corn hole board, or a community garden, or a drinking fountain, or a park bench, or even ACCEPT a FREE disc golf course worth about $7,000 to be donated and installed by the Plaintiff and two local disc company owners that also redesigned the course to better fit right where it was approved for Timmermann Park, eight years ago in 2017.

Council refused this free disc golf course three years ago and never even said thank you. Plaintiff posted this youtube video: https://youtu.be/R_4Eh7QTZzA Time: 5:57 "Disc Golf Course for Manor Texas." That refusal deprived our children and the entire community in the process. That was INCOMPETENCE and OFFICIAL MISCONDUCT.

Plaintiff also sent a formal letter about the Disc Golf Course to the Planning & Zoning Commission that is required to act to consider citizen's input and put it on their Agenda. That requirement was purposely never followed. All the parks are

Copy from re:SearchTX

devoid of amenities despite the Parks Fund having $672,000 and without any coordinated activities anywhere in town despite having $400,000 in a "Community Programs" account. City also has Tourism Funds (Hotel Occupancy Taxes) of $705,615 available for use. Council's inability to spend the citizen's own money to benefit its own community is not only incompetence, it's sadly unfair and harms the very people that Council pretends "to love;" and whose money they hoard like stingy misers. Their many years of lofty promises are just hollow words.

Christopher Harvey was a City Councilmember for 2 years and has been Mayor for 3 years with another FOUR years to go. Anne Weir has been on the Council for six years and has another 2 years to go. How can they explain away their mediocre performance over all those years? Plaintiff examined 3 months in each of the last four years, only ONE AGENDA item was submitted by a councilmember which was to permit someone else (UT) do a small health outreach. Otherwise, these people have added almost nothing to our community. Now, they've become downright destructive; and are placing our Manor history, character, and landmarks in imminent danger.

They've submitted no original or interesting AGENDA ideas in the 4 years that I've been attending nearly every meeting. They are not pro-active in the least. Despite many, many very important community issues, there are no in-depth discussions between the Councilmembers from the dais at their regular meetings, or their very frequent "special" meetings that require only 12 hours public notice.

Copy from re:SearchTX

Four councilmembers ran unopposed in some elections, and still only got one-third of the vote. This city has spent over half a million dollars and done at least three surveys and they still don't know if they should put any park benches in?

b) Plaintiff discovered $400,000 in a Community Programs account by reviewing the Budget and asked the Mayor about it at a City Council Meeting. Mayor replied to the effect that "we've had that money for two years, but still haven't figured out a process for how to spend it yet." Those funds had been laying there dormant for two years! Then, instead of spending it on things that benefit "the people," Mayor siphoned off $25,000 for the Mayor's Ball; and also approved $60,000 for his full-time employer, ManorISD for a Summer Reading Program that went to neighborhoods that don't pay City of Manor property taxes. City of Manor's taxpayers' money should have gone to the Manor Library that the Mayor forgot that we had. City Council gave ManorISD $60,000 the year before. Mayor Harvey said in an online post that "Manor doesn't have a library." We've had a volunteer library for years and years at the Travis County-owned historic "colored" high school that we need to save from the wrecking ball (see Item XXVII below.) Last year, the City Council gave Harvey's employer, ManorISD $60,000 for the same bookmobile going to the same places that aren't within the city limits. Approx. $110,000 total.

Copy from re:SearchTX

Texas law prohibits Dual Office-Holding when "conflicting loyalties" might "negatively affect the duties of the other office" and if the "governing body" has employment authority (i.e. Mayor's employer is both City of Manor and ManorISD).

c) For two years now, the City slogan has been a complete and utterly fallacy designed to deceive themselves and the world of Objective Reality. On almost every page of the city website it says,

*"The City of Manor is a diverse, sustainable community and regional leader with exceptional services, a high quality of life, and a safe environment for citizens and businesses to thrive."* Who are they kidding? Ask yourselves: 1. Leader of what? 2. What is the "Region?" 3. Can you name even one "exceptional service?" 4. Safe? No sidewalks anywhere or lights in Old Manor. 5. High quality of life? Roads are horrible. Parks are empty. No activities. No public art. 6. Thriving? The only businesses thriving are the Bonds sellers and Developers. 7. Sustainable? We don't have one re-cycle can anywhere in the city including the office and city council chambers. There's no electric vehicles and no solar powered lights anywhere in town.

One the one hand, City says we're a "regional leader' and on the other, they want to claim 176 acres (almost our entire city limits) is "blighted" so they can do another TIRZ "shell game giveaway" to keep money out of the General Fund.

Copy from re:SearchTX

Their TIRZ Board One has/had FOUR City Councilmembers on it despite the City Charter which only allows two members per Commission or Board. TIRZ #2 is redrawing the borders of Historic Old Manor to remove approx. 40 acres to enable the two Developments that are egregiously impacting Old Manor in the worst way. Those are the developer's with property next to the 1840 James B. Manor Homestead; and next to the 1871 Manor Cemetery.

But, every year on Earth Day ~ they read another Proclamation. We could get an <u>unlimited</u> amount of trees for our city and our citizens for free; but all the City Council and Staff can do is an "Arbor Day" Proclamation and give away/claim credit for a few trees donated by a generous local nursery.

They bamboozled ScenicTexas into raising the City's "Bronze Star" to a "Gold Star" without having done anything to deserve it.

The City Council appointed four Councilmembers (instead of the maximum of two) to the "Naming Committee" in violation of their own Charter. In their compensation system of "tiers," they get paid for attending meetings. This compensation scheme was never approved by the voters. The more committees they can be on or attend, the more money they will receive – up to $2,500 per Councilmember per month; and up to $3,500 per month for the Mayor. Several have outside full-time jobs. The Mayor works for ManorISD. Mayor gets $675 for each City Council meeting. Their frequent "Special" meetings only need 12 hours public notice. Those are usually the meetings in which they spend large sums of

Copy from re:SearchTX

money or do "big things" that they don't want their constituents (the citizens) to know about. There's never been anything "special" or urgent to cause a "Special Council Meeting" to be required that I've ever been able to ascertain in over four years of attending nearly EVERY city council or P&Z commission meeting. The only reason the city meetings are now videotaped and streamed is because Plaintiff was taking his own video camera to meetings, editing and publishing clips online for several months to show people what was actually going on in our City government.

The City Council did no video recording from 7/21/21 until 3/1/23. Plaintiff's video was published 12/22/22 https://youtu.be/tycI6v1ZOEc "Robert Teaches Manor Texas City Council - Lesson One."

The City Council could video record the meetings during Covid, but they "forgot how" as soon as the meetings became open to the public again when the pandemic retreated. A good citizen, the Plaintiff made this critical component of good local governance possible.

Plaintiff's company, Calexas Inc. designed and built the improvements that Austin Bocce League donated to the Timmermann Park Bocce Courts. By contrast, the City of Manor's court construction was horrible. Instead of fixing the problems, the previous Mayor took out two courts after Robert "complained" that they weren't "flat or level." But thanks to Plaintiff's inventions and improvements, the remaining two were briefly the best courts in Texas and the most innovative in the

Copy from re:SearchTX

World. Briefly.

Note that Plaintiff started a Bocce League in 2009 at beautiful Juilliard Park's two courts in Santa Rosa, CA. Today, there are over 600 players on five courts playing 5 nights a week among the redwoods sharing food, wine and friendships.

Because of the Manor City Council's INCOMPETENCE AND MISCONDUCT, the Manor bocce courts were nearly destroyed and have still never even been repaired. They are now an utter embarrassment, and the players reduced from 30-40 per week to 8-12 per week. This not "regional leadership." They punished the entire community and defaulted on their Licensing Agreement by claiming the courts had become a "Public Health and Safety Hazard." This claim was blatantly ludicrous and Plaintiff prays that the court will agree herewith.

By virtual of Plaintiff's personal donations, he is our city parks largest personal donor of anyone in Manor; or Greater Manor. In fact, he's given more money to the parks than ALL 30,000 residents of Manor ETJ combined. Even more embarrassing to the Council, Staff, Chamber of Commerce and the citizens... it's under a measly $1,500 dollars. So, when the City's expensive, slick promotional video says in a low Texan drawl, "Manor's a GRREAT city because of its great people," I had to ask Mayor Harvey at a council meeting "where are all these great people, and when will they start doing something great?" His answer was "Manor has a lot of great stores." Plaintiff has asked the Mayor to name some great stores, but he can't or won't. There aren't any genuinely great stores in Manor.

Copy from re:SearchTX

d) The City Council, and the Planning & Zoning Commission approved paying $318,000 to Consultant, Freese and Nichols for a "Comprehensive Plan" designed to guide the city built around a Survey called Manor2050. Despite it being a 15-month project, the city gave them the entire fee up front, before any work had been done. A few months later, two staffers asked Robert to help send his "online followers" to take the Survey as the turnout was far less than hoped for. I was glad to help until I heard back that the link didn't work. It had been connected to the wrong city. After I pointed out this and other shortcomings, the consultant RETURNED $138,000 to the City and set up benchmarks including five town halls to finish the project and get their compensation.

At the first town hall at Lagos Elementary, the Mayor said "Manor's doing a lot of things for our Seniors." When Robert got the microphone, he said that was completely false and that the City was doing nothing to help seniors. There were NO activities anywhere and the Austin Bocce League couldn't even get a rate to rent the park for a "season" that would have allowed affordable prices for players, including seniors. So, the Mayor got upset and canceled the remaining town halls in a tax-payer ripoff valued at perhaps $70,000 worth of lost meetings. Those town halls were designed to explain the roads, infrastructure, parks, water and wastewater in the bloated 605-page document that none of the council could even read, let alone proofread. At the City Council meeting on May 17, 2023, Mayor

Copy from re:SearchTX

admitted he'd "only read most of it" and Councilmember, Anne Weir said "to be honest, I haven't read it cover to cover." But, both of them approved it anyway.

Two years later, they haven't fixed any of the errors. That's incompetence and shows utter disrespect of their own constituents, some of whom demand competence and especially not being willfully LIED to.

e) The Plan is filled with false statements that the Mayor, Council and Staff know are untrue. DestinationManorCompPlan-FINAL.pdf and note that there are 22 instances of something called "ShadowGlen Open Space." There's no such place. Actually, it's the City of Manor-owned 200-acre Woodlands Park that's been kept secret since 2004. And, it has a one-mile Nature Trail loop that the City Council, Mayor and Staff won't tell anyone about. At the end of this .pdf file, on pg 558 of 610 is Plaintiff's comments (#17) on the Plan and a few of its screwups. They never made any corrections.

Page 165 (in the Plan) calls it a "regional park" compared to Walter E Long? Pg 169 has a map showing it with the wrong name. Pg 179 is "Official Misconduct" by willfully not correcting and thereby suppressing the truth about the existence of a 200-acre City of Manor-owned Public Park, that's been owned by the City since 2003; and for creating barriers to the public's enjoyment of its Woodlands Park with a pretense of "parking issues" which the City Police, the Mayor and City Council, City Manager and others know is false.

Copy from re:SearchTX

There's no parking issues. The Police Chief told me several times, "Those are public roads in Travis County. Anyone can park anywhere they want to." Finally, I believed him.

Unfortunately, Chief won't put that in writing. Nor will the Travis County Sheriffs including Sally Hernandez, or any of the Travis County Commissioners including Judge Brown and our Manor Commissioner, Jeffrey Travillion, State Senator Hon. Sarah Eckhardt, or my State Representative, Hon. Sheryl Cole.

Pg 179 ends with "It will be important to include the public in the planning..." yet as mentioned, the "client" (City of Manor) canceled those remaining town halls that were included in the Consultant's Agreement.

Mistakes aren't all just "typos." Some errors are "content." This 610-document was never adequately proofread; but got approved anyway. Here's a screwup on their map: The western creek is Gillelands ~ not Wilbargers, which is on the other side of town at the eastern edge of Old Manor.

Plaintiff discovered that apparently Travis County has no handicapped parking spaces on its roads. Therefore, Plaintiff requests an INJUNCTION to enjoin Travis County to put three handicap access parking spaces at the end of Howdy Way in the cul-de-sac at the entrance to the trail loop.

Copy from re:SearchTX

f) DISAPPEARING HISTORY. The City of Manor website has a link to a page called "Manor History." Guess what? It doesn't even mention the Founder of our city, James Manor. He came west from Tennessee in 1832 with Sam Houston himself. General Houston used to be a frequent visitor at Manor's 1840 HOMESTEAD which Robert helped re-discover. It's right behind the Lions Club on tiny Parsons street. The City currently wants to stuff a 220+ Unit Apartment complex across the street here. There is nothing historic about an apartment complex. That should never have been approved except for the INCOMPETENCE of Staff and the Planning & Zoning Commission and misconduct by lack of transparency and without any approval by votes of the neighborhood citizens. We can't "replace" our history once its gone.

Note that the Planning & Zoning Commission has had a well-know violator of the Nepotism Laws, Gabriel Nila sitting on its dais and voting for over a year now. He is the husband of Councilmember, Maria Amezcua. Plaintiff filed a Police Report on that crime which only received an Incident Number. Plaintiff also filed a Municipal Court Complaint and named 15 Council members and city employees. Prosecutors (City Attorney, Knight Law Firm) says there's no crime, and thus will not bring it to the Judge in our Manor Court of No Record.

g) The "ever-changing" IN-LIEU PARK FUNDS. At one city council meeting I was at the podium with Lydia Collins, previous Finance Director on my left; and

Copy from re:SearchTX

Scott Dunlop, previous Economic Svcs Director and prior Interim City Manager on my right. Lydia said it was $247,000 [my recollection]. Scott said it was $850,000 and I said that I'd seen receipts of $963,000. The Mayor couldn't figure out what to say, or what to ask to get to bottom of the contradictions in the accounting. Apparently, he never investigated the "missing funds" or mis-used Park funds. The Council was silent, as usual.

Mayor and Council recently ignored learning about the city using its staff and equipment being illegally used to desecrate a cemetery and clear a private developer's land. Plaintiff filed a Police Report about those crimes. It was the-Plaintiff's 2nd Voluntary Police Report about the same offenses. It became "inactive" so fast that it never even got a "Report Number." Texas Police Association Code of Ethics call for investigating "with no compromise for crime and relentless prosecution of criminals;" and to never allow "animosities or friendships to influence [their] decisions." Based upon personal experience and obvious infarctions, Plaintiff asserts otherwise.

h) The missing- "ETHICS COMMISSION" ~ In the Home Rule City – City Charter adopted by Ordinance No. 578 on 8-5-20 Article XII Ethics and Conflicts § 12.01, the members "shall meet upon a complaint or grievance being filed." The Commission has no archives, minutes or videos. It has never had any members and has never met, perhaps since its founding in 2007 that I could find, but it does have

Copy from re:SearchTX

a website button that links to an "empty" commission with no members. As codified, it's a powerful commission that can subpoena witnesses and has its own independent counsel.

Plaintiff filed an Ethics Commission Complaint on March 29, 2024 to City Manor, Moore. The response was on April 1st was "The City is in receipt of your ethics complaint. The City does not currently have and Ethics Commission appointed. Once the Ethics Commission and Independent Counsel are in place, you are free to re-submit your complaint."

Eleven months later and nothing has happened. The Mayor and any one of the individual council members could have submitted an Agenda item to create the commission which was required by Plaintiff's "official complaint" in their codes. Plaintiff has informed each one of them in his email Newsletters on multiple occasions. This lack of follow-thru by all seven City Councilmembers is INCOMPETENCE and OFFICIAL MISCONDUCT.

i) Inability to Understand or Appreciate the phrase "HISTORIC DISTRICT OF OLD MANOR." At several city council meetings, Plaintiff asked the council if they had learned what the words "historic district" mean yet; because obviously they are permitting rampantly over-built monstrosities that are NOT historic in ANY way, shape or form. 400+ apartment units; and 95 townhomes of 2- and 3-stories are NOT historic. Nor is a 3-story "Live-Work-Play" box that workers can't

Copy from re:SearchTX

afford to live at, and the only nearby place for residents to play is on the kiddee swing set at Jennie Lane Park.

The Historic District has been in our City Codes since 2017 § 14.02.031.

The City of Manor Council, Planners and Consultants think tiny "Parsons Street" and "Lexington" are "commercial corridors" going through a mis-named "downtown" that's barely three blocks long and goes over a tiny, dangerous two-lane bridge on Old Hwy 20. The City Council and Staff and Consultants will destroy the quaint, historic nature of our original town without the residents of this small neighborhood understanding or approving of it. The illustration in that same "Comprehensive Plan" shows about 40 three-story office buildings here instead. The City kept the Austin Bocce League from having a booth at their public Juneteenth event in part because they didn't want any of our citizens to see this picture and start to understand that this is what the City of Manor is in the process of working on right now, and *using our money!*

The City of Manor City Council and Staff are in the midst of causing IRREPARABLE HARM. The Consultant's "dashboards" give a "one dot" rating (poor) to Single-family residences; and a "four dot" (high) rating to Mixed-Use. Says who? Nobody in the neighborhood was ever surveyed. Historic 1893 Texas Prairie mansion and cultural icon buildings have already been bulldozed down.

Note: It's also a Manor Residential Revitalization Area per code § 14.02.033 with the Old Manor borders. This gives the builder a discount on PERMIT Fees,

Copy from re:SearchTX

establishes some design criteria and other incentives. At one Council meeting, I mentioned those reduced rates to the Planning Services Director, Scott Dunlop who said, "well, nobody's applying for them anyway." That statement shows more of the same Official Misconduct. How would anyone know about those discounts? The City never mentioned they were available.

j) TIMMERMAN(N) PARK PLAN FIASCO. Plaintiff believes the city paid $12,500 for a "Master Parks Plan" but ended up being only this one park. They made a presentation as part of a Public presentation attended by only five citizens. Consultant, J. Gandolf Burrus, President of Grant Development Services showed his map with the name of the park spelled wrong (one "n" at the end). It only had 1/3 of the entire park. It was shown "on its side" because the NORTH arrow was pointing the wrong direction. Then, the Consultant pronounced it "Tiananmen" like the Square in China. When Robert pointed these things out, the room was full of staff members and two Parks Committee City Council members, Sonia Wallace (chair) and Aaron Moreno. Why hadn't they noticed these obvious mistakes? Why didn't the Mayor? Equally important, why were they mad at me? Here again, Plaintiff is vilified for his constructive criticism and keen observation.

This Project was a scam launched to get a $750,000 Grant from Texas Parks and Wildlife. Unfortunately, the Consultant and Parks Committee didn't have the brainpower to understand what the word "non-urban" meant. Otherwise, they

Copy from re:SearchTX

would have realized that a "non-urban" park grant could never be approved next to the Manor Commons subdivision and two apartment complexes. The study was a poorly vetted complete and utter waste of our taxpayers' time and money.

The Consultant's previous presentation showed an overarching concern with a creek that had been diverted years earlier; or it would have been running through the Prose Apartments buildings plainly shown on his map. That would indicate he never walked the area. He suggested spending $5,500 for a "wetland delineation." Why didn't anyone show him the approved 2017 Timmermann Park Master Plan with its clear delineation as "floodplain" which restricts what can be built there. Disc golf was approved there in 2017. Plaintiff redesigned the course with others and shot a video as well. The tiny bridge to be built goes over that creek diversion. Plaintiff wanted to donate it to the city. They refused.

https://youtu.be/R_4Eh7QTZzA Time: 5:57 "Disc Golf Course for Manor Texas."

Having seen an obvious need, Plaintiff created a Master Parks Plan of his own calling it "The Manor Country Club." Created in June of 2022, it's a 50-page "picture book" that filled all the parks with amenities. Parks Fund had over $700,000 that could only be spent on amenities. I went to a Lions Club meeting to ask City Councilmember, Anne Weir if she'd like to review it. She said she "lacked the expertise to read it." But somehow, she had the expertise to approve the 605-page Comprehensive Plan which she admitted she hadn't fully read? Manor STILL

Copy from re:SearchTX

has no "Master Parks Plan" nor even a Parks and Recreation Department. Per City Codes, the City Manager could start one without even needing council approval.

XIX. **PETITION TO WAIVE GOVERNMENT IMMUNITY.** Plaintiff requests that the City of Manor, Travis County and the State of Texas be compelled to waive their respective immunity per § 101.025 for the following reasons: i) Equal Protection violations, ii) civil rights violations, iii) Open Meetings Act and Freedom of Information Act violations, and iv) criminal conduct.

Plaintiff requests that the City of Manor be compelled to waive its respective immunity per § 101.025 for the additional reason: v) Breach of Contract.

Many of the allegations contained contained in Item XXI below demonstrate several or all the above Plaintiff's allegations. These three entities violated the following protections:

a) Civil Rights Act of 1964. Under Title VI of the Civil Rights Act of 1964, no person shall, on the grounds of race, color, religion, sex, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

b) Section 504 Rehabilitation Act of 1973 as amended. ...no otherwise qualified individual with disabilities... be subjected to discrimination... under any program or activity receiving federal financial assistance.

c) Age Discrimination Act of 1975... which provides that no person in the

Copy from re:SearchTX

United States shall on the basis of age be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

Manor received an $850,000 Federal Grant per Congressman Greg Casar Apr 2, 2024 press release.

XX. **SEVERABILITY** and accidental errors or omissions. Plaintiff prays that if any individual requests in this First Amendment be or become void or ineffective in whole or in part, that the effectiveness and standing in the remaining requests shall not be adversely affected. Further, if any of the properties have changed ownership, or developer/builders have changed; such changes will not affect the substance of these matters. The City of Manor will be asked to provide the most current relevant information to the Plaintiff and the Court as part of the discovery process.

XXI. **DAMAGES**. Per the Texas Tort Claims Act § 101.0215 there is Liability of a Municipality for damages relating to harm resulting from, or absence of (1) police...control; (3) street construction and design; (4) bridge construction and maintenance and street maintenance; (5) cemeteries and cemetery care; (9) sanitary and storm sewers; (11) waterworks; (13) parks...; (15) libraries and library maintenance; (17) community, neighborhood or senior citizen centers; (23)

Copy from re:SearchTX

recreational facilities, including but not limited to swimming pools...; (29) zoning, planning and plat approval; (32) water and sewer service; (34) community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code; and (36) enforcement of land use restrictions under Subchapter E, Chapter 212, Local Government Code.

a) **BREACH OF CONTRACT**. The Licensing Agreement of February 9, 2022 between the City of Manor and the Austin Bocce League (ABL) was breached and defaulted on by the City of Manor on February 3, 2023 in a letter from City Manager, Leslie Scott Moore. This was based on request from the Mayor, Harvey and another request from Mayor Pro Tem, Emily Hill to "take action" against the bocce courts which was written on June 14, 2022 and discovered as a result of Freedom of Information Act requests made by Plaintiff. Robert Battaile is the Director of the Austin Bocce League. Plaintiff is the President of Calexas Inc. that created, built the world-class improvements. Players including Special Olympics Bocce Players from Elgin and Manor, plus Seniors were locked out of the courts for nine months under the ruse that they were a "Public Health and Safety Hazard." City has done no maintenance or even fixed the gaping holes left behind. See Item XXXV for points and remedies.

Copy from re:SearchTX

b) **EQUAL PROTECTION**. Austin Bocce League was prevented from having a FREE Community Booth at the 2024 City of Manor's Juneteenth Public City-wide Event. There was no explanation for this denial ever given. There was ample space. The irony of discriminating and excluding a community non-profit group on a holiday about Juneteenth is the height of hypocrisy. The Bocce Courts were the only sports activity in the entire town. Per Equal Protection clauses in the United States Constitution, this refusal was illegal and demonstrates both official misconduct and incompetence.

Plaintiff sued in Justice Court Precinct One Justice Court Precinct One Cause #J1-CV-24-003083. Case was dismissed by Judge Yvonne M. Williams because "Justice Courts do not have jurisdiction over suit for equal rights protection. Further, the City of Manor has sovereign immunity."

c) **CIVIL RIGHTS.** Robert Battaile was evicted from Ben E Fisher Park – (a Travis County Park next to the Senior Center) during a 2023 Juneteenth Event that he helped organize. Plaintiff alleges that City Councilmember, Sonia Wallace lied to a Police Officer, Milton who then removed Plaintiff from the park and event against his will. Officer's Body Cam recording got purged. Without even telling me, the case had been closed because Det. Struble found no evidence of a crime.

Despite the Police Chief's lies to the contrary, Plaintiff got the Internal Investigation started after he spoke with the FBI Dallas office. The FBI encouraged

Copy from re:SearchTX

Robert to attempt to get an internal investigation first. After 200+ emails explaining the reality of the coverup, the police did launch a charade of a nine month "Internal Investigation" by Capt. Collins. To nobody's surprise, they found "no police misconduct" and "no civil rights violations" against Mr. Battaile.

Then, why did the Plaintiff have to leave the event that he helped organize? Why did the Police bodycam get "purged" in the middle of an investigation? Plaintiff recorded the police interaction. Capt. Collins had access to that recording. That's an example of incompetence and official misconduct by the Police and City Council and Staff. Milton and Struble were fired or left soon after the event. These people call themselves "detectives" but they never investigate anything.

In 2023, after Plaintiff was shocked by the Manor Police's lack of performance investigating a Juneteenth incident when Plaintiff was against his will evicted from a public park by an officer who was lied to by a City Councilmember; Robert submitted a Police Complaint at the Travis County Sheriff online portal. The only category that applied was "Gang Activity."

"A gang is a group or association of 3 or more persons with a common identifying sign, symbol or name who collectively engage in criminal activity or create an atmosphere of fear and intimidation"
As an example, the site says "everyone is afraid of them." That's what much of the citizenry feels, especially in Old Manor.

And further, this level of fear and intimidation in the community; and the

Copy from re:SearchTX

justified fear of retaliation and harassment by City of Manor office-holders and their local cliques have incentivized Plaintiff to include the Parks Allocation Fund Item XXXIV and Reparation Allocation Fund Item XXXVI herein; rather than in a separate Class Action Lawsuit. The boundaries of Old Manor are established and small, the time-frame of 20 years (2004-2024) is concise, the number and identity of the harmed persons are relatively easy to determine; and the harm and its source are obvious. The Damages requested are not onerous, and will not impair the city's sustainability. Recipients' privacy rights are more guaranteed via this action and the remedy requested perhaps would be comparable and take less time to deliver.

Additionally, Plaintiff feels the Municipal Immunity will become waived hereby in this Cause.

Therefore, for reasons contained herein, and for additional reasons; Plaintiff requests the Court REMOVE City of Manor's Governmental Immunity and consider the following *"iura ovit curia."*

Plaintiff sued in Justice Court Precinct One Justice Court Precinct One Cause #J1-CV-24-003363. Case was dismissed by Judge Yvonne M. Williams on September 13, 2024 for lack of "jurisdiction over suit for equal rights protection;" and "City of Manor has sovereign immunity." Case was "dismissed without prejudice to refiling in the proper jurisdiction."

Copy from re:SearchTX

Robert has bail restrictions based on a false arrest based upon lies told by City Manager and City Secretary to (or by) the police and parroted to a Judge. These bail restrictions prevent Plaintiff from speaking at City Council meetings in person. He must stay 600' away from the City Manager and City Secretary. However, that should not restrict my ability to provide written comments to be read at City Meetings. I am supposed to be presumed innocent until proven guilty.

Meetings were closed to the public during the covid pandemic, and the City Council would easily read public comments aloud as they were being recorded on video camera. Plaintiff sent an email to Interim Economic Services Director, Mike Burrell who has a position not well defined of being the "liaison" (read: Gatekeeper) of communications to the Planning & Zoning Commission (that functions as a committee). I asked him to read my letter at the meeting.

On 11/13/24, Mr. Burrell refused to read my letter during the Public Comments at the Public Meeting; but did show the rare courtesy of a city email response which stated *"I am reaching out to inform you that since the city does not currently have a policy in place for accepting public comments to be read outside of being submitted in-person, I cannot read this during public comments. However, I can provide the email to the commissioners at the beginning of the meeting for their view and consideration."* In the City Council Procedures handbook, it professes the city has an email address "publiccomments@cityofmanor.org" ~ That email address no longer works. Travis County wasn't told by the City of Manor

Copy from re:SearchTX

that it was available to me. I tried it. It's not working. How does this lack of input mechanism jive with the Mayor who says "I welcome your questions" on a public forum?

Mike Burrell, acting Dev Svcs Mgr said he couldn't read my letter during the meeting but he would give it to the Commissioners at the beginning of the meeting. Note: The information being given to the Commissioners "at the beginning of the meeting" does not allow proper time "for consideration" and is thus unreasonable; and insulting to these citizen volunteers.

Despite numerous calls to the Open Meetings Hotline, discussions with Travis County attorneys, and the Travis County prosecutor's "best efforts," they have not been able to get City of Manor to provide a person to even read Plaintiff's written comments at City Council, Planning & Zoning or any public meetings. I have been effectively disenfranchised as my emails are not responded to either. I have been kicked out of Public Meetings for no good reason, especially since my remonstrance (passionate speech) is protected in the Texas Constitution's Bill of Rights, and since Council Procedures require that a warning first be given. Council does not get to discriminate against me, or prevent me from speaking based upon my opinions. Robert reiterated these protections while being removed in his youtube video https://youtu.be/OXRaIDwgOXk Time: 2:06 "Robert Unlawfully Escorted from Manor City Council Meeting."

Copy from re:SearchTX

City Council changed its Public Comments rules to dramatically shorten citizen's speaking time and position of speaking. This scheme was deemed unconstitutional in a recent City of Austin lawsuit. Manor Council changed its rules from responding to citizen's emails within 3 days, and phone calls within 24 hours; to the vague "in a timely fashion." They haven't answered Plaintiff's emails in years.

Further example of their utter incompetence is that the "process" to read public comments is in their OWN City Council Rules of Procedure; and City of Manor still can't manage this simple task.

§9.03. Committee Meetings.

… c. Citizens wishing to submit Public Comments during open meetings will need to complete the Public Comments Form provided by the City and email the form to publiccomments@manortx.gov at least two (2) hours prior to the committee meeting indicated within this procedure.

d. Public Comments will be read by the Chair of the Committee for the record. No action will be taken by the committee during public comments.

Plaintiff has to ask, where would a person find the "Public Comments Form?" Plaintiff couldn't find it at the City of Manor website. Incompetence by design?

Copy from re:SearchTX

d) **POLICE MISCONDUCT AND INCOMPETENCE**. Plaintiff has submitted several Voluntary Statement Forms, sometimes called "Police Reports" over the past three years, all of which were deemed "inactive" despite shoddy or no investigative efforts; no repercussions to anyone; and obvious evidence provided: Art Park Littering – Art Park pollution and Parking Road Eqpt in No Parking area of park (2x) - Cemetery Desecration (2x) – Misuse of Public Funds to clear private developer's property on multiple occasions – and items b) and c) above, and e) below.

A person well-known to the Police littered in an alley behind the Relax Inn. After Plaintiff witnessed a can of Skoal come flying out of the hotel laundry room into the alley, Robert spoke out. The person that littered called the Police to report Robert as being disorderly. The Police were polite and left after a brief exchange with myself and also with the perpetrator. I filed a Voluntary Statement Form (Police Report) for a Littering Violation on May 10, 2024. It was Case #24-00679 and Det. Mary Eaton made it inactive on the very same day without sufficient time for any investigation, and sent me a letter on that same day stating "we currently have no further viable leads on your case, but will follow up if any do occur." This is blatant incompetence and official misconduct. Every officer that showed up knows exactly who littered since there was only one person at the scene that chewed tobacco and it wasn't the wife or the young daughter. Maybe it was the

Copy from re:SearchTX

chewer that called the Police? No viable leads?

On August 28, 2024, Plaintiff and Bobby Reese (who was illegally prevented from being on the Ballot for City Council Place 3) submitted a Voluntary Statement Form (MPD CASE #24-01385) that alleged Election Coercion by City Manager, Leslie Moore and City Secretary, Lluvia Almaraz. The Detective, Mary Eaton and supervisor, Lt. James Allen never even interviewed Plaintiff or Mr. Reese. Plaintiff asserts that this is a police cover-up designed to insulate criminals that are on the City of Manor staff that are considered to be their "friends." City of Manor writes the Police officers' paychecks. They are hired "at will" and can be terminated at any time with or without cause.

e) **OFFICIAL MISCONDUCT**. Nepotism is alleged by Plaintiff to have been well-known for over a year by the entire city council, police chief and captain and lieutenant, city attorneys and many staff members. Councilmember, Maria Amezcua has been married to Planning & Zoning Commissioner, Gabriel Nila since 2017. This crime of Nepotism was submitted as a Police Report by Plaintiff and also to the Manor Municipal Court alleging 13 City of Manor employees, and 7 Planning and Zoning Commissioners knowingly and willfully violated Texas Government Code Chapter 573 § 5.1 re: Nepotism and Affinity. Mr. Nila is realizing indirect "gain" and bolstered "prestige" when at events with the wife.

The Ethics Commission §12.01 plainly says "The council may not appoint any

Copy from re:SearchTX

person related to a member of the council within the first degree of consanguinity or affinity." Why would only this Commission need to worry about affinity?

The Nepotism Complaint also cited City Attorneys, Barbara Boulware-Wells and Paige Saenz from Knight Law Firm LLP for personally knowing this was a crime, and not protecting the city.

Nearly all the parties mentioned throughout this complaint and as amended, receive Battaile's Email Newsletter on an almost weekly basis. This subject was included in multiple articles in multiple issues. All of the important community issues included in this Case have been written about by the Plaintiff publicly multiple times to a circulation of 250-700 depending on the targeted local groups, or national media.

Plaintiff contends he is the only truthful source of local city news on social media and in print because the Manor Journal is a "journal" and not a real newspaper providing "ethical journalism" because its largest advertiser is the City of Manor that spends over $35,000 per year helping them survive. Despite its many positive aspects, the Journal will never print a disparaging word about the City Council, Staff or its Policies. There are no "editorials" or "letters to the editors." For example, the Journal had a front page article about the HEB ground-breaking with many photos of councilmembers and staff. The article never mentioned that the City gave the developer $20 MILLION in incentives or that every commercial development over 10 acres is "required" to have a Plaza. Or, that our City Council

Copy from re:SearchTX

is apparently too timid to ask for one. That's incompetence that harms the entire community in an irreparable way. With proper statues, bell towers fountains, dramatic lighting, planters and benches ~ these "gateway" plazas could raise our community's pride and cultural mindset in untold ways.

Plazas are gathering places for people to come together. These are high visibility locations with over 70,000 cars driving by daily on 290. The City Council refusing the Toll Road overpass going past Elgin was one of the worst decisions in our town's history. The decisions in this Pleading are equally impactful. Traffic and road conditions in Manor are widely acknowledged to be terrible. The City just made their best effort at fixing the roads in Old Manor. Their "best effort" was a joke. They didn't finish one contiguous road from end to end. They didn't add one foot of sidewalk or add one street light. They added no parking at the cemetery. The patchwork of new streets are already cracking. More Old Manor neglect.

XXII. **MANOR JUNCTION INJUNCTION** re: 95 townhomes on top of graves in historic district.

Owner: Junction Development LLC Scottsdale AZ ~ Prior Owner: Lane Ave Development LLC

Builder: Legacy Performance Capital LLC ~ Philip Jalufka, CEO

Town of Manor: Lots 6-10 Block 15, Lots 1-10 Block 17, Lots 1-10 Block 18, Lots 1-10 Block 19, Lots 1-5 Block 20, Lots 1-5 Block 74 and .397 acres James

Copy from re:SearchTX

Manor Survey No 40 Abstract No. 546

Plaintiff requests an injunction to halt any and all further development and construction of the Manor Junction 95 2- and 3-story townhomes. They were approved illegally within the Historic District of Old Manor. There is nothing historic to Manor about a townhouse complex. This was an example of the City Council's incompetence and inability to resist staff pressure to ignore City Codes; plus a mis-use of the Comprehensive Plan to assert zoning imperatives, and without proper full paid-for public notice.

An Historic District and a Design District were approved in Ordinance No. 480 adopted on by Mayor Rita Jonse on August 23, 2017.and Codified as §14.02031.

The zoning was changed to TH (townhome) in a process begun in Feb of 2022 by Lane Ave Development. Once that was accomplished, the property sold than a month later. At a Special Session on Oct 3, 2022, Tommy Tucker, COO of the Legacy Performance Capital LLC spoke about his company purchasing the right-of-ways, streets, culverts and alleys from the city, which they did. Plaintiff began telling Mr. Tucker and the company that these were in an historic district and further that they were adjacent to the 1871 Manor Cemetery, and thus there were likely graves on the property.

And indeed, it turns out that in 1906 Martin McVey, a black man from Manor purchased .4 acres from Mr. Lane for "a cemetery lot." This sale was registered at

Copy from re:SearchTX

the Travis County Courthouse. Plaintiff has sent the builder and the city and the police copies of this document. Further, the plaintiff has shown all these parties photographs of rectangular lily patches that are likely black person's graves. The only way to know with any certainty is thru Ground Penetrating Radar (GPR) which the parties refuse to do, despite using GPR equipment to map the Manor Cemetery right next door and spending $23,500 to do so. Despite being informed of the bona fide Mcvey purchase, and photo evidence of probable graves, the City desecrated the Cemetery which is against the law per Texas Penal Code 42.08.

Plaintiff and Ruth Taylor Biscoe filed a Police Report about the desecration in December of 2023. Ruth's mother, Maud Taylor was the 2nd black person buried there. It was "whites only" until 2004. City employees and equipment were used to clear this private developers property and having been mowing their grass illegally probably for over two years; which is mis-use of city funds. The Police made Plaintiff's Police Report "inactive" which meant there were no reprisals and the parcels were desecrated at least two more times including removing debris that could have been of historic value from the original home on parcel #377652 itself. On November 12, 2024 Plaintiff again observed City of Manor work crews desecrating a cemetery and filed a 2nd Police Report naming Legacy Performance and the City of Manor as the violators. That Report was also never investigated due to INCOMPETENCE and OFFICIAL MISCONDUCT.

Additionally, the City was paid a mere pittance of $213,000 for 2.667 acres of

Copy from re:SearchTX

R.O.W., streets, alleyways and culvers. City sold historic land in Old Manor at $1.83 per sq ft. However, in Resolution No. 2024-23, the City of Manor purchased land in Travis County to annex at the request of a developer for $18.00 per sq ft. If the City had sold our Manor same property at $18.00 per sq ft it would have generated revenue of $2,090,376. That's a very big and hard to explain difference using "market value" alone.

The explanation is that the purchase was from Manor's "favorite son" developer, Pete Dwyer who owns, Cottonwood Holdings, Ltd.

Further proof of city incompetence and the Developer's bad faith is the fact that there has never been any mention of the city getting dedicated parkland or in-lieu park fees. Why not? They have 95 living units times $600 per unit = $57,000 or, we prefer the parkland at 1 acre per 55 units = 1.73 acres., or maybe we get 1.73 acres x $50,000 = $86,500. Yes, it's somewhat confusing since Scott Dunlop, previous Development Services Director changed the Rules and confused both the Council and the Planning and Zoning Commission claiming to be its Liaison, and acting as gatekeeper and censor.

Unless developer changes the design to single family (as the residents were told it would remain); and can prove the absence of graves by GPR; then as noted in Item 13, City of Manor shall be directed to return the monies for the R.O.W. Purchase; and pay the purchase price of the land to the developer, with next-to-no design reimbursement. They were told they were in an Historic District and they

Copy from re:SearchTX

knew they were building next to a cemetery; and they had been shown likely graves. City Manager, Moore walked the area with Bob Ward of the Texas Historical Commission, but was too incompetent to understand what black graves even look like, and didn't understand what a registered deed purchase in 1906 for "a cemetery lot" might have to do with any graves being located here; and couldn't figure out who authorized the city to misuse funds, let alone reprimand or terminate that staff person. This demonstrates the Manor head-in-the-sand approach to governance and appreciation of history. So the Police put that Report right in their "inactive" file which is OFFICIAL POLICE MISCONDUCT.

XXIII. **JAMES B MANOR HOMESTEAD INJUNCTION**. Re: 6 acres at 1840's original site.

Owner-Developer, Las Entradas Development LLC, Pete Dwyer, Managing Partner  Parcel #236851

Plaintiff requests a 6-month Temporary Restraining order to halt any and all further development pending negotiations between the Plaintiff, City and Developer to establish a purchase price to be paid by City of Manor and dedicated for a "Homestead Park" use. Plaintiff has the sole option to extend this for another 6-month term in hopes of reaching a fair and acceptable resolution short of

Copy from re:SearchTX

exercising the city's powers of eminent domain, or seeking a permanent injunction.

Plaintiff requests a temporary injunction to halt any and all development that might damage or otherwise destroy this irreplaceable Manor landmark. Plaintiff asserts that 6 acres of this parcel must be protected to create a History Park that features the HOMESTEAD of city founder, James B Manor. Manor came west in 1832 with Sam Houston. General Houston was a "frequent and welcome visitor" at the homestead. This is our "Alamo" and must be protected. It is under eminent threat of destruction by vandals and/or development. Pete Dwyer is to be saluted for protecting it thus far; but now it is up to the Court to understand the importance of our Texas history.

Plaintiff spoke at a Texas Senate Hearing on "Protecting Texas History" and told the panel and Texas Historical Commission about Manor's Homestead and Cemetery that were "under attack" by incompetent city officials and the State of Texas DID NOTHING. Travis County Commissioners have been told several times when Plaintiff called in to the live streamed meetings, and in multiple emails, and likewise, Travis County DID NOTHING, except treat the Plaintiff rudely and with derision. Manor's County Commissioner, Jeffrey Travillion has done NOTHING for Manor in eight years. That's the "norm" for how Manor's been treated for many decades by Travis County and the State.

Plaintiff requests that two contiguous acres on to the other side of the creek be included as well. Two of James Manor's children died at a young age. We have no

Copy from re:SearchTX

record of where they were buried. To Plaintiff, it seems quite probable that they would be buried there on a promontory, close but not too close to the house.

SUBSTANDARD HISTORIC BUILDINGS. The City of Manor, per Title 7 Subtitle A Chapter 214 §214.00111 Additional Authority to Preserve Substandard Building as Historic Property.(c)(3) … the historic preservation board of a municipality may review a building described by Section 214.001(a) to determine whether the building can be rehabilitated and designated (3) as historic property through a municipal historic designation. Old Manor was established as an Historic District in 2017.

Most of the buildings in this Petition were on the List of Historic Buildings in the 2007 Manor Historic Resources Survey conducted by the Travis County Historical Commission. One landmark listed including the now-destroyed 1893 Texas prairie mansion that belonged to the Manor Postmaster. Manor City Council and P&Z Commission let the zoning be changed from Single Family to Townhomes, encouraged and made permissible by the Comprehensive Plan erroneously converting our historic residential town into mixed-use three-story live-work-play boxes or giant apartments on a "commercial corridor." That building on 104 E. Townes was a "four square building" and would have been saved if City Council wasn't incompetent.

Despite all the protections of the historic district's purpose and goals evidenced

Copy from re:SearchTX

in the Ordinance and Codes, and the Revitalization District benefit; City Council is proving they are unable to protect this treasured site. Their misguided Comprehensive Plan seeks to alter irrevocably the small-town charm and pioneer character of the town James B Manor founded in 1850. There must be adequate parking near the Homestead and space for events. Directly across the street, the illegally approved 240 APARTMENTS have utterly no business being there and Plaintiff seeks an Injunction to halt that construction as well in Item XXIV next.

XXIV. **LAS ENTRADA SOUTH INJUNCTION**. Re: Parcel #100654 10.124 acres Parcel #100653 1.43 acres.  Owner: Manor MF LLC in Maryland. Builder: DD&B Construction. Sushil Mehta.

Plaintiff requests an injunction to dismiss Ordinance 655 zoning change. And, Plaintiff requests a 6-month Temporary Restraining order to halt any and all further development pending negotiations between the Plaintiff, City and Developer to establish a purchase price to be paid by City of Manor and dedicated for a "Homestead Park." Plaintiff has the sole option to extend this for another 6-month term in hopes of reaching a fair and acceptable resolution short of exercising the city's powers of eminent domain, or seeking a permanent injunction.

These approx 240 apartments were approved illegally within the Historic District of Old Manor. There is nothing historic to Old Manor about a large

Copy from re:SearchTX

apartment complex. This was an example of the City Council's incompetence and inability to resist staff pressure to ignore City Codes.

An Historic District and a Design District were approved in Ordinance No. 480 adopted on by Mayor Rita Jonse on August 23, 2017.and Codified as §14.02031.

The zoning was changed to Multi-family 25 (MF-2) with Ordinance 655 on June 15, 2022 with 2.48 acres remaining C-1 light commercial as "the carrot" providing something "for the residents" in the way of small shops or a convenience store. Plaintiff never believed that would happen, and later that parcel was approved to be changed to more apartments. The Council and the tainted Planning and Zoning Commission approved the change. Why?

The new streets are already cracking there. Plaintiff fears these will be shoddy construction and turn into the "projects" with unwanted crime and congestion. The traffic is already horrible with only three tiny exits, one on to small Parsons Street. (no it's not a "Commercial Corridor" despite those false claims) and Plaintiff contends that besides being a dangerous fire situation, adding over 700 people into Old Manor does ruin its historic character, imposing unwanted hardships on the residents nearby and was based on the fraudulent Comprehensive Plan with its preconceived notions that MIXED USE is our salvation. That plan was never put to a vote of the voters in OLD MANOR and is contrary to the goals in Manor Charter and its Historic District Ordinance from 2017. Mixed use 3-story boxes are not historic and must be halted.

Copy from re:SearchTX

This Developer will be made whole per Item XIII. Their designs and planning is utterly re-usable. Builders knew it was in an Historic District. Planning & Zoning Commission had an illegal member on it that likely voted on this issue. Bogus Comprehensive Plan used to justify this location for an apartment complex was flawed in major ways. Plaintiff spoke out about it a several council meetings.

This area should remain mostly dirt for pioneer events. This was part of  Manor's homestead and later the Eppright ranch. Many of the "old timers" in Old Manor remember those days and have great stories to tell. The City of Manor has Tourism funds of $735,586 that are available for use. The fact that this H.O.T. (Hotel Occupancy Taxes) fund has so much money in it is yet another example of INCOMPETENCE. The City Council has no ideas on their own, and can't design "a process" to get ideas from the community. Nobody can even remember when the city had its last parade.

XXV. **MANOR GROCERY INJUNCTION**. Re: Parcel #238889 of .2 acres on historic Parsons St.

Owner: MAQIL INC.

This building, the gas pumps and the corrugated metal buildings are the anchor of our original Main Street. It has been closed for some time. Recently, owners want the zoning changed to Light Commercial so they can put gas pumps in. That

Copy from re:SearchTX

corner is ridiculously narrow and dangerous as a re-fueling stop. And, those existing old pumps should be cherished and restored. Plaintiff has suggested the City buy that parcel and open it as the Manor Grocery circa 1920's General Store and a Visitors Center. The "barn" would become a recreation of the Blue Front Bar, a popular night spot in the past.

SUBSTANDARD HISTORIC BUILDINGS. The City of Manor, per Title 7 Subtitle A Chapter 214 §214.00111 Additional Authority to Preserve Substandard Building as Historic Property.(c)(3) … the historic preservation board of a municipality may review a building described by Section 214.001(a) to determine whether the building can be rehabilitated and designated (3) as historic property through a municipal historic designation. Old Manor was established as an Historic District in 2017.

Further, per §214.001(g)(1) Plaintiff has identified a feasible alternate use for the building or (2) locate an alternate purchaser to rehabilitate and maintain the building.

XXVI. **HERITAGE TREES OR 3-STORY BOYCE STREET BOXES**.

Owner: Build Block Inc, a Delaware Corp.  Jiwong Jung  might have sold this property to TX Zone LLC.

Plaintiff is requesting an INJUNCTION to prevent any and all demolition of the buildings from 101 to 107 Boyce Street and 104 to 108 Boyce Street property is

Copy from re:SearchTX

protected as a Substandard Historic Building as noted in item XXIII above. The proposed and fraudulently approved zoning changes were in conflict with the historic designation in Old Manor since 2017. The owner was told in emails by the Plaintiff and in personal at city council and P&Z Commission meetings in a friendly way to their "representatives" who were web designers that knew nothing.

This company has about 38 acres on the east side of Greater Manor. They can these 3-story mixed-use boxes over there. The design is boringly re-usable and not wanted.

Developer never mentioned the need to chop down the Heritage Tree even though they knew they would have to. City of Manor never mentioned the half-million of Chapter 380 infrastructure giveaways that was always "part of the deal." So, Old Manor gets next-to-no improvements while we give sewer pipes and drainage and sidewalks for free to a foreign investment group worth over $248 million. That is the on-going current behavior of favoritism to some and harm to others that justifies Old Manor receiving modern era Reparations for decades of similar, systemic neglect as proposed by the Plaintiff in Item XXXVI.

SUBSTANDARD HISTORIC BUILDINGS. The City of Manor, per Title 7 Subtitle A Chapter 214 §214.00111 Additional Authority to Preserve Substandard Building as Historic Property.(c)(3) … the historic preservation board of a municipality may review a building described by Section 214.001(a) to determine whether the building can be rehabilitated and designated (3) as historic property

Copy from re:SearchTX

through a municipal historic designation. Old Manor was established as an Historic District in 2017.

Further, per §214.001(g)(1) Plaintiff has identified a feasible alternate use for the building or can

(2) locate an alternate purchaser to rehabilitate and maintain the building.

The Chapter 380 Grant for 104 and 108 Boyce was for $285,000 for infrastructure incentives. With the way it's written, it's very hard to tell the actual value of the giveaways on the other 101-107 Boyce Street properties. They are a giant international company with $248 MILLION in assets. It's a "real estate investment platform" that uses A.I. to locate investments. They don't CARE about preserving Manor neighborhoods or our history. Our leaders are supposed to protect our history and our neighborhoods for us. The tools are in our codes and state laws. Here again, the City Council proves it is too incompetent to protect us.

Plaintiff would like to recreate the Barbershop that was bulldozed to make way for the first UGLY three-story box on Lexington. Hopefully, it will be the last. And a small parking lot, and save the Heritage Tree that is growing up through the back porch and roof of a funky old house. That is a tourist draw especially with the Old Barbershop which was the richest repository of "stories told by Manor Oldtimers and more recent people over generations of haircuts. 104 to 108 Boyce Street will return to single-family small homes as before, retaining the original feel of the historic neighborhood.

Copy from re:SearchTX

That heritage tree is probably over a hundred years old, plus it blocks the view of that ugly box on Lexington St when it has a full leaf canopy most of the year.

XXVII. **ORIGINAL PARSONS SEMINARY AND LODGE #222**. 8-acre parcel #526048. Owner is ManorISD Manor – Supt. Robert Sormani

Our city has a rich history with only a few remnants left in the community remaining. ManorISD owns this property which is currently an abandoned school. It was until recently the Excel Academy, a positive partner in the neighborhood.

This property "balances" the old city. At the creek on the west, was the 1840 James B Manor Homestead, which was the first Post Office and the Stagecoach Station on the route from Houston to Austin; and then railroad station/Main Street with the school and cemetery by the creek on the east. Plaintiff wants to convert these buildings into a Community Center and add a pool. It already has basketball court, softball fields outdoors, meeting space, classrooms, etc. Perhaps a sale for ONE DOLLAR, and the school district gets to use about 10%. There is an active little league baseball league using the baseball diamonds there now. There is great space for soccer field and other park amenities that are too large for the Art Park (which is nearby but for 3 years has been empty with toxic asphalt road-gravel where the lawn should be).

City of Manor has $15 million of Development funds, plus $41.5 million of Unrestricted Funds, and access to use some of the $167+ million of Bond monies

Copy from re:SearchTX

approved. Saving these school facilities on this historic site, and slightly re-purposing them will save millions of dollars for something (a local community center and pool) that's much more useful to the founding neighborhood of Old Manor.

Plaintiff asserts this makes great financial and practical sense. These school buildings are more to scale with the neighborhood, and more convenient. Current city designs show a giant glass box mausoleum structure (community pool/library) that could be five miles away from Old Manor.

Plaintiff is requesting an INJUNCTION to prevent any and all demolition; and to prevent a sale of the property without giving the City of Manor a Right of First Refusal to negotiate and purchase said property. If Manor City Council refuses to purchase the property; the decision to purchase shall be put to a vote of the citizens. Term shall be five years.

Community began fundraising for a center and library in 1910. Silas Parsons was the main donor. Parsons Street (once the "main" street) is named after him. The east-west streets are named after James Manor's friends and founders of the community. The north-south streets are named after Texas cities. This site was also home to Manor Fire Company No.1; the Freemasons Lodge, the Tuesday Book Club and the first Girls School. Kids rode their horses from miles away. At recess, they'd water the horses at the creek. The outhouse was a popular spot, especially in winter.

Copy from re:SearchTX

Wayne Schneider is Manor's pre-eminent historian. His website page www.manorstories.blogspot.com site is an amazing resource that needs to be empowered and brought into people's awareness. Plaintiff meets people almost every day that have lived in Manor from ten years to fifty years, including going to ManorISD yet they have NEVER heard of James B. Manor, the Founder of our Town. To the Plaintiff, that is another example of INCOMPETENCE on the part of the City and the School District. Mayor Harvey works for the school district and has been on the Council for over five years. Harvey is an "educator" getting paid by both entities yet James B Manor isn't even mentioned on City of Manor "Manor History" page.

Manor, Texas - Past and Present - Parts and Pieces : Parsons Lodge  (by Wayne Schneider)

Plaintiff is requesting an INJUNCTION to prevent any and all demolition of the building on the northeast portion of Parcel 236834 shown by TCAD to be owned by Travis County Trustee at 1648 Bayland St in Round Rock 78664. Property is protected as a Substandard Historic Building as noted in item XXIII above.

Plaintiff has an alternate use as a Community Recreation Center with pool, basketball courts and sports fields. This is a very economical solution for OLD MANOR, saving millions of dollars and increasing the useability by the neighborhood. It will also bring families with young people that want to live in

Copy from re:SearchTX

places that have things to do.

XXVIII. **CLAYTON VOCATIONAL INSTITUTE**. Plaintiff notes importance of the last remaining building of the historic "colored" school started by Joseph Elward Clayton. Its last building housed the volunteer Manor Library which has been closed and abandoned since the Covid pandemic. From discussions with Travis County Parks and Recreation; and the Library never reopening, Plaintiff asserts that Travis County feels it's not worth saving because to them, the repair costs don't justify it. County thinks the building is inefficient and may have mold or asbestos issues. Thus, it is in IMMINENT DANGER of destruction.

Plaintiff has asked to inspect this building. However, nobody from Azure Hobbs, the HHS site Manager; to Jeffrey Travillion, Travis County Commissioner from Plaintiff's District One for the last 8 years has been able to find a key. Commissioner, Travillion can't even get the kitchen unlocked for events at the Senior Center. That's how incompetent he is. He's the Chairman of CapMetro and he can't get the shuttles to run on the weekends either. He thinks people don't need groceries on the weekend? He can't get buses to run to Austin during the middle of the day either. Ten years ago, that was no problem. What has he done for Manor? Travis County treats Manor like second-class citizens.

As stated, Manor has a rich history with only a few remnants in the community remaining. The black community is interwoven in a rich tapestry; but we mustn't

Copy from re:SearchTX

cut out the richest threads. This was likely one the best "colored" school programs in Central Texas. At times there were dormitories and up to 300 students.

*"He taught school at Bastrop, TX from 1900 to 1903 and in 1903 he was appointed as principal of the Manor Colored School, also known as the Negro Graded School.*

*The school occupied one building in block 1 of the town of Manor. It was run as a traditional public school until 1911 when a tour of Texas by Booker T. Washington inspired Clayton to improve and expand the facility to include dormitories and additional classrooms. A two-story building was built and furnished on the school lot. Dedication ceremonies for the new school building were held on February 3, 1912. Another building was added where students were taught canning, sewing, millinery, agriculture and they received manual training. A cannery was started where students learned to preserve produce from their own farms.*

*In 1915 Principal Clayton urged the State to recognize the school, now having more than 300 students, as a State Industrial Institution. As a result, the school was renamed the Clayton Industrial High School."*

This parcel is now owned by Travis County and is next to the Ben E Fisher Park, managed by Travis County Parks and Recreation. Mr. Fisher is another local Manor hero that's been kept hidden; as is the namesake of this street, Carrie Manor. She was the first black city councilwoman, and the first black person buried at the

Copy from re:SearchTX

Manor Cemetery. That wasn't allowed until 2004. The Community Center building adjacent is managed by Travis County Health and Human Resources. The park is becoming a hub for trails to East Metro Park, Walter E. Long Park and in-process up to North West Metro Park.

Manor, Texas - Past and Present - Parts and Pieces : Joseph Clayton

Plaintiff is requesting an INJUNCTION to prevent any and all demolition of the building on the northeast portion of Parcel 236834 shown by TCAD to be owned by Travis County Trustee at 1648 Bayland St in Round Rock 78664. Property is protected as a Substandard Historic Building as noted in item XXIII above.

Plaintiff wants to turn it into a Museum and recreate the Science Lab, for instance. And, a Mini-Community Center with Manor Community Television archiving people's recollections of Manor History. And, reopen the Manor Library to show off its historic collection. Thus, Plaintiff has an alternate use for the building; or can find an alternative purchaser to rehabilitate and maintain this.

Plaintiff seeks to include the back yard to its south; and further, to prevent a sale of the property without giving the City of Manor a Right of First Refusal to negotiate and purchase a subdivided portion of this parcel. If Manor City Council refuses to purchase the property; the transaction shall be put to a vote of the citizens. Term shall be for five years.

Additional community activity at the park would help the overall park which

Copy from re:SearchTX

has had problems with vandalism. Restrooms are only open for "events" after repeated destruction. It's a nice pocket park or neighborhood Travis County park. Senior Center and Food Pantry are inside the HHS Manor Community Center. The trailhead for the new trail to Walter E Long Park is at Ben E Fisher Park.

XXIX. **MANOR CROSSING** – Plaza, Parkland and Chapter 380 adjustments. This Northwest corner of US Hwy 290 and Hwy 973 has three main problems:

1) There is no allowance for a Plaza which is required in our municipal codes for every commercial development over ten acres.

Per §14.02.065(b)(3)(E) Building Entrance Standards (iii) New or renovated commercial buildings shall have outdoor plazas, courtyards, or other pedestrian spaces at their main entrances.

(iii)(a) Minimum size of pedestrian space shall be one square foot of space per 100 square feet of building area.

(iv) All pedestrian spaces shall incorporate at least four of the following:

a. Decorative landscape planters or wing walls that incorporate landscape areas.

b. Pedestrian scale lighting, bollard or other accent lighting.

c. Special paving, such as colored/stained and sealed concrete, stamped concrete, brick or other unit paver.

d. Public art with a valuation of at least 0.05 percent ot the total construction cost.

Copy from re:SearchTX

e. Seating such as benches, tables with attached seats, or low seating walls.

f. Architectural water structures, features, or fountains.

These provisions seem pretty straightforward and well-intentioned by previous councils. Why is our Council too afraid to even ask for a Plaza? Either the City Councilmembers don't know what a Plaza, or they didn't know how to read our codes, or couldn't understand the Plaintiff's MANY emails about this subject that were written in plain English that a 6th Grader could understand. That is INCOMPETENCE.

Plaintiff also doesn't understand the rationale for allowing HEB to have no trees within 100' of the front of the building.

As of now, there is only one parcel remaining available which is Parcel #986087 of 20 acres owned by HEB 646 S Flores St, San Antonio 78204.

It appears it was previously owned by 13100 FM 973, INC., a Texas corporation Edward S. Butler, President and Spokesperson/agent Matt Harriss 10095 Hwy 290 Manor, Texas 78653.

Plaintiff has shared this requirement for a Plaza with Butler-Manor Developer's representative Matt Harriss; and I believe in-person at City Council meetings since this project's inception before council in 2022. Plaintiff has also reached out to HEB Board of Directors, and made Public Art suggestions.

Project appears also to have been owned by Butler Family Partnership, a Texas

Copy from re:SearchTX

limited partnership and may perhaps be owned now by BCP GP, LLC  General Partner, Edward S. Butler, Sole Member

Plaintiff shared with Butler-Manor Developer's representative Matt Harriss; and with HEB Board of Directors on numerous times and in-person at City Council meetings since this project's inception before council in 2022. Since City of Manor has provide $20 million in incentives, developers should spend perhaps 2% or $400,000 for a world class public plaza with statues, fountains, etc.

a) Plaintiff is requesting a 6-month Temporary Injunction to enjoin HEB to halt construction on 2 acres along Hwy 290, or nearby for the purpose of a dedicating land for a beautiful gateway Plaza. This Parcel is now the last suitable remaining Plaza location. This Temporary Injunction shall be extended for another 6-month period at the option of Plaintiff. Such extension shall not be unreasonably sought.

b) Plaintiff is requesting $200,000 from Manor-Crossing Developers, 13100 FM973 INC., or whatever entity is current signatory to the Chapter 380 Agreement with the City of Manor, to be used for the construction, amenities, public art and other additions to create a world-class Plaza at the location dedicated in Item a). The design must be approved by the Parks and Recreation Tribunal if enacted; or by Plaintiff.

2)  On 3/11/22 Butler-Manor requested a zoning change to allow multi-family development including publicly accessible open space, on Parcels 986084 and

Copy from re:SearchTX

986083 which withdrew 26.5 acres (27.93% of the total 95.16 acres) from the retail sales-tax generating rationale for the $20 million 20-year Chapter 380 Agreement.

On 3/13/24 Parcel 986086 18.1 acres (19% of the total) MC RETAIL (or perhaps Retail Connections) has had it's zoning changed to a Specific Use Permit for Medical Offices and thus also been withdrawn from the retail sales-tax rationale for the Chapter 380 infrastructure reimbursements.

The Chapter 380 Agreement was approved at June 15, 2022 meeting. Plaintiff attended that meeting and spoke out on several agenda items. Plaintiff contends that Developers have since removed 46.93% of the retail tax source, and thus the amount of incentive and time-span be reduced accordingly by $9,386,000 and the time-span reduced by 9.386 years.

Plaintiff requests that 13100 FM 973, INC. or whatever entity is the current signatory to said Chapter 380 Agreement be enjoined to amend and reduce the terms to incorporate the reduced sales tax generation. Both the total dollar amount; and the length of time need to be reduced.

3) The "Park at Manor Crossing" is 586 apartment units. These two parcels are now apparently owned by GenCap Partners. Ironically, it has no parkland and thus needs to pay in-lieu park fees of $700 per unit x 695 = $410,200 or provide 9.7 acres of parkland at one acre per 66 living units; or pay $50,000 per acre times 9.7 acres = $485,000. They have offered to do none of these things.

Copy from re:SearchTX

Open Space does not qualify as "parkland" (one word). A water retention pond required to offset and mitigate for water run-off also does not qualify as parkland. This was stated by the City Attorney, Paige Saenz and is well known to many staff and councilmembers, and Planning and Zoning Commissioners. Plaintiff is the person that brought these items to the city's and city attorney's attention and also explained the very important differences in their own codes between "Park Land" (two words) and "parkland (one word)."

Plaintiff requests an Injunction causing GenCap Partners, or whatever entity currently owns these two parcels to immediately pay the in-lieu park fees; or provide parkland per city codes. If the Parks and Recreation Tribunal is enacted as Item XXXIV, this entity would approve the owner's compliance plan. If not, Plaintiff assert that any remedies must be approved by Plaintiff. Per City Codes, Manor "reserves the right" to determine where the parkland will be placed.

(G) The fact that none of these provisions were noticed or any attempts made to rectify these transgressions even after Plaintiff explained them at Council and P&Z Commission meetings; and all this revenue was given away is a sign of City Council's INCOMPETENCE and need for removal.

Plaintiff suggests letting 2 acres of required parkland at the Park at Manor Crossing be "credited" for the 2 Plaza acres on Hwy 290 out of the Home Depot parcel; and the cost shared among all the tenants. An amazing Plaza would benefit their entire commercial endeavor, and Manor's self-image.

Copy from re:SearchTX

XXX. **MANOR COMMONS PLAZA**. As in the preceding item, every commercial development over ten acres is required to put in a plaza. This North East corner of Hwy 290 and Hwy 973 is Parcel 236854 of 19.869 acres owned by Timmermann Commercial Investments, and Greenview Development Greenbury LP, a Texas limited partnership ("Greenview"), Geraldine Timmermann, an individual residing in Texas ("Timmermann").

Plaintiff is requesting a 6-month Temporary Injunction to enjoin owners above to halt construction on 2 acres along Hwy 290 for the purpose of a dedicating this land for a beautiful gateway Plaza. This Temporary Injunction shall be extended for another 6-month period at the option of Plaintiff. Such extension shall not be unreasonably sought.

There is no allowance for a Plaza which is required in our municipal codes for commercial projects over 10 acres. In addition to the needs in Intem XXVIII;

Per § 14.02.065 – Office, Commercial, Institutional. (b)(3)(E)

(i) The site's buildings should be organized so that the layout encourages functional pedestrian spaces, plazas and amenities between and in front of the buildings.

(iii) Design pedestrian amenities that allow for use and enjoyment of outdoor areas as a development focal point or centralized amenity. These may include a mix of pedestrian-scaled lighting, tables, drinking fountains, benches, seating

Copy from re:SearchTX

walls, shade trees, raised landscape planters, berms, clock towers, water features, specimen trees, plants, information kiosks, botanical exhibits and art exhibits or features.

Per the Manor Commons Phase 3 Development Agreement with the City of Manor there is likewise no inclusion of land for, or budget to provide amenities for a public Plaza.

Further, this property is being given a Chapter 380 Grant of $9,000,000 for its infrastructure. Plaintiff is requesting 2% of the $9,000,000 "grant" or $180,000 be spent for a plaza that We the People can be proud of.

For the last five years, Barth Timmermann has been "the developer representative" on the Public Impact Fees Committee. It may be a Conflict of Interest especially considering that the City also just purchased two parcels from his company to be added to Timmermann Park. Other than himself, what other developers is he representing for the last five years?

XXXI. **MONARCH RANCH PARKLAND DEDICATION**.

Per a Travis tcad search, Rust Creek LLC is the owner of Parcel # 369358, and Monarch Ranch at Manor, LLC. Is the owner of Parcel 963247. D.R. Horton is a builder selling houses there.

Plaintiff requests an INJUNCTION to ENJOIN the Monarch Ranch Developers from building anything on 6.1 acres of flat, rectangular land fronting

Copy from re:SearchTX

lengthwise along Gregg Rd to be dedicated to the City of Manor as a public park.

Further, Developer will install at least the same initial presented items per §13 (f) in the Development Agreement with the City of Manor Agenda Item 9 on May 4, 2022, including a picnic pavilion, playgrounds, dog park, four picnic tables, and parking area with 20 parking spaces. A restroom will need to be installed to have similar quality to the one at the resident's Swimming Pool area.

This Developer has been refusing to pay the City of Manor's in-lieu Park Fees, or dedicate genuine Parkland for over two years now. Plaintiff video recorded, edited and published this youtube video of a City meeting on 12/17/2022 https://youtu.be/jacJEHfnL_4 Time: 3:10 "Robert Truthsayer Teaches Manor City Council – Lesson 2."

Instead of paying zero in fees or dedicated parkland, Developer should be paying City of Manor either $220,000 of in-lieu Park Fees; or dedicating 6.1 acres of Parkland (not "Park Land" - two words with a different meaning). "Parkland" is defined in City Codes § 14.02.032. Developer's own Exhibit D legend shows four color blocks for land uses. Their own map does not include any Parkland.

Further, the city "reserves the right" to choose the parkland instead of the in-lieu fees, and further the City Council can tell the Developer where they want the park.

This Developer worked with Scott Dunlop, Manor's Planning Services Director at the time to re-write Ordinance 714 (24-pages) which raised some fees but defined contiguous sidewalks as "parkland" and made other hard-to-spot subtle

Copy from re:SearchTX

changes. Their site plans once showed four picnic tables in 20-acres of what they claimed was parkland. I asked the City Council if they thought one picnic table per 5 acres was sufficient. Council and staff wouldn't or couldn't answer. That's incompetence. Taking $220,000 out of our park fund by claiming a "contiguous sidewalk-trail" and a water retention pond can be included as parkland is official misconduct. Plaintiff was successful in getting the City Attorney to admit that "Open Space does NOT count as parkland." Nor does a "required" water retention pond.

Not to be disparaging, but these Developers recently went before Planning & Zoning Commission and Council to inform them that their subdivision's 200+ single family homes would be about 18% (Plaintiff's estimate) smaller. It's a form of "shrinkflation." It's still a 3-bedroom house at a much lower market-price somehow. Plaintiff asserts this point because it may indicate a "softening" of the market which may influence other parties in this lawsuit to relocate their developments.

It's imperative that the City of Manor utilize this right to choose parkland over fees. The economics of land prices are now such that using the in-lieu fees to enable the city to purchase more city parkland are no longer viable. The builder-developers make millions of dollars more in profit by selling homes on that same potential "parkland." Note the spelling as the one-word "parkland" which refers to usable flat land that can be built with amenities like tennis courts, basketball,

Copy from re:SearchTX

pickleball, football field, etc. An 8' concrete sidewalk can be called a "trail" but it does not count as Parkland to offset fees.

City of Manor will be required to add $100,000 in amenities in conjunction with the Tribunal proposed in Item XXXVI. Plaintiff requests Ordinance 714 be suspending pending a review by the new council; else the to-be-dedicated Parkland be increased to the larger area required by said Ordinance.

XXXII. **SHADOWGLEN. TRAILS, PARKING AND PARKLAND**.

Owner: Meritage Homes of Texas LLC. Builder: KB Homes.

Plaintiff requests an INJUNCTION to HALT owner, or K.B.Homes from any further Phase Three building or development pending a new City Council or the impaneling of the proposed Parks Tribunal. Plaintiff requests the court to COMPEL the immediately construction of a second mile of trail in the City of Manor Woodlands Park; and commit to commence construction of a parking lot or two near the trail heads; and explain the company's lack of payments in land or fees required for the new sections and provide for the in-lieu fees or the preferred dedicated Parkland.

ShadowGlen is a planned community begun in 2003. They have been a big contributor of in-lieu Park fees. As part of the original agreements, part of the floodplain along the Gillelands Creek was granted to the City and became the

Copy from re:SearchTX

Woodlands Park. The initial agreements have evolved many times and with many builders and "Phases" but they were required to have built many miles of trails and accessible parking areas long before now. The trail designs have been planned for years. There are mountains of mulch already there on site.

The current owner of Parcels #815596 and 547346 Phase 3 Sections 3-8 is Meritage Homes of Texas LLC registered in Scottsdale, AZ. Per their plat map of 12-11-24 there are NO acres of parkland and no hundreds of thousands of dollars of in-lieu park fees mentioned in their filings or in their presentations to City Council and Planning & Zoning Commissioners that Plaintiff is aware of. Manor city Ordinance 714 which was approved by Council and P&Z Commission includes Exhibit B Section 48 (s) Park Land Dedication and Development Fee on 8-2-23 requires one of the following 3 payments:

a) 1 acre of PARKLAND for each 50 living units = 690 ÷ 50 = 13.8 acres; or

b) in-lieu Park Fees of $50,000 per acre times 13.8 acres = $690,000; or

c) 690 units times $700 per unit = $483,000 per (s)(1)(i) if site development permits were required.

ShadowGlen is not within the city limits of Manor and does not pay city property taxes; and can't vote in city elections. They are within the ETJ and are required to pay Park Fees. Within ShadowGlen's "secret park" is one-mile Nature Trail Loop which is at the end of Howdy Way. This is an excellent addition to the

Copy from re:SearchTX

community, however the City won't promote this as a "public park" nor will they admit there are no "parking issues" as falsely claimed in the approved Comprehensive Plan.

By Deed restrictions, ShadowGlen Homeowners must belong to the HOA whose members may not park on the street. Police Chief, Phipps told the Plaintiff many times that "those are public roads, anyone can park there wherever they want to." He won't put that in writing, and the council won't correct the Comprehensive Plan. That's more incompetence and misconduct. Travis County Sheriffs including Sally Hernandez, and the Travis County Commissioners have also refused to put this in writing. One has to wonder why this special treatment which is injurious to the people of Manor, the citizens of ShadowGlen, the Greater Manor citizenry, potential visitors and our nascent tourism industry.

Furthermore, the City wants to pretend to the Public that the only "allowed" parking is at the ShadowGlen Elementary School a full half-mile away from the entrance to the trail. This was/is an utterly ridiculous, shameful and deceptive hoax designed to keep people out of our city-owned park..

Further, Plaintiff reminds the parties that the city reserves the right to put the parks on the exterior frontage roads and not let them be hidden deep inside where they would become "private neighborhood" parks. Plaintiff is unaware of any intent by the owners to pay any of these requirements.

Despite Plaintiff pointing out these requirements for over two years, the City

Copy from re:SearchTX

Council and Staff have been negligent, incompetent and used official misconduct to deceive from the public these missing funds and the existence of this 200-acre "Woodlands Park" owned by City of Manor that's been willfully kept secret from the citizens for twenty years; and told nobody about the one mile Nature Trail Loop at the end of Howdy Way. City Council, Staff and the "Comprehensive Plan" calls this park "ShadowGlen Open Space," and publish that there are "parking issues." There aren't. That's harm. Official misconduct, willful lies and deception.

XXXIII. **DISMISS COMPREHENSIVE PLAN** and the "New Downtown Plan" which is based upon it. In addition to the inept approval and spending actions by City Council and Staff recounted in Item XVIII (d) above, the 605-page $318,000 Comprehensive Plan is being used to destroy the town based on the Consultant, Freese and Nichols' faulty assumptions and poor judgment compounded by the client, City of Manor's mis-direction. This is most visibly demonstrated in their "dashboards" rating system of "dots" from one-to-five purporting to justify Multi-Use and High Density as being what the local residents want or need. As regards Old Manor, the replacement of our quaint historic Main Street with 3-story boxes and office buildings is abhorrent and was kept hidden from the citizens. It was never voted on by the residents of Old Manor. In fact, it was kept hidden from us.

The new downtown Consultant, Catalyst Commercial went to the "Manorpalooza Event" to explain the Comprehensive Plan and Survey people for

Copy from re:SearchTX

his new downtown plan, but brought nothing to show. Nothing.

The fact that these Planners and Council still wants to call this a "downtown" is a complete misnomer that needs to be abandoned. It's an "historic Main Street." Consultant, Jason Claunch had none of the Comprehensive Plan illustrations of our supposed "downtown" looking like 40 office buildings 3 stories tall with rooftop parking. How would people know how to evaluate the Plan without seeing what it really was?

The people in Old Manor don't want big trucks driving through here tearing up the roads, polluting and being loud and obnoxious. But the Comprehensive Plan wants to call the tiny main roads a "commercial corridor." The city started a "Beautify Manor" committee 5+ years ago that's done nothing except pick up a few aluminum cans and pass out t-shirts.

Plaintiff has never met a citizen that ever heard of or has read the Comprehensive Plan. When Plaintiff pointed out the absurdity of a 605-page document at a City Council meeting once, the Mayor said he was expecting 200 pages; but did nothing to ask the consultants to submit a revised, more manageable document. As mentioned, the Mayor canceled the five town halls designed to explain the document's main components of roads, parks, infrastructure, water and wastewater. Why were those meetings canceled? The taxpayers paid for them. This Plan contains very few if any genuine, specific recommendations. This bogus plan delusionally states about the destruction of Old Manor that "this is where we need

Copy from re:SearchTX

to double down to create a sense of place." This is stupidity and incompetence. Old Manor already has a "sense of place." We already are "affordable housing."

In Attachment A – Planning Item 6 says plainly there will be five "community workshops" additional to the "snapshot" meeting that was done at Lagos Elementary School. Later at a council meeting, Plaintiff asked Chance Sparks, lead consultant why these other workshops had been canceled. His diplomatic answer was "at the request of the client." The Agreement was approved by the Council and by the Planning & Zoning Commission. What was the process used to cancel these important meetings? There was no refund given to the city. We paid for services that weren't delivered. This was OFFICIAL MISCONDUCT by whomever canceled these meetings. Another reason that Council should be removed.

Title 7. Subtitle A. Chapter 213. Municipal Comprehensive Plans §213.003 Adoption or Amendment for Comprehensive Plan. [requires] "(1) a hearing at which the public is given the opportunity to give testimony and present written evidence."

The City of Manor canceled those hearings/townhalls that were part of the conditions for the consultant, Freese and Nichols getting their final "draws" (after they gave back $135,000 of their initial lumpsum payment). That's Official Misconduct because City Council not only denied the citizens their right to know what's being planned and executed; Council then paid the consultants the money without requiring the service. That's fraud and mis-use of city funds.

Copy from re:SearchTX

Per § 213.005 Notation on Map of Comprehensive Plan. The statutes require this disclaimer. "A comprehensive plan shall not constitute zoning regulations or establish zoning district boundaries." Plaintiff has heard this Plan being used repeatedly to justify the destruction of Old Manor. When the Plan calls our tiny, crappy roads "urban streets," and then calls the Old Main Street a "commercial corridor;" that becomes "mixed-use" that becomes "high-density"... and historic Manor is gone.

The Plan calls a street without a sidewalk, "an opportunity for improved walkability." And, we learned there are traffic problems on 290 at 973. We lost two landmarks due to zoning changes based upon developers and city planners use of this cudgel. Comprehensive Plans are not allowed to be used in this manner.

Per §10.05 of the Home Rule City Charter – The Planning and Zoning Commission's duties are supposed to include "Monitor and oversee the effectiveness and status of the comprehensive plan and recommend annually to the council any changes in or amendments to the comprehensive plan as may be desired or required." Plaintiff asks "when will they start doing this?"

Prepare periodic evaluation and appraisal reports on the comprehensive plan, which shall be sent to the council at least once every five years after the adoption of the comprehensive plan, or element or portion thereof."

The P&Z Commission has done none of these things. They are also incapable of

Copy from re:SearchTX

even proof-reading the 605-page Comprehensive Plan, and have let obvious lies remain. They have been stunted into becoming the City's "committee" for several decades now. In our Manor Codes, our forbears created a powerful commission; but the majority of the members have never lived up to that potential, much to the detriment of our community. The "commission" has never made a budget recommendation, set their own Agenda, appointed their own Secretary or held a townhall meeting. They have been stunted purposely by city staff for decades.

Plaintiff's Master Parks Plan is a hundred times better because it is specific, simple and easy. It's an actual "action plan" for a city that honestly cares about providing activities for its citizens' quality of life. Despite claims that Council welcomes input, I've had NO response to my Plan. In five years, the Mayor has done nothing for the Parks. They are all empty lots (except for the Bocce Courts that former City Manager, Tom Bolt installed with Robert's encouragement and offer to start a League). Mayor and current City Council temporarily stunted that dream which punished and deprived entire community.

The Mayor, Council and City Manager punished the entire community by claiming the courts were a "Public Health and Safety Hazard" and taking out the World Class improvements. They left gaping holes in the side walls and never fixed the actual hazards which were the shoddily constructed gravel pathways around the courts that wash out every time it rains. Under the current council, which includes the two "Parks Committee" councilmembers - the condition of the

Copy from re:SearchTX

bocce courts is an epic monument to their total INCOMPETENCE and disregard for our kids and seniors especially. More reasons that the City Council needs to be REMOVED.

XXXIV. **PARKS AND RECREATION TRIBUNAL**. Parks Allocation Fund.

Parks add value to a community in economic, health and spiritual ways. When a city has ample land and many acres of dedicated but empty-as-a-bone parks; along with almost unlimited funds lying fallow in the bank ~ the citizen's need help from the court. Mayor Harvey has been on the council or Mayor for FIVE years. In addition to his full-time job at ManorISD, he's been getting paid "up to" $3,500 per month as Mayor for almost two years. Mayor Harvey read a Proclamation about Parks and Recreation Month, and then Robert got up to speak during his public comments, and brought the room back to "objective reality" by pointing out their ridiculous hypocriscy. We don't even have a Parks and Recreation Department!

https://youtu.be/lN3b_MeVtvE Time: 13:11 "Manor Parks and Wreck Proclamation"

But, the charade continues as Manor's been signing Proclamations about it for Harvey's five years with no improvements in any parks. Therefore, Plaintiff requests the City of Manor Council, Staff and Planning and Zoning Commission be REMOVED from any and all responsibility of adding amenities and public art at the following parks for a period of 18 months, with a 6-month extension at

Copy from re:SearchTX

Plaintiff's option. Further, those parties shall have no responsibility or control over any finances which the Court may assign to be managed by said Tribunal.

Project will lauch based upon Plaintiff's Master Parks Plan www.bit.ly/ManorParks to be introduced at a series of townhalls built around genuinely wanting input; and delivering results. We should be adding an amenity every two weeks; and big ones every 6 months – not 60 years, if ever.

Note that the City has authorized $166.8 million dollars in Bonds which includes money to be used for parks and community pools. Our city codes already have protections and purpose to provide for our History and Old Manor neighborhood and its residents especially.

Plaintiff's Goal is 6 amenities, one mural and one piece of Public Art in each of the following areas:

1. Art Park

2. Bell Farms Parks

3. Carriage Hills Park

4. Jennie Lane Park

5. Woodlands Park

6. Timmermann Park

7. McVey Park (to be established west of the Cemeteries)

8. James B Manor Homestead Park

Copy from re:SearchTX

While Plaintiff's philosophy is lots of small items filling the parks first, we need to budget for getting these larger projects done which are bigger expense items. Plaintiff asserts that this Tribunal will get done in 2 years that which would otherwise take current Council and Staff at least twenty years, if at all. The Tribunal shall be made up of five citizens including two with parks experience from nearby cities acting in a more advisory capacity; the Plaintiff, and two other Plaintiff recommendations approved by the Court. Members will get a reasonable stipend/compensation based upon the time to be determined.

1. Purchase Parsons School from ManorISD for Community Center and Pool

2. Railroad Pavilion Stage and Tubman Mural at Art Park - $400,000

3. Timmermann Pickleball, Soccer, Pool, Clubhouse, mini-golf and gazebo stage

4. Paint east side of Water Tower with James B and Manor History - $70,000

5. Basketball courts

6. NW Corner 290/973 Plaza Art - $100,000 from city addtl to developer's portion

7. NE Corner 290/973 Plaza Art - $100,000 from city addtl to developer's portion

8. Monarch Ranch Park - $200,000 from city addtl to their 6.1 parkland acres

9. Park At Manor Crossing - $100,000 from city from owed in-lieu fee of $410,200

10. Purchase and Renovate Clayton Vocational Institute (Manor Library building)

Plaintiff asks that City of Manor be ENJOINED to provide $18,000,000 to be

Copy from re:SearchTX

drawn from a combination of existing Manor Funds including from the

Development Funds which has $15 million; the Unrestricted Funds with $41.5

million; or an appropriate amount from the $166.8 Million approved and/or already

authorized for the same or comparable purposes. Manor Finance Director shall

determine the mix of financial sources as and when funds are required and

requested by this Tribunal; and assist with accounting and disbursements.

XXXV. **AUSTIN BOCCE LEAGUE BREACH OF CONTRACT** by City of

Manor. Plaintiff is the founder and sole Director of the Austin Bocce League. After

successfully starting two bocce leagues in California, Robert was confident that the

four courts he had encouraged former City Manager, Tom Bolt to install would be

something wonderful for Manor, a city with nothing to do in any of its parks.

For the League to install unique two-game scoreboards, ball holders, and

world's first ever up-lifting™ wheelchair access doors and first-ever movable back

walls; and install them for free; the City required a Licensing Agreement and

$600,000 of insurance. Scott Dunlop prepared and signed the document which is

registered at Travis County Courthouse.

Page 209 of the Comprehensive Plan DestinationManorCompPlan-FINAL.pdf

shows two beautiful bocce courts with the Scoreboards, Movable Back Walls,

Court markers and Ballholders donated and installed for free in conjunction with

said Licensing Agreement implying that the City would show even the lowest

Copy from re:SearchTX

standards of municipal support. Instead, the Mayor and Mayor Pro Tem decided on an "action plan" to destroy the Courts by having the City Manager declare that those improvements were a "Public Health and Safety Hazard." This is a frivolous and false claim that was OFFICIAL MISCONDUCT, collusion and conspiracy.

When I told the Travis County Commissioners that Manor had a Public Health and Safety Hazard in a public park, astonishingly they did absolutely nothing about it. Doesn't that prove there was no such hazard whatsoever? Or, does their pretense of ignorance coverup something more nefarious? When I spoke at a livestream County Commissioners meeting about it, Commissioner Travillion called the Plaintiff "an idiot" and laughed at the international sport of bocce. He laughed at Plaintiff referring to himself as the "Honorary Mayor of Old Manor." Travillion hides from Battaile at live-streamed Commissioners Court meetings and waits until Plaintiff is finished with his public comments before taking his seat at the dais.

During a livestream call, Plaintiff said about his Precinct Commissioner, "Travillion hasn't done a damn thing for Manor in 8 years!" Judge Brown admonished the Plaintiff, threatening him with expulsion from the video streamed meeting for using profanity; and quickly called Travillion a "great commissioner" and said "he was sorry that he [Travillion] had to hear that." Apparently, the word "damn" is not allowed in Texas anymore. But, he wasn't sorry for me for getting called an idiot by my County Commissioner representative? Through repeated emails to try to get something done, I discovered that the Commissioners aren't

Copy from re:SearchTX

required to answer anyone's emails, ever. Judge Brown, Chair once proudly told me "I never read my emails." I've never seen them start a meeting on time yet. I'd go down in person but Travillion can't get the CapMetro buses to take me home until 6 at night. This is progress?

Briefly, Travis County offered to put bocce courts in at Ben E Fisher Park. While I appreciated the offer, I felt it was quite unnecessary since we already had very nice courts already paid for. After Plaintiff pointed out the disparity between the concrete ramp to the restroom and the horrible gravel paths beside the bocce courts (that washed out after every strong rain), the City did an okay fix and then locked us out for nine months. At first the barricade only included the courts and left the washouts untouched.

This lockout impacted Special Olympics Bocce Players from the Down Home Ranch in Elgin, and Special Ed kids from Manor. At one council meeting, their teacher asked the Mayor when the courts would be reopened. He answered, that "someone complained about safety issues, and now we have to wait until the Comprehensive Plan is finished." This demonstrated the INCOMPETENCE of the Mayor. Why would the zoning of a parcel five miles away have anything to do with this bocce court in a city park? And, these kids have Downs Syndrome. Like most Manor residents, they don't know or care about the difference between SF-1 and SF-2. They just want to roll little balls in the sunshine with their friends. Is that asking too much from leaders that say they "love our children?"

Copy from re:SearchTX

Plaintiff was expecting some "regional leadership" to add picnic tables, benches, landscaping, shade, access to water for grooming the courts, signage, help with rental fees to make league play affordable, co-sponsorship of events. The league the Plaintiff started in 2009 in Santa Rosa, CA had 150 players in year one, and 250 in year two. Now, there are over 650 players.

The City Council and City Manager have willfully harmed the community. The group of seniors and others, were forced to play on the grass or on the sloped gravel by the canopy. There was absolutely no reason to keep people from playing on those bocce courts. That was official misconduct.

Willful misconduct has been defined to include "deliberate mismanagement committed without regard for the consequences," which does not require a showing of purposeful intent to harm. Plaintiff asserts these players, some of whom are seniors and some of whom are disabled were degraded and insulted by being locked out for no good reason except that they were friends of the Plaintiff and were also trying to establish the sport of bocce in our community. As seniors, perhaps those damages should be $1,000 per incident to each player for every time we were locked out, and were there ready to play.

The damages to the Austin Bocce League are also significant. This effort was undertaken to establish Bocce in Central Texas. These courts WERE the best in Texas and most innovative IN THE WORLD. Plaintiff's bocce efforts were planned to be a showcase for the sport and a jewel in Manor's crown. It WAS (and is) the

Copy from re:SearchTX

ONLY activity on city property. Not to mention that it provides healthy, outdoor exercise and community interaction for positive benefit. Bocce in Manor should be enjoying two or three leagues (eg. Spring, Fall, Seniors) per year, plus several tournaments and charity fundraisers generating tens of thousand of dollar for local non-profit organizations.

The Manor Chapter of the Austin Bocce League started out great. We should be having 200 players by now using four courts playing three or four nights a week under the lights with shared food and drinks on ample picnic tables and benches with nights and wkend mornings with 20-30 people at a time.

Plaintiff successfully got the sport of Bocce listed in the Travis County Parks and Recreation Department's "10-Year Long Range Plan Survey" On a few different questions, bocce garned 10-12% support. In Travis County, that translates to a hundred thousand people that are interested in putting bocce courts in Austin. Instead of the Austin Bocce League bringing the joy of bocce, friendly competition, community building and social networking to this huge audience... Plaintiff has spent the last two years trying to work with an intractable, mean-spirited group of people that are punishing his friends and neighbors by their sheer, unrelenting incompetence. Plaintiff is referring to the City Council and a few department headed staff members.

Copy from re:SearchTX

In the City of Manor Licensing Agreement, Per § 11.01 "Although drawn by the City, this Agreement shall, in the event of any dispute over its intent, meaning, or application, be interpreted fairly and reasonably, and neither more strongly for or against either party." The City does not get to bully and harm the Plaintiff and the Austin Bocce League in District Court like they did and are still doing at Timmermann Park.

City is too cheap to even buy a display case to mount on the nearby $100,000 restroom, where they could post the Rules, for instance. The City won't tell anyone that our citizens could go check out balls to borrow and play with from Grazie Pizzeria. This is more incompetence and hate.

Per § 5.01 Austin Bocce League was required to have insurance even while we were locked out of the courts, at a cost of approximately $300 per year.

Per § 9.02(c) this Agreement is revocable by the city if there's a "danger to the public which the city deems not remediable by alteration or maintenance of such improvements." There has never been an explanation given of the "Public Health and Safety Hazards" that were causing any problems. Any supposed safety hazards could easily have been remedied. The Fire Dept never declared any hazards. The City Manager doesn't have the authority to "declare" a Public Health and Safety Hazard. That was abuse of power.

Per § VI. Indemnification. The city is not indemnified if there are negligent or willful acts or omissions. The City was willfully causing harm to players, and

Copy from re:SearchTX

creating hazards that didn't exist.

The Bocce League did our part. The City never even leveled the ground around the courts. No benches ever. Special Ed kids were sitting on the ground. This despite having hundreds of thousands of Parks Fund dollars sitting dormant in the bank for years and years.

Plaintiff donated a 14' live oak tree to be planted at the Bocce Courts. City couldn't even water it. Players were bringing water to it for two summers. Then the city moved the barricade out farther, thus killing the tree. We were to receive a plaque and the City attributed the tree to the Austin Bocce League instead of the donor, Robert Battaile. The City was too callous to even respond to my email about their normal INCOMPETENCE, lack of apology and arrogant dismissal. This time from Roads/Park Supervisor, Lance Zeplin who is the nephew of his prior supervisor, Public Works Dir. Mike Tuley.)

When asked about the lack of tables, benches and ripping out our improvements, scoreboards, etc. Lance said "his hands were tied."

Per § 7.04 Default. Licensee shall have thirty (30) days from the receipt of such notice to remedy the failure complained of. Austin Bocce League was never given any such notice. City acted in bad faith and didn't do a single thing to promote this sport to the city at large, or to educate anyone about the sport. City Council and Staff nearly destroyed the only activity that the city has ever had.

Copy from re:SearchTX

Plaintiff asks that the court use its equity powers and requests an INJUNCTION to compel the City of Manor to provide funds of $120,000 to offset three years of damage to the Austin Bocce League, Plaintiff, Calexas Inc, Manor Bocce players and the greater Manor community.

Funds will provide the following: 2 new courts to the east of the existing courts; 6 solar lights; Shade structure on west; landscaping and leveling southern end; 8 picnic tables, 12 benches, display case, new scoreboards, back walls, ball holders, court markers and railing.

League will have no park rental fees for 5 years, to include three 10-week seasons and up to 8 one or two-day tournaments at no charge. City will take out 1/8-th page ads in the Manor Journal for each of these events, along with city social media posting and other promotion about the courts, the park and the Rules of the Game. Why isn't there a display case with standings and rules attached to the restroom wall? Austin Bocce League provides a set of booce balls that can be checked-out at Grazie Pizzeria. Why isn't that mentioned in signage?

Timmermann Park isn't even on the website as a featured park.

This amount includes $10,000 in damages to the bocce players during the 9-month lockout. That's willful harm on Tuesdays and Saturday mornings x 36 weeks to 8-20 people including Seniors and Special Olympics players.  After nearly destroying the courts; they removed the barricades, but did nothing to fix the washed out gravel paths that were the big bad "public health and safety hazard."

Copy from re:SearchTX

The courts are still unfinished with gaping holes in the side walls.

Per §102.000 Rights of the Elderly.

"(a) an elderly individual has the right to be free of interference, coercion, discrimination and reprisal in exercising these civil rights." Plaintiff will administer this money, or as otherwise directed.

Austin Bocce League will receive damages of $20,000

Plaintiff will receive damages of $15,000. Calexas Inc. shall receive damages of $5,000. Calexas purchased software and a computer router, and used its proprietary inventions and purchased all the materials. A huge amount of staff time for design, plus hands-on craftsmanship went into making of these world class improvements.

Undistributed monies, if any will be spent on other amenities within Timmermann Park at the Plaintiff's option.

Absent the enactment of the Parks and Recreation Tribunal, Plaintiff shall administer these funds as Project Manager of the Tom Bolt Bocce Center, to be named after the City Manager who bravely purposed available city funds to add a beneficial amenity to a Manor park. Mr. Bolt realized the unequaled community-building power of a sport he played. Tom had his own set of bocce balls. He was very active in the city. Despite the current city's fierce and sustained efforts to ruin the Bocce Courts and marginalize the founder and players, these bocce courts have changed the trajectory of our town in a dramatic, positive, and upward manner. as attested to by this cause.

Copy from re:SearchTX

Back in 2021, the Manor City Council had also been given the Austin Bocce League's "Bocce Futures" presentation prepared for Austin Parks and Recreation, PARD Board and Austin City Council. Www.bit.ly/boccefutures  This booklet shows the huge power of the sport for social networking, friendly competition, women's empowerment and charity fundraising. The Manor City Council never read it, or even responded, except to deny the League its request for a fee waiver. In two previous cities that Plaintiff started bocce leagues, there were NO initial fees. Santa Rosa and Middletown cities wanted to encourage recreational activities. Manor only talks about it. The City has deprived its citizens for several decades. This inability to understand the potential transformative change being offered for free to the city by a group of proactive citizens is another example of Manor City Council incompetence and the need for their removal.

XXXVI. **MODERN ERA REPARATIONS FOR OLD MANOR**. Plaintiff asserts that Manor has been neglected and under-served for many generations. However, it's only in recent times that the city has experienced a "gold rush" of development pressures and revenues due to its proximity to Austin. This municipal neglect (including by Travis County) has become even more pronounced in recent years and now, the neighborhood is literally being destroyed by our own City Council and Staff.

Basically, Old Manor has been paying property taxes and receiving no benefit

Copy from re:SearchTX

as the money "for growth" was spent north of Hwy 290 on other people's infrastructure with roads, and sewer pipes and good drainage while the original city got a little strip of hot tar for the cracks in the roads. And no sidewalks. City of Manor, in its zeal to help a handful of landowner/developers was spending all its revenues on people many miles away that won't live here for ten or twenty years, while Old Manor residents were ignored and "denied services."

Even NOW ~ the "Main Street" is horrible with no curbs, sidewalks, or lighting, but does have potholes and washed out muddy sunken gutters... and that's AFTER it was just fixed. It took 6 months for the city to get the owner of the Manor Grocery to fix the busted out window there. One of our outdoors persons stepped up with a makeshift fix that was a complete eye-sore, but city didn't care. It took about 6 months for the Plaintiff's Code Violation Reports and half-a-dozen emails to get that fixed. Manor staff, City Manager and Council were TOO INCOMPETENT to even fix one broken window on Main St.

Old Manor was established in our codes in 2017 as an Historic District and by Ordinance No. 480 signed on Aug 23rd, 2017 by Mayor, Rita Jonse.

Code §14.02.031 The historic district for the City of Manor is defined as all properties within the boundaries of Old Manor, more approximately described as: Beginning at Highway 290 at Gilleland Creek east along Highway 290 to Wilbarger Creek then south along Wilbarger Creek to Old Highway 20 (Loop 212)

Copy from re:SearchTX

then south to the intersection of the City of Manor boundary then south to the

boundaries of Hamilton Point Subdivision (excluding Hamilton Point Subdivision)

west then south to Blake Manor Road then Brenham Street to Bastrop Street then

north to the Cap Metro Rail Line then west to Gilleland Creek and then north along

Gilleland Creek to Highway 290. The Historic District for the City of Manor was

established by Ordinance No. 185-Q on September 20, 2017.

Per Tex. Loc. Gov. Code Chapter 284 §2. Definitions.

(5) "Design district" means an area that is zoned, or otherwise designated by

municipal code, and for which the city maintains and enforces unique design and

aesthetic standards on a uniform and nondiscriminatory basis.

(6) "Historic district" means an area that is zoned or otherwise designated as a

historic district under municipal, state, or federal law.

In Section 14. Zoning Ordinances. 14.01.003 General Purpose and Intent.

Purposes.

(2) Conserve existing and future neighborhoods;

(5) Protect and preserve places and areas of historical and cultural importance

and significance to the community;

(6) Prevent the overcrowding of land and avoid undue concentration of

population or land uses, thereby encouraging high quality development and

Copy from re:SearchTX

innovative design;

(7) Lessen congestion in the streets and provide convenient, safe and efficient circulation of vehicular and pedestrian traffic;

(12) Provide the context for the appropriate reconciliation of any differences of interest among property owners, developers, neighborhoods and the city.

In the Municipal Codes 14.01.008 definitions: Historic district means an area, urban or rural, defined or designated as an historic district by city council, state, or federal authority and which may contain within definable geographic boundaries one or more buildings, objects, sites or structures designated as exceptional or significant historic landmarks or clusters, as defined herein, including their accessory buildings, fences and other appurtenances, and natural resources having historical, architectural, archaeological, and cultural significance, and which may have within its boundaries other buildings, objects, sites, or structures, that, while not of such historical, architectural, archaeological or cultural significance as to be designated landmarks, nevertheless contribute to the overall visual setting of or characteristics of the landmark or landmarks located within the district.

Plaintiff asserts that the City Council and Staff has made a complete and utter mockery of their civic responsibility in its refusal to implement even the most basic of the intents and purposes in the Codes.

Copy from re:SearchTX

There is also a "Manor residential revitalization area (MRRA) is a voluntary program that provides a residential property owner with a financial incentive for new development that meets the guidelines outlined in this document."

I asked about this "permit fees discount" at a Council meeting and Planning Services Director, Scott Dunlop said "noone's using that anyway." How would a citizen become aware that they could get a discount on building permits because they lived in an historic district? They couldn't ever know because THE CITY won't tell anybody about the program. That is both INCOMPETENCE and OFFICIAL MISCONDUCT to knowingly withhold benefits due to the citizens.

The MRRA (Manor Residential Revitalization Area) is defined as all residentially zoned properties within the boundaries of Old Manor [repeated as above].

Thus, it is a relatively small area and relatively easy to locate the harmed parties. The Tribunal should limit the administrative fees to 10% or less of the disbursed monies.

Plaintiff reminds the court that there was and is next-to-nothing in the parks for adults or kids or seniors. So, the lower quality of life caused irreparable harm for those who lived here. . No history was being taught to generate pride. A child born in 2004 could go off to College without ever having had anything to in any city

Copy from re:SearchTX

parks. Plaintiff's favorite saying, "Children are not waiting to grow up. Seniors are not waiting to die." The residents and their families were harmed.

The poor roads, bad drainage, no lights and no sidewalks that kept property values down represent a "denial of service" which punished the owners whose taxes increased and were spent elsewhere. Old Manor is now being assessed a $6.00 per month Storm Water Runoff Fee despite the fact that there's been no "new concrete" in Old Manor for well over twenty-plus years. The new developers and their subdivisions and shopping centers that cause the new runoff should be paying this. Not Old Manor.

Plaintiff requests an INJUNCTION to compel the creation of an Old Manor Reparations Tribunal. Plaintiff will initially search to nominate one member or previous member of the Manor Board of Adjustment, one member or previous member of the Charter Review Commission; Plaintiff; and two others approved by Plaintiff and Court. Plaintiff's approval shall not unreasonably be withheld.

This Tribunal shall administer a newly created **Reparations Allocation Fund** of $10,000,000 funded by the City of Manor for the purpose of compensation for damages to the people and property owners of Old Manor. or other similar mechanism to remedy the two decades of harm from 2004-2024, during which city revenues began to significantly increase. City of Manor now has $105 million in the bank. $41,567,289 of that is Unrestricted Cash. Old Manor is receiving no benefit of this largess. For this period, Plaintiff requests pro-rated annual damages

Copy from re:SearchTX

be paid as follows:   (minimum of 3 years in any one category to qualify)

Every Owner of a residential lot gets $250 per yr during the 20 years

Every Homeowner Resident gets additional $400 per year

Every Renter unit resident(s) in Old Manor get $200 per year

   [Note: A Homeowner Resident also is the Owner of the resident's lot and thus would receive $400 + $250 = $650 per year. Maximum is one Homeowner Resident and one Renter(s) per address.]

   Based upon an estimated 800 lots in Old Manor during 2004 – 2024, for illustration purposes:

100% of the Property owners 800 x $250 x 20 years =                    $ 4,000,000

10% (80) vacant = 80 lots x $250/yr x 20 yrs =   $800,000 (included above)        -

30% Owner occ for 20 years = add 240 owner-occ x $400x20 years =   $1,920,000

30% to the renters during the 20 years = 240 lots x $200 x 20 years =      2,400,000

15% to renters for ten + owners for ten =120 x ((200x10yrs) + (400x10))   720,000

15% = 10-yr vacant – 5 yr rental – 5 yr owner-resident = 120 (600 x 5)     360,000

   TOTAL estimate                                                  $ 9,400,000

   Additionally, Old Manor shall be assessed no Storm Water Fees ($6.00 per month) for 8 years.

Copy from re:SearchTX

Homeowner gets additional payment of up to $300 if equals less than 40% of monies spent on exterior improvements mainly visible from the road.

Of the total annual monies spent by the City of Manor on Roads, Water and Wastewater including related Capital Improvements, City of Manor shall be ENJOINED to spend 8% (eight percent) including staff resources in Old Manor in each of the next 8 years. Tribunal Members will get a reasonable stipend/compensation to be determined based upon the time required.

XXXVII. **DAMAGES FOR BOBBY REESE**. Per Item 1, Bobby Reese is an aggrieved party as alleged in all of the Election-related Items which involve jointly and severally, the State of Texas, Travis County and the City of Manor. Mr. Reese is a United States citizen and 22-yr Army veteran who was standing up to do a noble act of citizenry – run for Manor City Council Place 3.

The Election Coercion crime done by two City of Manor workers directly affected Mr. Reese by keeping him off the ballot for a position that paid up to $2,500 per month for a 4-year term. He is also due unspecified noneconomic damages from the above three governmental entities.

Per Title 2. Trial, Judgment and Appeal, Chapter 41 Damages § 41.001 Definitions

(12) "Noneconomic damages" means damages awarded for the purpose of compensating a claimant for ... mental or emotional pain or anguish, loss of

Copy from re:SearchTX

companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages.

Thus, as the victim of a crime witnessed by Plaintiff, Robert Battaile requests unspecified damages be awarded to Bobby Reese. Plaintiff asserts there is no reason to subject innocent parties to a separate lawsuit, and no reason for extra expense to the court when the issues to be resolved are present herein.

XXXVIII. **EXONERATION AND DAMAGES**. Robert Battaile, Plaintiff also requests to be awarded unspecified personal damages received over years of disenfranchisement, personal harassment and retaliation including getting needlessly handcuffed instead of being given a verbal warning, not even a citation should have been given to the Plaintiff on August 19 (which was the last day to get Bobby Reese onto the ballot); and falsely getting thrown in jail for sending email newsletters that were clearly written about a "matter of public concern", and thus they did not constitute the crime of harassment.

The occasionally embarrassing emails sent over the past two years only became "harassment" when the subject matter was alleged election coercion crimes of Moore and Almaraz witnessed by Plaintiff.

Per Chapter 39 of the Penal Code, §39.03 OFFICIAL OPPRESSION. (a) A public servant acting under color of his officer or employment commits an offense

Copy from re:SearchTX

if he:

(1) intentionally subjects another to mistreatment, or to arrest, detention,... dispossession... that he knows is unlawful;

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing this conduct is unlawful.

Per §36.06 OBSTRUCTION OR RETALIATION (a)  A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service or status of another as a:

(A) public servant, witness, prospective witness, or informant, or

(B) person who has reported or who the actor knows intends to report the occurrence of a crime.

Further, Plaintiff requests this City of Manor Disorderly Conduct charge Docket #24002961; and the two Travis County charges of Harassment C-1-CR-24-501881 and C-1-CR-24-501880 be dismissed and purged along with any and all bail conditions. For all practical purposes, Battaile who was also a candidate for Mayor, has been and still is effectively under house arrest. The City gave a select amount of video footage to FOX NEWS. That was also a gift to the current Mayor in his re-election campaign; and to the City staffers in order to save their jobs. Part of the Plaintiff's Mayoral Platform was firing several department heads including the City Manager and Police Chief. The Run-off Election was purposefully barely

Copy from re:SearchTX

publicized and mostly went unnoticed with a paltry 4.7% voter turnout.

City of Manor spent $12,500 on a terrible and worthless "parks plan" after wasting most of the $318,000 on a destructive monstrosity called the "Comprehensive Plan." The Master Parks Plan that Plaintiff did for free is easily worth. Plaintiff will be highly gratified if his efforts for preservation and empowerment are successful for the benefit of ourselves and our progeny. Plaintiff often says, "Our children are not waiting to grow up. Our seniors are not waiting to die." We the People need to spend our monies on ourselves first for a change.

City Manager, Moore showed blatant evidence of discrimination and prejudice against Plaintiff when he said to several Police Officers and officer workers that Robert "had wanted to say the [n-word] to him for two years." That is a ludicrous statement that demonstrates Mr. Moore's bias and prejudicial attitude.

When the City Manager and City Secretary accused Plaintiff of "Disorderly Conduct," Plaintiff was handcuffed, stuffed in a squad car and told he was going downtown Austin to be booked. These city staffers' disorderly conduct was plainly visible on the city hall lobby footage, and in the screenshots from that footage which were emailed to nearly everyone on the Police force, and every city employee in town several times. But much to the contrary, when Plaintiff accuses

Copy from re:SearchTX

the City Manager and City Secretary of "Disorderly Conduct" and files a Police Report, his accusations are ignored and disappear before they can even be assigned a number. That's unequal treatment which is illegal under the constitution of the U.S. And in violation of the Police Officers' oaths and  Police Association ethics.

Apparently, the city has somehow "not retained" some of the lobby security cam footage despite months of Freedom of Information Act requests. Plaintiff is awaiting footage that he paid to get from copies of.

The moment Bobby Reese and I finished our "inactive-before-it-was-written" Police Report about the Election Coercion crimes by Moore and Almaraz, Plaintiff was put in handcuffs and incarcerated for four days. The Harassment charges are for sending the City Manager and City Secretary emails they deemed "harassing." I sent the same emails to the other 300+ recipients on my "email Newsletter" circulation. It's against the law to lie to a Police Officer. Moore and Almaraz did that. Those charges are bogus for many reasons, but two of the most obvious are:

a) Per Texas Penal Code – PENAL § 4.07 "Harassment. (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: ...(8) publishes on an Internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern; "

Copy from re:SearchTX

Plaintiff's emails were clearly about "matters of public concern" including Election Coercion, Desecration of Cemeteries, Misuse of City Funds, Stolen in-lieu Park Fees, etc. Officer Jordan told the Judge in the arresting documents that "Almaraz felt the emails were in retaliation for her actions within her official capacity." Correct. The emails were to inform others about "actions within her official capacity." That's not "retaliation."

b) Along with sending about 250 email newsletters once or twice a week, I've been sending the city manager and city secretary the same targeted emails about city issues for two plus years. As a Political Cartoonist, sometimes my emails or photoshopped images are "embarrassing." My emails only became "harassing" as Officer Jordan told the Judge "These emails have been sent to ...news stations, State Senators, County Commissioners, County Judges, city employees, the Secretary of State, and what was described as 300 anonymous supporters of Battaile in his email."

When the Manor Police refused to do anything about the alleged Election Coercion, Plaintiff systemically broadened his outreach up the ladder of supposed "authorities" tasked with protecting our election ethics, civil rights and fairness to individuals and communities. After reaching the top of the State Capitol and receiving sustained empty silence, Plaintiff has taken this cause to District Court.

Note that by Plaintiff including the specific group's individual email names

Copy from re:SearchTX

visibly in the "cc:" column; either or both of City Manager and City Secretary could have hit "reply to all" and said their piece to dispute any claims they told the Police "were false" ( i.e. the election coercion). They never did that, that Plaintiff is aware of.

c) The arresting document shown to the Judge said "Almaraz said she now has fear while being at work because she has to pass by Battaile's home on the way to and from work." This is a complete deceptive and inflammatory falsehood that Almaraz stated and Officer Jordan repeated. There's a dozen or more other ways for her to get to City Hall, which is on the North-South "main street" of Lexington a half-mile away from Plaintiff's home in a residential neighborhood with lots of cross-streets in both directions. I would hope the Police Officer was aware of that.

The fact that on Aug 19, 2024 she came out from behind a glass wall to confront Plaintiff yelling at him and calling him a "racist" as he was trying to leave peacefully, demonstrates she's not afraid of Mr. Battaile. Plaintiff has been coming to city meetings and communicating with her in a friendly way for four plus years.

d) Without any genuine investigation of any facts, or witnesses ~ Officer Jordan includes these words:

"the emails make false accusatory statements of election fraud, lying to eligible candidates..." Those words acknowledge that Moore knew that Bobby Reese was

Copy from re:SearchTX

an eligible candidate; yet they prevented him from being on the ballot. Further, my statements weren't "false." How would the Officer know?

This Trial will determine whether on not Plaintiff's claims were/are false.

Officer Roberts included the "expletives" in his "Harassment Charges" which were for sending emails. That "expletive charge" is unrelated and is also a City of Manor "Disorderly Conduct" charge. Those inflammatory words had no business being in that Harassment charge or told to the Judge. Plaintiff is being charged twice for the same "expletives" which he feels were not used in a disparaging racial manner at all; and were amply warranted based on the crimes of election fraud that he had just witnessed. Plaintiff's words were "not that big a deal," and widely used in more playful, friendly and reprimanding ways than the City Manager wants to admit. City Manager created the brouhaha purposely and inflamed a non-situation by sending the video to Fox News, setting up and giving the interview which is also full of his misstatements and strange conclusions.

In his own words on the Police Body Cam; City Manager says about Plaintiff that "He's been waiting two years to say that to me in person." That statement has no basis and is completely ludicrous.

https://youtu.be/1tYU6IVVV8k Time: 1:38 "Moore Lies on Police Body Cam."

Plaintiff wanted to speak in Spanish at a council meeting about including the Agendas in Spanish; and requested a Translator per City Codes, that it to be

Copy from re:SearchTX

provided with ten days advance notice. That was refused. When Plaintiff spoke in Spanish at that council meeting about black, brown and white people ~ Moore claimed in a Fox News interview that Battaile was doing it all in order to call him a "negro." (The Spanish word for black.) This is inherent bias on his part, which may have contributing to his over-reactions when Moore's crimes were exposed in person to his face by the Plaintiff whistle blower.

Actually, it's the City that's been trying to disenfranchise and shut the Plaintiff up for four years now. Plaintiff spoke out about "reverse discrimination" at a city council meeting and edited this video:

https://youtu.be/ruSfKd7jfog Time: 3:20 "Reverse Discrimination in Manor Texas."

Officer Roberts told those false statements to a Travis County Judge who wrote the Arrest Warrant. What else was told to that Judge? We will never know because it was "off the record."

Plaintiff requests the State of Texas be ENJOINED to commence video or audio record those court sessions wherein Peace Officers go before a Judge to get Warrants. Like Manor's "Court of Non-record," that is an opaque relic from days gone by, and easily remedied with modern technology including recording on video. The expense of court reporter-stenographers would not be required.

Copy from re:SearchTX

Plaintiff maintains that Officer committed perjury by passing on false statements having made no earnest effort to establish the truth; or considered using the hard-to-describe Detective Department of Manor Police to "investigate" prior to making an arrest. Do they have a "legal research" officer?

f) It's further ironic that about 3 years ago, Police Chief Phipps bragged at a Chamber of Commerce presentation that Manor PD was proud of the fact that it gave out warnings before giving out citations. In Plaintiff's case, he was painfully handcuffed and put in a squad car and driven in circles while being told he was going to downtown Austin to be booked. I was given no warning and no ticket. Over the radio (and on the Police Cam) the Police Dispatcher says words to the effect "why didn't you just give him a citation?" So, after a few more painful roundabouts, the police car stopped in front of my house. I was let out and handcuffs removed.

Afterwards on my porch, I had a good conversation with the police and got a ticket (citation) – not a warning. On the Police Body Cam, I'm shown talking to a citizen who called me because he wanted to get on the ballot. Plaintiff wonders if the City Secretary received a call, or if he showed up to submit his name for a ballot Place 5. Officer said he would check the laws about Election Coercion. I never heard back.

Copy from re:SearchTX

g) Plaintiff asks the Court, wasn't I required to REPORT the CRIME of ELECTION COERCION?

P er §38.171 Failure to Report a Felony. (a) A person commits an offense if the person:

...(2) fails to immediately report the commission of the offense to a peace officer or law enforcement agency under circumstances in which:

(A) a reasonable person would believe that the commission of the offense had not been reported; ..."

This Election Fraud was a conspiracy of two or more city officials. Plaintiff asserts the excessive discriminatory and unfair treatment that's been done to Plaintiff by the City of Manor, Travis County and State of Texas, including the Police, Elections Divisions and legal system ought be considered Retaliation and Harassment of a whistleblower, and the three charges against Plaintiff therefore be dismissed and expunged. In their efforts to punish the Plaintiff, these persons also punished the entire community without any remorse or apologies to the citizens of Greater Manor, or to the long-neglected residents of Old Manor.

h) Travis County Asst District Attorney, Miriam Chavez called Plaintiff back into court with less than one day notice based upon Manor PD Detective, Mary Eaton's FALSE assertions that Plaintiff had violated his bail conditions and sent an email

Copy from re:SearchTX

to Lluvia Almaraz; and therefore Plaintiff should be thrown back in jail and his bail raised from its original ridiculous $8,000 bond to a $50,000 bond and if Plaintiff was able to raise that; when I got out I would have to wear an ankle monitor and a dusk to dawn curfew.

When it was revealed that it was all just false hearsay, there was no violation and that Ms. Chavez had NO evidence whatsoever, she STILL asked the Judge to throw me in jail anyway. That is an abuse of power and corruption that is absolutely disgusting; and plainly revealed in the Court transcripts. Judge Espiritu denied that request wisely and thankfully.

i) A week later, Travis County Asst Attorney, Miriam Chavez called Plaintiff back into court. She had seen or heard about Plaintiff calling in to the Travis County Commissioners Meeting which was live streamed and aarchived online. Plaintiff told the Commissioners point blank in no uncertain terms about the Manor Election Coercion in time to prevent having to have a second election; and said Commissioners were doing a cover-up since the evidence was quite simple.

The reason for this hasty hearing was that Ms. Chavez watch me speaking or someone told her what I had said; and she then became concerned that I might have tainted the jury pool and couldn't get a fair trial. Nobody invited her to "look out for me." This seems rather disproportionate to Reality, thinking Plaintiff can't find six unbiased jurors in a county of one million people.

Copy from re:SearchTX

Plaintiff is requesting the maximum allowed in personal damages per Texas Statutes from each of the State of Texas, Travis County and the City of Manor. That amount seems to be $250,000 from each. If the court is able and disposed to add unspecified damages more appropriate to the severity of the governmental lapses, that will be appreciated. These entities failed in their duties to uphold elections, to recognize crimes and shielded criminals that were known to them; along with additional actions and omissions punishable by the justice system.

Plaintiff's health and security and quality of life have been dramatically, and negatively impacted over several years of mediocre and mean-spirited behavior by civic workers colluding together to harm Plaintiff, his business and the non-profit, charitable Austin Bocce League of which he is the Director.

That harm has become much more onerous with his recent detainment and arrest, having to pay a bail of $8,000 while repeat drug dealers were let out on personal bonds; and having bail conditions which in small town Manor, effectively have been and continue to be months of being under 'house arrest;' having to avoid visiting friends and favorite restaurants that are within 600' of City Hall.

The Election Coercion crime done by two City of Manor workers directly affected Mr. Battaile by seriously compromising his ability to campaign as effectively as he would otherwise have been able. Plaintiff got more votes than current Mayor Harvey was elected with in 2021 and 2024 combined. The City's

Copy from re:SearchTX

actions may have cost him off the election for a position that paid up to $3,500 per month for a 4-year term. The Plaintiff may be due unspecified noneconomic damages from the above three governmental entities.

Per Title 2. Trial, Judgment and Appeal, Chapter 41 Damages § 41.001 Definitions

(12) "Noneconomic damages" means damages awarded for the purpose of compensating a claimant for ... mental or emotional pain or anguish, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages.

Plaintiff has been disenfranchised and prevented from speaking at Council and other important city meetings. He has effectively been banned and prevented from attending city and community events, including the Chamber of Commerce City Council Candidates Debate, Veteran's Day, the Martin Luther King Walk, Juneteenth and Black History month events, to name just a few.

Ironically, it's the "black and brown" city council that has repeatedly shown prejudice and discrimination in its unequal treatment of the Plaintiff, much to the detriment of We the People.

Further, those actions were done in order to protect their jobs, colleagues and "friends" while delivering next-to-no benefits to their citizen taxpayers and

Copy from re:SearchTX

especially the long-neglected residents of Old Manor, where Plaintiff resides. The aforementioned City of Manor City Council, Staff and Police Officers have knowingly and willfully harmed the entire community in their mis-guided attempts to silence and punish one outspoken, insightful, wise and concerned Old Old Manor citizen, Robert Battaile.

Plaintiff prays that the Court consider the long-term impact its decisions will have on our fragile, irreplaceable landmarks and history; and of the role the Court's decisions will have impacting our future city of 100,000-200,000 kids, adults and seniors that want, need and deserve a robust parks and recreation system, and acceptable roads with sidewalks and good drainage; and that the Court will affirm most, if not all of the Items contained herein.

Copy from re:SearchTX

[Original signature and date from March 17, 2025 omitted; see

signature on current filing below.]


[SECOND AMENDMENT (cont.)]


**SUPPLEMENTAL PRAYER FOR RELIEF**


WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully

requests this Honorable Court:


**N.** Recognize the standing of Plaintiff, Austin Bocce League, and Bobby

Reese (denied candidate for City Council) to seek redress of public harm;


**O.** Grant emergency injunctive relief to halt development over historic

cemetery; Old Manor neighborhood, Historic Main St and homestead land;


Page 24 of Pl. 2nd Am. (New)

Copy from re:SearchTX

**P.** Order the reversal of building and design approvals, plat and zoning changes; and parkland and plaza decisions; and all significant municipal actions enacted made without a legal quorum following the November 2024 contested election;

**Q.** Recognize the existence of a historic district in Old Manor and enjoin further destruction;

**R.** Order the creation of:

1. A REPARATIONS AND HISTORIC JUSTICE TRIBUNAL to address historic harms to Old Manor residents, cemetery desecration, service denial, and stolen land;

2. A PARKS & RECREATION PUBLIC TRUST TRIBUNAL to restore citizen oversight and halt misappropriation of public parkland;

3. Appoint a SPECIAL MASTER with broad powers to address Police Misconduct; and other issues long neglected.

**S.** Declare Chapter 380 subsidies used to defraud citizens as null and void;

Page 25 of Pl. 2nd Am. (New)

Copy from re:SearchTX

**T.** Order CapMetro and Travis County to disclose funding agreements and halt deceptive transit contracts; refund monies collected for unprovided services; commence weekend service; and free service to polling sites;

## U. Sovereign Immunity is Waived

Due to a series of constitutional violations, ultra vires acts, civil rights abuses, and deceptive conduct by government entities and their agents, Plaintiff asserts that sovereign immunity is waived as to the following:

- a) City of Manor

- b) Travis County

- c) State of Texas

- d) CapMetro (Capital Metropolitan Transportation Authority)

Each of these entities has committed acts which pierce the veil of sovereign immunity under established Texas law, as follows:

### 1. Civil Rights Violations

As detailed throughout the Petition and accompanying affidavits, Plaintiff has been subject to unlawful arrest, retaliation for protected speech, denial of

Copy from re:SearchTX

public access, and procedural due process violations—all of which violate clearly established constitutional rights under 42 U.S.C. § 1983. Sovereign immunity does not shield municipalities or officials in official capacities from prospective injunctive or declaratory relief (see City of El Paso v. Heinrich, 284 S.W.3d 366).

## 2. Breach of Contract and Misuse of Public Funds

The City of Manor and its officials have violated the obligations of prior contractual and statutory duties involving Chapter 380 Agreements, zoning compliance, and parkland uses. Under Tex. Loc. Gov't Code § 271.152, immunity is waived where a local government enters into an agreement and fails to perform or misrepresents its intentions.

To the extent that City officials directed public employees or resources toward the benefit of a private developer, such actions constitute proprietary conduct under Tex. Civ. Prac. & Rem. Code § 101.0215(b), and immunity is not available for ultra vires misuse of public assets.

See *City of San Antonio v. Lower Colorado River Authority*, 244 S.W.3d 593 (Tex. App.—San Antonio 2008, pet. denied).

Copy from re:SearchTX

### 3. Deceptive Trade Practices by CapMetro

Defendant CapMetro, a regional transit provider, misrepresented the scope and reliability of its Manor-area services. Residents, including Plaintiff, were led to believe that CapMetro would operate consistent 7-day-per-week service. However, CapMetro concealed that no Saturday or Sunday service would be provided—despite collecting full sales tax revenue and advertising otherwise.

Plaintiff relied upon those representations and suffered financial harm as documented in Section 5(f) of the Motion for Discovery and in Appendix 1, Items 29–30. This constitutes a deceptive act under Tex. Bus. & Com. Code § 17.46(b)(24) and waives sovereign immunity under the Deceptive Trade Practices Act (DTPA) and the proprietary function doctrine.

## V. Scienter, Retaliation, and Institutional Entanglement by Commissioner Travillion

Plaintiff alleges that Commissioner Jeffrey Travillion has acted with scienter, deliberate indifference, and retaliatory bias in both his

Copy from re:SearchTX

capacity as Travis County Commissioner and as Chairman of the Board of CapMetro.

Defendant was repeatedly informed in writing, by email, and through public comment of: (1) Election coercion and Plaintiff's unlawful ballot exclusion; (2) the cultural and physical destruction of the Clayton Vocational Institute and Martin McVey Cemetery, both historically significant Black community sites; (3) the misuse of City and County funds to benefit developers; and (4) the targeted closure of public bocce courts, under a knowingly false "public health hazard" designation without any inspection.

Travillion mocked Plaintiff publicly—calling him "an idiot" during a live-streamed Commissioners Court hearing—and reneged on a promise to install new bocce courts at Ben E. Fisher Park. He also refused to act upon or investigate Plaintiff's written complaints regarding historic preservation, election fraud, or misuse of development funds.

As a budget-setting Commissioner for Travis County, Travillion also bears direct fiscal responsibility for the inhumane, unconstitutional, and substandard conditions at Travis County Central Booking, where Plaintiff

Copy from re:SearchTX

was twice detained without counsel and subjected to subhuman conditions, including lack of sleep, medical care, sanitation, and communication.

These cumulative failures, omissions, and retaliatory actions demonstrate **intentional misconduct and ultra vires behavior**, not protected by immunity. They demand judicial scrutiny, injunctive relief, and a full jury determination on the merits.

## W. Ultra Vires Acts by Public Officials

Acts undertaken outside lawful authority—such as retaliatory arrests, misuse of public infrastructure, or approval of development over historic cemeteries—constitute ultra vires behavior, and fall within the doctrine outlined in Heinrich. This includes failures to enforce or abide by binding land-use designations, cemetery protection laws, and voter-approved obligations.

## X. Ultra Vires Cemetery Desecration and Mis-use of City Funds by Matt Woodard, Public Works Director City of Manor

Copy from re:SearchTX

Plaintiff asserts that Matt Woodard, Public Works Director for the City of Manor, acted ultra vires and outside the lawful scope of his authority when he directed city staff and equipment to perform mowing, land clearing, and soil disruption activities on land adjacent to and overlapping the 1906 Martin McVey Cemetery, a site legally designated for cemetery use per original 1906 deed.

These acts were not conducted for any legitimate public purpose, but instead served the private interests of Defendant Legacy Performance Capital, a for-profit developer who stood to gain from the clearing.

Mr. Woodard's use of taxpayer-funded labor and machinery to benefit a private entity violated:

- Tex. Loc. Gov't Code § 253.001 (restrictions on public land transfer and use),

- Cemetery protection provisions under Texas Health & Safety Code Chapter 711, and

- The Texas Constitution's prohibitions on takings for private benefit (Art. I, § 17).

Copy from re:SearchTX

This desecration was performed without public notice, without a required historical survey, and without conducting a Ground Penetrating Radar (GPR) scan despite visible historical markers and dense lily growth patterns indicating grave sites.

The land in question includes an officially designated "cemetery lot" on record at the Travis County Courthouse since 1906. It hard to fathom but ironically, City of Manor did pay for and was in the process of GPR-mapping at the adjacent Manor Cemetery; on the same day of said clearing.

Mr. Woodard's actions thus exceeded any ministerial or discretionary authority granted to him under state law, and were committed with knowledge of their likely harm to protected burial sites and cultural heritage.

Plaintiff alleges that this conduct was not only ultra vires, but also retaliatory in nature, aimed at furthering development interests over Plaintiff's ongoing historic preservation efforts.

Accordingly, Plaintiff seeks injunctive and declaratory relief against Mr. Woodard in his official capacity pursuant to the Texas ultra vires doctrine, and preserves all related Section 1983 and Texas Constitutional claims against him in his individual capacity to the extent such conduct violated clearly established rights and was beyond the scope of lawful authority.

Copy from re:SearchTX

Plaintiff filed two Police Reports about the cemetery misconduct; which quickly became "inactive" without meaningful, competent investigations.

**Y. Police Misconduct and Retaliatory Arrests**

Plaintiff was twice arrested by City of Manor police under false and retaliatory pretenses—most recently for "stalking," based solely on the publication of protected political speech in a local newsletter emails critical of City officials. This arrest occurred without probable cause, via a Court of No Record, and Plaintiff was subjected to a $30,000 bail before being released within a few hours on zero cost (personal recognizance) bond once his public defender "accidentally" learned of Plaintiff's arrest.

As fate would have it, Plaintiff's Public Defender attorney was representing Plaintiff on a procedural matter regarding a City of Manor "Disorderly Conduct" charge (moved to Travis County by Plaintiff from the City of Manor Court of No Record) when the court clerk said, "your client's been arrested."

These actions constitute clear violations of Plaintiff's rights under the First and Fourteenth Amendments and were carried out under color of law

Copy from re:SearchTX

by City officials acting outside their legal authority. Sovereign immunity is waived under 42 U.S.C. § 1983 and the ultra vires doctrine, as these actions seek redress for constitutional violations and prospective systemic relief.

Plaintiff is currently defending against multiple criminal charges in Travis County arising from constitutionally protected speech and public criticism of local officials. These include a disorderly conduct charge originally filed in the City of Manor's "Court of No Record," and misdemeanor and felony charges stemming from political emails to city staff. These prosecutions, initiated without credible evidence or due process in a court of no record – appear vindictive in nature, calculated to suppress Plaintiff's public advocacy, and negatively impacted his Mayoral candidacy campaign in the 2024 Election; and interfere with this civil action.

## Z. Judicial Silence and Lack of Reasoned Orders

Despite the seriousness of the claims raised in this case—including election interference, cultural erasure, civil rights violations, and unconstitutional jail conditions—not one dismissal issued thus far has been accompanied by a judge's written opinion, legal findings, or explanation.

Copy from re:SearchTX

These are not minor procedural issues; they implicate core constitutional rights and affect thousands of residents of Old Manor and Greater Manor. The absence of judicial reasoning undermines the transparency of the process, obstructs meaningful appellate review, and signals a troubling lack of engagement by the judiciary. It reflects not neutrality, but **institutional indifference**, and constitutes a form of procedural disrespect—both to the Plaintiff and to the broader public whose rights and heritage are at stake.

Plaintiff therefore renews the request that this matter be assigned to a qualified judge from outside Travis County, and that all further rulings be supported by findings of fact and conclusions of law sufficient to satisfy due process and appellate standards.


Plaintiff prays that the court award costs, further declaratory relief, and any such other relief in law or equity to which Plaintiff may be justly entitled.

Respectfully submitted on July 30, 2025 by

_/s/ Robert Edward Battaile_

Robert Edward Battaile, Plaintiff Pro Se

502 E Eggleston St. Unit B – Manor TX 78653

512-662-2955    robert@manortx.us

Copy from re:SearchTX

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this filing was served on all counsel of record via eFileTexas and by email on July 30, 2025.

_/s/ Robert Edward Battaile_

Robert Edward Battaile, Plaintiff

Page 36 of Pl. 2nd Am. (New)

Copy from re:SearchTX

**EXHIBIT A – UNRULED MOTIONS** - D1-GN=25=000719

While certain defendants may have been dismissed under procedural grounds such as Rule 91a or pleas to the jurisdiction, these dismissals do not dispose of the full range of injuries, allegations, or pending motions already before the Court.

The mere removal of a party from the case does not resolve substantive requests for injunctive relief, evidentiary hearings, discovery schedules, appointment of counsel, or constitutional remedies that remain active.

Texas law does not treat a dismissal as a blanket denial of all unresolved motions or filings—especially those implicating broader governmental misconduct, civil rights violations, or ultra vires actions. These motions remain live unless specifically addressed, and continue to be relevant as new defendants are added, appeals are taken, or amended pleadings revive prior claims.

To the extent that no definitive action has been taken on these motions, Plaintiff reserves all objections and preserves the issues for further adjudication.

Copy from re:SearchTX

**1. Original Petition to Contest Election... Jan 29 2025**

a) Contesting the Election – evaluating the criminal evidence

b) Having a New Election with a NEW ballot process

c) Arresting the City Manager and City Secretary for Election Coercion

d) De-certifying the self-certified City Council (no legal quorum)

e) insuring adequate publicity during Special Election

f) CapMetro goes for free to polling sites (otherwise, it's a poll tax)

g) New election not managed or certified by City of Manor


**2. First Amendment to Petition... Mar17 2025 (addtl to above)**

a) Adding Spanish language communications by city

b) Police put on leave pending City of Manor Ethics Commission review

c) Dismissal of several city ordinances re: Public Comments abuses; parkland thefts, remove invocations,

d) Waiver of sovereign immunity of State, Travis County and City

e) **HISTORIC SITES** being harmed and in eminent danger despite being located in "historic district" of original Old Manor codified since 2017:

1. 1840 James B Manor Homestead (west side) [Las Entradas...]

2. 1840 James B Manor Homestead (east side) [ManorMF LLC...]

Page 38 of Pl. 2nd Am. (New)

Copy from re:SearchTX

3. Manor Grocery – main street icon – not served, no discovery

4. Historic residential neighborhood on Boyce St – forced to accept two office buildings [buildblock.io]

5. Last building of Clayton Vocational Institute (outstanding school for black students in 1930's) – owner (Travis County Trustee) not located, or fraudulent. No discovery allowed. TravisCAD.org is incorrect.

6. Parsons School site from 1870's now abandoned  [ManorISD]

7. McVey Cemetery 1906 desecrated under townhomes – [Legacy...]


**Private developer misconduct – Community Sites and Parks**

f). Manor Crossing Shopping Center [13100 FM 973 Inc – and tenants]

i. $20 MILLION Chapter 380 Grant changed without reducing the amount of the grant or time restriction (i.e. theft approx $7 million/7 years)

ii. Park at Manor Crossing admitted in court they'd only paid half of the required park fees (i.e. owes another approx $200,00) [GenCap Partners]

iii. Manor Retail GCP Medical use provides no viable sales taxes

iv. HEB refusal to put in required PLAZA for dev over 10 acres

g) Manor Commons Shopping Center – PLAZA required over 10 acres {owner Barth Timmermann also sit on Manor Public Impact Fees Cmte.)

Copy from re:SearchTX

And received $9 million in Chapter 380 funds; and sold several parcels of real estate to the City of Manor.

h) Monarch Ranch – theft of parkland fees/parkland [Rust Creek...]

i) ShadowGlen phases owe parkland fees or parkland and behind on several years of promised trails; and parking for same. [Meritage Homes]

**City of Manor, Travis County and State of Texas misconduct**

i) Dismiss harmful, bloated, and ill-conceived (605-pages) $318,000 paid in advance bogus Comprehensive Plan being used to destroy community

j) Parks and Recreation Tribunal

k) Bocce Court Restoration, Breach of Contract and Harms

l) Old Manor Reparations

m) Damages for Bobby Reese illegally kept of City Council Ballot

n) Exoneration and Damages for Plaintiff from State, County and City

**3. Motion to Consider Schedule, Non-binding Mediation... June 5, 2025**

a) [Consider Schedule; and Non-binding Mediation – effectively became moot when Defendants were dismissed]

b) Plaintiff request to videotape procedings

Copy from re:SearchTX

c) Clarification of Remonstrance v. Decorum court protocols

d) Request for "Judicial Continuity" (i.e. Rule 2 in plain English)

**4. First Motion for Discovery, and Confirm Sqt. Milton – June 12, 2025**

a) First Motion for Discovery

b) Confirmation of Milton

**5. Ex-Parte Motion for Continuance after Arrest – June 31, 2025**

a) after arrest and two days in jail without due process from a court of no record after unknown retaliatory claims made by Manor PD – in violation of Free Speech and Free Press protections.

Despite hearing scheduled for June 9, 2025 – Motion was ignored

**6. Motion for Rule 2; Election Contest Summary Judgement...June 3**

a) Motion for Rule 2 (re-stated "Judicial Continutiy" request)

b) Motion to Validate timely election contest and tolling

c) Motion for Partial Summary Judgement of Election Contest and Sever

d) Motion to Quash Warrants and Dismiss Retaliatory Proceedings
including numerous Police misconduct examples

Page 41 of Pl. 2nd Am. (New)

Copy from re:SearchTX

e) Subhuman Jail Conditions and personal harm to Plaintiff

f ) Jail procedures demanding immediate attention inc Due Process, Punishment prior to Conviction, Courts of No Record...

g) Motion for Sanctions for Mayor Harvey for misuse of funds and ethics failures, election fraud coverup

h) Amended Damages for second arrest, ongoing TOMA violations

**7. Motion to Declare Courts of No Record Unconstitutional... June 6**

a) Magisterial (sometime 2-tiered) Courts of No Record

b) Municiipal Courts of No Record (in 709 Texas cities – 84.5%)

c) Equity powers to provide solutions

**8. Motion for Unified Docket, Defendant Misconduct... June 9, 2025**

a) Five hearing with five Judges

b) Very complex case with lots of unresoved issues and motions

c) Plaintiff noting to Court, State, County and City that Developer's attorney admitted not paying in-lieu Parkland Fees of approximately $200,000 at the Parks at Manor Crossing apartment complex

d) Demand for May 27th Hearing Transcripts (still no transcripts)

Page 42 of Pl. 2nd Am.  (New)

Copy from re:SearchTX

**9. Motion to Reconsider Recusal of Judge Soifer and Statement... June 27**

a) Motion to Reconsider Summary Judgement – Plaintiff had expected a hearing to be set. Thus, absent any presentation, Judge made a Summary Ruling – Plaintiff submitted 40-page Response detailing shortcomings

b) Motion to Strike improper language from Orders

c) Statement of Time spent reviewing 400 pages of Pleadings prior to issuing Orders

d) Outrage over lack of judicial oversight, weight of evidence yet multiple Defendants dismissed without explanation. Plaintiff restating in short form the complaint extensively provided in the First Amended Petition and its accompanying Appendix One Revision One pleadings.

**10. Consolidated Motion to Vacate July 3rd Hearing, Rule 2... July 14**

a) Motion to Vacate due to no notice. Atty, Ian Todd used wrong email address for plaintiff. Plaintiff never appeared and Rulings were made

b) Objected to July 17th Notice shortcomings with improper service

c) Prayer for Ruling on Rule 2 Motion

Copy from re:SearchTX

**11. Motion to Order Transcripts... of All Hearings  - July 18, 2025**

a) Motion to receive requested Transcripts from attended hearings – and for a transcript from one not attended due to improper notice. As of July 30, 2025 ~ still no transcripts.

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103796309
Filing Code Description: Amended Filing
Filing Description: SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD
Status as of 7/31/2025 3:03 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 7/30/2025 10:42:59 PM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 7/30/2025 10:42:59 PM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 7/30/2025 10:42:59 PM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 7/30/2025 10:42:59 PM | SENT |
| Michael Roberts | | mroberts@jw.com | 7/30/2025 10:42:59 PM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 7/30/2025 10:42:59 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 7/30/2025 10:42:59 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 7/30/2025 10:42:59 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 7/30/2025 10:42:59 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 7/30/2025 10:42:59 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 7/30/2025 10:42:59 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 7/30/2025 10:42:59 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 7/30/2025 10:42:59 PM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 7/30/2025 10:42:59 PM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/30/2025 10:42:59 PM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 7/30/2025 10:42:59 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 7/30/2025 10:42:59 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 7/30/2025 10:42:59 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 7/30/2025 10:42:59 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 7/30/2025 10:42:59 PM | SENT |
| Lauren Bush | | lbush@jw.com | 7/30/2025 10:42:59 PM | SENT |

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103796309
Filing Code Description: Amended Filing
Filing Description: SECOND AMENDMENT TO PETITION TO CONTEST 2024 MANOR TEXAS CITY COUNCIL AND MAYORAL ELECTION AND TO CAUSE NEW ELECTION BE HELD
Status as of 7/31/2025 3:03 PM CST

Case Contacts

| Lauren Bush | | lbush@jw.com | 7/30/2025 10:42:59 PM | SENT |
|---|---|---|---|---|
| Karah Powers | | kpowers@chmc-law.com | 7/30/2025 10:42:59 PM | SENT |
| Edward Smith | | esmith@808west.com | 7/30/2025 10:42:59 PM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 7/30/2025 10:42:59 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 7/30/2025 10:42:59 PM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 7/30/2025 10:42:59 PM | SENT |
| Anna Puff | | apuff@sneedvine.com | 7/30/2025 10:42:59 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 7/30/2025 10:42:59 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 7/30/2025 10:42:59 PM | SENT |
| Robert Battaile | | robert@manortx.us | 7/30/2025 10:42:59 PM | SENT |
| Robert Battaile | | robert@manortx.us | 7/30/2025 10:42:59 PM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 7/30/2025 10:42:59 PM | SENT |
| Carol  Shipley | | cshipley@rrspllc.com | 7/30/2025 10:42:59 PM | SENT |
| ROBERT EDWARDBATTAILE | | robert@manor.tx.us | 7/30/2025 10:42:59 PM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 7/30/2025 10:42:59 PM | SENT |

Copy from re:SearchTX

8/14/2025 3:48 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Melissa Romero

NO. D-1-GN-25-000719

IN THE DISTRICT COURT No. 459th
TRAVIS COUNTY, TEXAS

ROBERT EDWARD BATTAILE,
       Plaintiff

              v

STATE OF TEXAS, et al.,

   Defendants

_____

**PLAINTIFF'S NOTICE OF CHANGE OF SERVICE INFORMATION
FOR DEFENDANT MERITAGE HOMES OF TEXAS, LLC**

TO THE HONORABLE JUDGE OF SAID COURT:

   Plaintiff Robert Edward Battaile, appearing pro se, files this Notice to

update the Court and all parties regarding service information for Defendant

Meritage Homes of Texas, LLC.

   The previously designated officer for service, James Saunders, Division

President, has resigned from the company. Prior service attempts directed to

Mr. Saunders were refused.

Based upon a June 2025 License Agreement between Meritage Homes of Texas, LLC and the City of Manor, correct current service information is:

Meritage Homes of Texas, LLC

Attn: Brandon Hammann, Vice President of Land Development

12301 Research Blvd, Bldg 4, Ste 400

Austin, TX 78759

email: brandon.hammann@meritagehomes.com

Plaintiff requests that any reissued citation for this defendant be directed to the above name and address.

Respectfully submitted on August 14, 2025 by,

_____/s/_____

Robert Edward Battaile

Plaintiff, Pro Se

502 E Eggleston St Unit B

Manor, TX 78653

512-662-2955   robert@manortx.us

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Notice has been served on all

parties in accordance with Texas Rule of Civil Procedure 21a on this 14th

day of August, 2025, via eFileTexas and/or email as indicated in the Court's

service list.

_____/s/_____

Robert Edward Battaile,  Plaintiff

8/14/2025 3:59 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Rosa Oneal

NO. D-1-GN-25-000719

IN THE DISTRICT COURT No. 459th
TRAVIS COUNTY, TEXAS


ROBERT EDWARD BATTAILE,
      Plaintiff



            v

STATE OF TEXAS, et al.,

   Defendants

_____


 **PLAINTIFF'S REQUEST FOR ISSUANCE OF CITATION AND
SERVICE TO: DEFENDANT MERITAGE HOMES OF TEXAS, LLC**

TO THE DISTRICT CLERK OF TRAVIS COUNTY:


Please issue a citation for Defendant Meritage Homes of Texas, LLC, and

direct the Travis County Constable, Precinct 5, to personally serve:


Meritage Homes of Texas, LLC

Attn: Brandon Hammann, Vice President of Land Development

12301 Research Blvd, Bldg 4, Ste 400

Austin, TX 78759

email: brandon.hammann@meritagehomes.com

Mr. Hammann is identified in a June 2025 License Agreement with the City of Manor as Vice President of Land Development for Meritage Homes of Texas, LLC, at this address. He replaces James Saunders, Division President, who has resigned and was previously listed for service. An attempt was made to serve Mr. Saunders was unsuccessful because he had just previously resigned from the company.

The citation should include Plaintiff's Second Amended Petition and any exhibits on file.

Respectfully submitted on August 14, 2025 by,


_____/s/_____

Robert Edward Battaile, Plaintiff Pro Se

502 E Eggleston St Unit B

Manor, TX 78653

512-662-2955    robert@manortx.us

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Request has been served on all parties in accordance with Texas Rule of Civil Procedure 21a on this 14th day of August, 2025, via eFileTexas and/or email as indicated in the Court's service list.

_____/s/_____
Robert Edward Battaile, Plaintiff

Exhibit B-9    15-25-00142-CV

# Challenge to Constitutionality of a State Statute

[Print]

This form must be completed by a party filing a petition, motion or other pleading **challenging the constitutionality of a state statute**. The completed form must be filed with the court in which the cause is pending as required by Section 402.010 (a-1), Texas Government Code.

**Cause Number** *(If Known):*                     **Court** *(If Known):*

Styled:

*(e.g., John Smith v. All American Insurance Co.; in re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

**Contact information for party\* challenging the constitutionality of a state statute.** (*\*If party is not a person, provide contact information for party, party's representative or attorney.*)

| | | |
|---|---|---|
| Name: | Telephone: | 8/25/2025 12:00 AM |
| Address: | Fax: | Velva L. Price<br>District Clerk<br>Travis County |
| City/State/Zip: | State Bar No. (if applicable): | D-1-GN-25-000719<br>Norma Ybarra |
| Email: | | |

Person completing this form is: ☐ Attorney for Party ☐ Unrepresented Party ☐ Other:

**Identify the type of pleading you have filed challenging the constitutionality of a state statute.**

☐ Petition      ☐ Answer      ☐ Motion (Specify type):
☐ Other:

**Is the Attorney General of the State of Texas a party to or counsel in this cause?**

☐ Yes   ☐ No

**List the state statute(s) being challenged in your pleading and provide a summary of the basis for your challenge.** (Additional pages may be attached if necessary.)

9/5/13

**Constitutional Challenges – Argument Sections**

## 1. Courts of No Record

Texas Government Code provisions authorizing municipal and magisterial courts of no record violate both the Texas Constitution and the U.S. Constitution. Article I, Section 19 of the Texas Constitution guarantees that 'no citizen shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.' Similarly, the Fourteenth Amendment to the U.S. Constitution guarantees due process of law. Courts of no record, by their nature, deny litigants meaningful review, as appellate courts are deprived of a factual record necessary for adequate scrutiny. This system allows unchecked judicial discretion and effectively insulates trial-level decisions from meaningful oversight.

The Texas Court of Criminal Appeals has recognized that due process requires a record sufficient for appellate review. In Height v. State, 137 S.W.3d 720 (Tex. Crim. App. 2004), the court emphasized that appellate review depends upon a proper record. When the Legislature authorizes proceedings without any record, it creates a structural denial of due process.

This problem is compounded by the fact that many defendants in municipal and magistrate courts are indigent, leaving them disproportionately impacted by the inability to appeal errors.

Accordingly, provisions allowing courts of no record should be declared unconstitutional. The Texas Constitution demands more than perfunctory proceedings shielded from scrutiny. Federal precedent such as Mayer v. City of Chicago, 404 U.S. 189 (1971), which held that indigent defendants are entitled to a record adequate for appellate review, confirms that recordless adjudication violates equal protection and due process. The absence of records undermines the legitimacy of judicial action and should not be tolerated under either constitutional framework.

## 2. Jail Conditions at Travis County Central Booking

The conditions at Travis County Central Booking, as alleged, constitute violations of both the Texas Constitution and the U.S. Constitution. Article I, Sections 13 and 19 of the Texas Constitution prohibit cruel or unusual punishment and guarantee due course of law. The Eighth and Fourteenth Amendments to the U.S. Constitution similarly forbid cruel and unusual punishment and mandate due process.

Overcrowded, unsanitary, and degrading conditions—such as limited access to counsel, lack of sanitation, inadequate sleeping arrangements, and restrictions on communication—fall squarely within the prohibitions articulated by both state and federal law. In Ruiz v. Estelle, 503 F. Supp. 1265 (S.D. Tex. 1980), affirmed in part, 679 F.2d 1115 (5th Cir. 1982), systemic deficiencies in Texas prison conditions were found to violate the Eighth Amendment. Although Ruiz involved prisons, its principles apply equally to jails. Detained individuals, particularly pretrial detainees, cannot constitutionally be subjected to conditions amounting to punishment before conviction.

Similarly, in Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that conditions of confinement for pretrial detainees must not amount to punishment. The practices at Central Booking—bright lights preventing sleep, denial of privacy for phone calls, and refusal to provide public defender contact information—demonstrate deliberate indifference to detainees' rights. Such treatment undermines the presumption of innocence and violates the protections guaranteed by both the Texas and U.S. Constitutions.

**3. Public Comment Rights – Tex. Gov't Code § 551.007**

Tex. Gov't Code § 551.007 provides that members of the public must be allowed to address governmental bodies on agenda items. While this statute recognizes a right to public participation, it fails to include an enforcement mechanism. As applied, the statute is unconstitutional because it allows government officials to disregard or suppress public comments without consequence, rendering the right illusory.

The Texas Constitution guarantees the right to petition government officials for redress of grievances (Art. I, §27) and protects free speech (Art. I, §8). Similarly, the First Amendment to the U.S. Constitution protects both speech and the right to petition. Courts have long held that rights without remedies are hollow. See Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) (emphasizing that a right must have a remedy). By failing to provide any mechanism for enforcement, § 551.007 effectively authorizes suppression of public comment without judicial recourse.

As applied here, Plaintiff's bail restrictions and municipal practices have combined to bar meaningful participation in public meetings. Officials have refused to read emails during public comment, despite § 551.007's recognition of the right. Without an enforcement mechanism, the statute permits arbitrary and discriminatory suppression of public voices.

Accordingly, § 551.007 should be deemed unconstitutional as applied, and

this Court should recognize the necessity of judicially enforceable remedies to protect public participation.

**4. Public Comment Speaking Time Rights – Tex. Gov't Code § 551.007**

Texas's Open Meetings Act codifies the public's right to speak on agenda items "before or during" consideration of that item. Tex. Gov't Code § 551.007(b). While a body may adopt reasonable rules, the statute expressly frames any cap as time "on a given item," § 551.007(c), doubles time for those speaking through a translator, § 551.007(d), and forbids prohibiting "public criticism" of the body, § 551.007(e). Together these provisions require meaningful, item-specific participation—not a one-size-fits-all total that collapses distinct matters into a single, inadequate window.

8/29/2025 11:34 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Candy Schmidt

CAUSE NO. D-1-GN-25-000719

In the 459th District Court, Travis County, Texas

ROBERT EDWARD BATTAILE, Plaintiff and Appellant, Pro Se

v.

STATE OF TEXAS, et al., Defendants and Appellees

---

## PLAINTIFF/APPELLANT'S MOTION TO CORRECT AND SUPPLEMENT THE REPORTER'S RECORD WITH PRODUCTION OF AUDIO RECORDINGS

Note that this is filed with the 459th Court for forwarding to the 3rd Court of Appeals

03-25-00484-CV and on to the 15th Court of Appeals, which has accepted the Case.

**TO THE HONORABLE COURT OF APPEALS:**

Appellant, Robert Edward Battaile, pro se, respectfully moves the Court under Texas

Rule of Appellate Procedure 34.6(e) to order correction and supplementation of the

reporter's record. In support, Appellant shows:

1. Incomplete and Illegible Records

The five reporter's record volumes filed in this matter were and may still be

incomplete and, in some instances, illegible. At least one transcript contained

hundreds of extraneous letter "T" characters, obscuring the text. Other volumes

appear missing or duplicated.

2.Material Transcription Error

Upon minuscule preliminary review, Appellant identified a substantive error: the transcript states "discussed" where Appellant in fact said "disgusted." The correction is material, as the subject concerned townhomes being built on top of historic Black graves by Defendant, Legacy Performance Capital.

3.Need for Audio Recordings

To prepare a proper and specific motion to settle the record, Appellant requests access to all audio recordings used to generate the transcripts, as well as confirmation that stenographic notes and digital files have been preserved. Audio comparison is essential for Appellant to identify and designate transcription errors for correction.

4.Preservation Demand

Appellant hereby requests that all court reporters be instructed to preserve without deletion or alteration:

•stenographic notes,

•digital transcript files,

•synchronized audio within any CAT software, and

•any backup audio recordings of hearings in this case.

5. Judicial Economy

Appellant proposes that audio files and corrected transcripts be provided so that one consolidated motion to settle the record may be filed, rather than piecemeal corrections. This request promotes judicial economy and ensures accuracy before transfer of the case to the Fifteenth Court of Appeals.

**PRAYER**

WHEREFORE, Plaintiff/Appellant respectfully prays that this Court:

1. Order the trial court and/or court reporters to provide complete, legible, and corrected transcripts for all hearings in this case;

2. Direct the court reporters to produce copies of the original audio recordings associated with each transcript;

3. Issue instructions to preserve all stenographic notes, digital files, and audio backups; and

4. Grant such further relief to which Appellant is justly entitled.

Respectfully submitted this 29th day of August, 2025 by,

_____/s/ Robert Edward Battaile_____

Robert Edward Battaile, Plantiff and Appellant Pro Se

502 E Eggleston St, Unit B

Manor, Texas 78653

robert@manortx.us | (512) 662-2955

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Notice has been served on all parties in accordance with Texas Rule of Civil Procedure 21a on this 29th day of August, 2025, via eFileTexas and/or email as indicated in the Court's service list.


      /s/ Robert Edward Battaile

Robert Edward Battaile, Appellant Pro Se

9/8/2025 12:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-000719
Candy Schmidt

## CAUSE NO. D-1-GN-25-000719

DISTRICT COURT No. 459TH TRAVIS COUNTY, TEXAS

Appellate Case: Fifteenth Court of Appeals No. 15-25-00142-CV (interlocutory appeal

perfected August 28, 2025) from Third Court of Appeals No. 03-25-00484-CV

ROBERT EDWARD BATTAILE, Plaintiff,

v.

TEXAS ELECTIONS DIVISION, HON. JANE NELSON, TEXAS SECRETARY OF

STATE, ET AL., Defendants.

## PLAINTIFF/APPELLANT'S MOTION TO STAY, ABATE OR CONTINUE PROCEEDINGS PENDING APPEAL; AND REQUEST FOR HEARING

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff Robert Edward Battaile, pro se, and files this Motion to Stay

Proceedings Pending Appeal pursuant to Texas Civil Practice and Remedies Code §

51.014(b) and Texas Rule of Appellate Procedure 29.5. Plaintiff respectfully requests

that the Court stay all further proceedings in this cause, including the scheduled hearing

on Defendant Meritage Homes of Texas, LLC's ("Meritage") Plea to the Jurisdiction set

1

for September 16, 2025, at 2:00 PM, while Plaintiff's interlocutory appeal remains pending in the 15th Court of Appeals under Cause No. 15-25-00142-CV. In support thereof, Plaintiff shows the Court as follows:

## I. BACKGROUND AND FACTS

1. This case originated as Plaintiff's Petition to Contest the 2024 Manor, Texas, City Council and Mayoral Election, filed on January 29, 2025, with subsequent amendments on March 17, 2025 (First Amendment) and later (Second Amendment), incorporating claims against multiple defendants, including state entities (e.g., Texas Elections Division and Secretary of State Jane Nelson) and private parties such as Meritage.

2. Certain governmental defendants filed pleas to the jurisdiction, which the Court granted, leading to their dismissal. Plaintiff timely appealed those rulings under Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), perfecting the appeal originally docketed as Cause No. 03-25-00484-CV in the Third Court of Appeals.

3. On or about August 28, 2025, the Third Court of Appeals transferred the appeal to the 15th Court of Appeals pursuant to Tex. Gov't Code § 73.001, where it is now fully accepted and docketed as Cause No. 15-25-00142-CV. The appeal remains pending, with no final disposition or mandate issued.

4. Meritage, a late-served defendant, filed its Plea to the Jurisdiction after the appeal was perfected, arguing lack of standing under cases such as Osborne v. Keith, 177

2

Copy from re:SearchTX

S.W.2d 198 (Tex. 1944). A hearing on Meritage's plea is now officially set for September 16, 2025, at 2:00 PM.

5. Plaintiff has also filed related appellate proceedings, including an Original Petition for Writ of Mandamus (seeking to compel state officials to perform election-related duties) and a Motion to Correct and Supplement the Reporter's Record (requesting audio recordings to resolve transcription errors), both forwarded to the 15th Court of Appeals.

## II. ARGUMENT AND AUTHORITIES

6. Under Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), an interlocutory appeal from an order granting or denying a governmental unit's plea to the jurisdiction is permitted. Such an appeal automatically stays all other proceedings in the trial court pending resolution of the appeal. Tex. Civ. Prac. & Rem. Code § 51.014(b); see also In re Geomet Recycling LLC, 578 S.W.3d 82, 87 (Tex. 2019) (emphasizing the stay's broad application to prevent piecemeal litigation).

7. The appealed orders involve governmental units (e.g., Texas Elections Division), triggering the automatic stay. The stay encompasses the entire case, including claims against non-governmental defendants like Meritage, as the issues are intertwined (e.g., election contest claims impacting development agreements such as the June 2025 City-Meritage License Agreement for ShadowGlen improvements). See City of Houston v. Estate of Jones, 388 S.W.3d 663, 667

3

Copy from re:SearchTX

(Tex. 2012) (stay applies to all proceedings unless lifted).

8. The trial court retains limited plenary power during the stay for ministerial acts (e.g., correcting records) but lacks authority for substantive actions, such as holding the scheduled hearing or ruling on Meritage's plea. Tex. R. App. P. 29.5; Am. Housing Res., Inc. v. Slaughter, 597 S.W.3d 9, 14 (Tex. App.—Dallas 2019, no pet.). Proceeding would violate the stay and risk conflicting rulings.

9. Alternatively, if the Court determines no stay applies, Plaintiff requests abatement of proceedings against Meritage until the appeal resolves, as the appellate outcome may moot or affect those claims. See In re Laibe, 307 S.W.3d 314, 318 (Tex. 2010) (abatement appropriate to avoid inefficiency).

## III. REQUEST FOR HEARING

10. Plaintiff requests an expedited hearing on this Motion on September 16, 2025, at 2:00 PM, to coincide with the scheduled hearing on Meritage's plea, allowing the Court to address the jurisdictional issue first and prevent improper consideration of the plea.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court:

1. Grant this Motion and stay all proceedings, including cancellation of the hearing on Meritage's Plea to the Jurisdiction scheduled September 16, 2025, at 2:00 PM;

4

Copy from re:SearchTX

2. Alternatively, abate proceedings against Meritage pending appeal;

3. Set a hearing on this Motion for September 16, 2025, at 2:00 PM; and

4. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Plaintiff Pro Se
502 E Eggleston St, Unit B Manor, TX 78653
robert@manortx.us (512) 662-2955


## CERTIFICATE OF CONFERENCE

I certify that I did not formally confer under Tex. R. Civ. P. 191.2; but on June 5, 2025,

I replied to counsel for Meritage, Mr. Hobbs confirming the appellate case transfer to

15th Appeals Court 15-25-00142-CV. Counsel elected to go forward and set the hearing.

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Plaintiff


## CERTIFICATE OF SERVICE

I certify that on September 6, 2025, a true copy of this Motion was served on all parties

or counsel of record via eFileTexas, email in accordance with Tex. R. Civ. P. 21a.

_____/s/ Robert Edward Battaile_____
Robert Edward Battaile, Plaintiff

Copy from re:SearchTX

**PROPOSED ORDER**

Cause No. D-1-GN-25-000719 — In 459th Judicial District Court, Travis County, Texas

**ORDER ABATING PROCEEDINGS, OR ENFORCING STAY,**

**OR CONTINUING HEARING PENDING APPEAL**

On this day, the Court considered Plaintiff/Appellant's Motion to Enforce Statutory Stay and to Vacate (or Continue) Hearing. After considering the motion and the applicable law, the Court finds good cause and that an interlocutory appeal is pending in the Fifteenth Court of Appeals, No. 15-25-00142-CV.

IT IS THEREFORE ORDERED that the Court grants the following relief (select one):

1._____ Abatement. All proceedings in this cause are ABATED until resolution in the Fifteenth Court of Appeals in No. 15-25-00142-CV, at which time any party may move to reinstate. No substantive orders shall be entered during abatement, and any current substantive settings, including the September 16, 2025 hearing, are VACATED.

2._____ Statutory Stay / TRAP 29.5. The Court ENFORCES CPRC § 51.014(b) and TRAP 29.5. No substantive hearings or orders shall occur until resolution in the Fifteenth Court of Appeals in No. 15-25-00142-CV. The September 16, 2025 hearing is VACATED.

6

Copy from re:SearchTX

3._____ Continuance / Status-Only. The September 16, 2025 hearing

is CONTINUED to a date after resolution in the Fifteenth Court of Appeals in No. 15-

25-00142-CV; alternatively, any interim setting before that date is status-only and no

orders shall be entered.


SIGNED on _____, 2025.


_____

JUDGE PRESIDING

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 105294621
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF/APPELLANT'S MOTION TO STAY, ABATE OR CONTINUE PROCEEDINGS PENDING APPEAL; AND REQUEST FOR HEARING
Status as of 9/7/2025 1:42 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William "Bill" CDavidson | | bdavidson@chmc-law.com | 9/6/2025 6:25:27 PM | SENT |
| Michael Kabat | | mkabat@mcginnislaw.com | 9/6/2025 6:25:27 PM | SENT |
| Gavin Villareal | | gavin.villareal@bakerbotts.com | 9/6/2025 6:25:27 PM | SENT |
| Patrick MKelly | | Pat.Kelly@traviscountytx.gov | 9/6/2025 6:25:27 PM | SENT |
| Michael Roberts | | mroberts@jw.com | 9/6/2025 6:25:27 PM | SENT |
| Kevin OHanlon | | kohanlon@808west.com | 9/6/2025 6:25:27 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 9/6/2025 6:25:27 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 9/6/2025 6:25:27 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 9/6/2025 6:25:27 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 9/6/2025 6:25:27 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 9/6/2025 6:25:27 PM | SENT |
| Kim McBride | | kmcbride@mcginnislaw.com | 9/6/2025 6:25:27 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 9/6/2025 6:25:27 PM | SENT |
| SNEED VINE & PERRY | | gtwnfilings@sneedvine.com | 9/6/2025 6:25:27 PM | SENT |
| Cynthia W.Veidt | | cynthia.veidt@traviscountytx.gov | 9/6/2025 6:25:27 PM | SENT |
| Austin L.Jones | | ajones@mcginnislaw.com | 9/6/2025 6:25:27 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 9/6/2025 6:25:27 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 9/6/2025 6:25:27 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 9/6/2025 6:25:27 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 9/6/2025 6:25:27 PM | SENT |
| Lauren Bush | | lbush@jw.com | 9/6/2025 6:25:27 PM | SENT |

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 105294621
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFF/APPELLANT'S MOTION TO STAY, ABATE OR CONTINUE PROCEEDINGS PENDING APPEAL; AND REQUEST FOR HEARING
Status as of 9/7/2025 1:42 PM CST

Case Contacts

| Lauren Bush | | lbush@jw.com | 9/6/2025 6:25:27 PM | SENT |
|---|---|---|---|---|
| Karah Powers | | kpowers@chmc-law.com | 9/6/2025 6:25:27 PM | SENT |
| Edward Smith | | esmith@808west.com | 9/6/2025 6:25:27 PM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 9/6/2025 6:25:27 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 9/6/2025 6:25:27 PM | SENT |
| Benjamin C.Hunt | | ben.hunt@bakerbotts.com | 9/6/2025 6:25:27 PM | SENT |
| Anna Puff | | apuff@sneedvine.com | 9/6/2025 6:25:27 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 9/6/2025 6:25:27 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 9/6/2025 6:25:27 PM | SENT |
| Robert Battaile | | robert@manortx.us | 9/6/2025 6:25:27 PM | SENT |
| Robert Battaile | | robert@manortx.us | 9/6/2025 6:25:27 PM | SENT |
| Stephanie Serrano | | sserrano@rothberg.law | 9/6/2025 6:25:27 PM | SENT |
| Carol Shipley | | cshipley@rrspllc.com | 9/6/2025 6:25:27 PM | SENT |
| ROBERT EDWARDBATTAILE | | robert@manor.tx.us | 9/6/2025 6:25:27 PM | SENT |
| Joanna LippmanSalinas | | joanna.salinas@fletcherfarley.com | 9/6/2025 6:25:27 PM | SENT |
| Jeff Hobbs | | jhobbs@abaustin.com | 9/6/2025 6:25:27 PM | SENT |
| Martha Adams | | madams@abaustin.com | 9/6/2025 6:25:27 PM | SENT |
| Brandon Hammann | | brandon.hammann@meritagehomes.com | 9/6/2025 6:25:27 PM | SENT |

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 106171308
Filing Code Description: Motion - Exempt
Filing Description: Motion to Supplement the Clerks Record with Omitted Items
Status as of 9/29/2025 9:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Jeffrey Hobbs | 24012837 | jhobbs@abaustin.com | 9/28/2025 9:11:56 PM | SENT |
| Michael Kabat | 24050847 | mkabat@mcginnislaw.com | 9/28/2025 9:11:56 PM | SENT |
| Joanna Salinas | 791122 | joanna.salinas@fletcherfarley.com | 9/28/2025 9:11:56 PM | SENT |
| William Davidson | 5447000 | bdavidson@chmc-law.com | 9/28/2025 9:11:56 PM | SENT |
| Gavin Villareal | 24008211 | gavin.villareal@bakerbotts.com | 9/28/2025 9:11:56 PM | SENT |
| Michael Roberts | 24082153 | mroberts@jw.com | 9/28/2025 9:11:56 PM | SENT |
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 9/28/2025 9:11:56 PM | SENT |
| Stephanie Serrano | 24092655 | sserrano@rothberg.law | 9/28/2025 9:11:56 PM | SENT |
| Kevin O'Hanlon | 15235500 | kohanlon@808west.com | 9/28/2025 9:11:56 PM | SENT |
| Patrick Kelly | 11228000 | pat.kelly@traviscountytx.gov | 9/28/2025 9:11:56 PM | SENT |
| Tyler Ryska | 24096597 | tryska@rigbyslack.com | 9/28/2025 9:11:56 PM | SENT |
| Austin Jones | 24116579 | ajones@mcginnislaw.com | 9/28/2025 9:11:56 PM | SENT |
| William Duncan | 24124453 | wduncan@rigbyslack.com | 9/28/2025 9:11:56 PM | SENT |
| Roy Adams | | roy.adams@oag.texas.gov | 9/28/2025 9:11:56 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 9/28/2025 9:11:56 PM | SENT |
| Lauren Bush | 24142742 | lbush@jw.com | 9/28/2025 9:11:56 PM | SENT |
| Anna Puff | 24144206 | apuff@sneedvine.com | 9/28/2025 9:11:56 PM | SENT |
| Edward Smith | 24037790 | esmith@808west.com | 9/28/2025 9:11:56 PM | SENT |
| Robert EdwardBattaile | | robert@manortx.us | 9/28/2025 9:11:56 PM | SENT |
| Annette Bittick | | abittick@mcginnislaw.com | 9/28/2025 9:11:56 PM | SENT |
| Patricia Muniz | | paralegal@rigbyslack.com | 9/28/2025 9:11:56 PM | SENT |
| Raylynn Howell | | raylynn.howell@bakerbotts.com | 9/28/2025 9:11:56 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 106171308
Filing Code Description: Motion - Exempt
Filing Description: Motion to Supplement the Clerks Record with Omitted Items
Status as of 9/29/2025 9:20 AM CST

Case Contacts

| Raylynn Howell | | raylynn.howell@bakerbotts.com | 9/28/2025 9:11:56 PM | SENT |
|---|---|---|---|---|
| Kim McBride | | kmcbride@mcginnislaw.com | 9/28/2025 9:11:56 PM | SENT |
| Lea Ohrstrom | | lohrstrom@808west.com | 9/28/2025 9:11:56 PM | SENT |
| Sneed Vine &Perry | | gtwnfilings@sneedvine.com | 9/28/2025 9:11:56 PM | SENT |
| Stormy Downing | | sdowning@rrspllc.com | 9/28/2025 9:11:56 PM | SENT |
| Andy Soule | | asoule@rrspllc.com | 9/28/2025 9:11:56 PM | SENT |
| Karah Powers | | kpowers@chmc-law.com | 9/28/2025 9:11:56 PM | SENT |
| Martha AnnAdams | | madams@abaustin.com | 9/28/2025 9:11:56 PM | SENT |
| Benjamin C. Hunt | | ben.hunt@bakerbotts.com | 9/28/2025 9:11:56 PM | SENT |
| Eldridge Burns | | eburns@rrspllc.com | 9/28/2025 9:11:56 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 9/28/2025 9:11:56 PM | SENT |
| Carol Shipley | | cshipley@rrspllc.com | 9/28/2025 9:11:56 PM | SENT |
| Emily Hill | | ehill@manortx.gov | 9/28/2025 9:11:56 PM | SENT |
| Anne Weir | | aweir@manortx.gov | 9/28/2025 9:11:56 PM | SENT |